**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Top Tobacco, L.P., Republic
Technologies (NA), LLC, and
Republic Tobacco, L.P.,

                  Plaintiffs,

                                Case No. 1:19-cv-4939-MLB

v.

Star Importers & Wholesalers,
Inc., et al.,

                  Defendants.

_____/

**<u>ORDER</u>**

The Court files its jury instructions and revisions and the same shall be made a part of the record as of the date of this Order. The Court attaches the following:

Exhibit 1: Initial instructions

Exhibit 2: First revisions

Exhibit 3: Second revisions

Exhibit 4: Third revisions

Exhibit 5: Final instructions as given to the jury

**SO ORDERED** this 14th day of March, 2023.

Michael L. Brown
United States District Judge

2

# COURT'S EXHIBIT 1

---

**UNIFIED REQUESTS TO CHARGE
AND VERDICT FORM**

---

**<u>AGREED-UPON INSTRUCTIONS</u>**

1

# I.    PRETRIAL INSTRUCTIONS[1]

## Proposed Pretrial Instruction No. 1:

## Interim Statements

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

Source:  11th Cir. Pat. Jury Instr. § 1.5 (2022).

---

[1] Subject to the Court's leave to read pretrial instructions in addition to the Court's standard set of preliminary instructions.

**<u>Proposed Pretrial Instruction No. 2:</u>**

**Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys outside of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider any granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source:  Manual of Model Civ. Jury Instr. 9th Cir. § 1.20 (2022).

**<u>Proposed Pretrial Instruction No. 3</u>:**

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

---

Source:  11th Cir. Pat. Jury Instr. § 2.2 (2022).

**Proposed Pretrial Instruction No. 4:**

**Use of Interrogatories**

You may hear answers that the parties gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, the parties gave the answers in writing while under oath.

You must consider the answers a party gave to the other side's interrogatories as though they gave the answers on the witness stand.

Source:  11th Cir. Pat. Jury Instr. § 2.6 (2022).

## Proposed Pretrial Instruction No. 5:

## Finding that Official Report Made

Where it is the duty of a lower or subordinate official to report to the official's superior, or where it is the duty of a superior official to report or give information to a lower or subordinate official, you may find this official duty was regularly performed, in the absence of evidence in the case leading you to a different conclusion.

Source:  O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 104:22 (6th ed.).

**<u>Proposed Pretrial Instruction No. 6:</u>**

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

Source:  11th Cir. Pat. Jury Instr. § 3.6.1 (2022).

**<u>Proposed Pretrial Instruction No. 7:</u>**

**Two or More Parties—Different Legal Rights**

You should decide the case as to (1) Republic's claims against Star and Mr. Hudda, (2) Republic's claims against ZCell and Mr. Lakhani, and (3) ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group, separately.

Unless otherwise stated, the instructions apply to all parties.

Source:  9th Cir. Civ. Jury Instr. 1.8 (2022).

8

## II.    PROPOSED CLOSING JURY INSTRUCTIONS

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

---

Source:  11th Cir. Pat. Jury Instr. § 3.1 (2022).

**Proposed Closing Instruction No. 1:**

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I instructed you at the beginning of this case, the Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships. Republic Technologies (NA), LLC is a legal entity known as a limited liability company. You have heard us refer to the Plaintiffs collectively as "Republic" and I will continue to do so in these closing instructions.

As I explained previously, there are two separate groups of Defendants in this case. The first group of Defendants is Star Importers & Wholesalers, Inc., and its owner, Amin S. "Monty" Hudda. You have heard us refer to Star Importers & Wholesalers, Inc. as "Star" for short. Star is a legal entity known as a corporation. You have heard us refer to Star and Mr. Hudda as a group as "Star and Mr. Hudda."

The second group of Defendants is Ziya Business, Inc. and its owner, Samadali Lakhani. Ziya Business, Inc. does business under the name "ZCell & Novelties," so you have heard us refer to Ziya Business, Inc. as "ZCell" for short. ZCell is a legal entity known as a corporation. You have heard us refer to ZCell and Mr. Lakhani as a group as "ZCell and Mr. Lakhani."

As I explained at the beginning of this case, ZCell and Mr. Lakhani brought third party claims against Alex Seriana and two of his companies, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale. TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale are legal entities known as a limited liability company. You have heard us refer to Mr. Seriana, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale collectively as the "Third Party TN Vape Group."

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

11

Source:  11th Cir. Pat. Jury Instr. § 3.2.2 (2022).

**Proposed Closing Instruction No. 2:**

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

13

You should remember all of my prior instructions about the prohibition on consulting outside sources or individuals.  For example, you shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Source:  11th Cir. Pat. Jury Instr. §§ 1.1, 3.3 (2022).

**Proposed Closing Instruction No. 3:**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Source:  11th Cir. Pat. Jury Instr. § 3.4 (2022).

15

**Proposed Closing Instruction No. 4:**

**Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Source:  11th Cir. Pat. Jury Instr. § 3.5.2 (2022).

16

**Proposed Closing Instruction No. 5:**

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness(es)], taken on [date], has been presented to you [by video/by reading the transcript].

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Source:  11th Cir. Pat. Jury Instr. § 2.2 (2022).

17

**<u>Proposed Closing Instruction No. 6</u>:**

**Use of Interrogatories**

You've heard answers that [name of party(ies)] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party(ies)] gave the answers in writing while under oath.

You must consider the answers [name of party(ies)] gave to the other side's interrogatories as though [name of party(ies)] gave the answers on the witness stand.

Source:  11th Cir. Pat. Jury Instr. § 2.6 (2022).

18

**Proposed Closing Instruction No. 7:**

**Finding that Official Report Made**

Where it is the duty of a lower or subordinate official to report to the official's superior, or where it is the duty of a superior official to report or give information to a lower or subordinate official, you may find this official duty was regularly performed, in the absence of evidence in the case leading you to a different conclusion.

Source:  O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 104:22 (6th ed.).

**<u>Proposed Closing Instruction No. 8:</u>**

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

Source:  11th Cir. Pat. Jury Instr. § 3.6.1 (2022).

**<u>Proposed Closing Instruction No. 9:</u>**

**Two or More Parties—Different Legal Rights**

You should decide the case as to (1) Republic's claims against Star and Mr. Hudda, (2) Republic's claims against ZCell and Mr. Lakhani, and (3) ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group, separately.

Unless otherwise stated, the instructions apply to all parties.

Source:  9th Cir. Civ. Jury Instr. 1.8 (2022)

**Proposed Closing Instruction No. 10:**

**Duty to Deliberate When Only the Plaintiff Claims Damages**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Source:  11th Cir. Pat. Jury Instr. § 3.8.1 (2022).

## III.   JURY VERDICT FORM

## **CONTESTED INSTRUCTIONS**

Republic's proposed contested instructions are in black font.

The Defendants' proposed contested instructions are in red font.

The ZCell Defendants' proposed contested instructions as to their Third are in blue font.

**PLAINTIFFS' PROPOSED CONTESTED INSTRUCTIONS**

The following instructions are proposed by Republic. Where appropriate, Republic has indicated whether an instruction is proposed to be read before, during, and/or at the close of trial.

**Proposed Instruction No. 1 (Pretrial):**

**General Preliminary Instruction[2]**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain.

---

[2] Subject to the Court's leave to read pretrial instructions in addition to the Court's standard set of preliminary instructions.

26

Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the

opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

28

· any interest the witness has in the outcome of the case;

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions.

The Plaintiffs, Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. sell cigarette rolling papers under the federally registered trademarks TOP® and JOB®. We may refer to the Plaintiffs collectively as "Republic."

You will hear Republic's claims against two separate groups of Defendants in this case, each group comprising a company and its individual owner. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts. To help you keep the two groups of Defendants distinct, we will describe Republic's claims against each group separately.

29

The first group of Defendants is Star Importers & Wholesalers, Inc., and its owner, Amin S. "Monty" Hudda. We may refer to Star Importers & Wholesalers, Inc. as "Star" for short.  When we refer to Star and Mr. Hudda as a group, we may refer to them collectively as "Star and Mr. Hudda" or simply the "Star Defendants."

Star and Mr. Hudda operate a wholesale business that sells, among other items, cigarette rolling papers.  Republic is suing the Star Defendants for trademark counterfeiting and related claims.

The Court has already found that Star, the company, is liable for having infringed Republic's trademarks by selling counterfeit products.  This jury's job is limited to deciding: (1) the dollar amount of damages to award to Republic for Star's acts of trademark infringement and counterfeiting; (2) whether Star committed its acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law; and (3) whether Mr. Hudda is personally liable for Star's infringement of Republic's trademarks.

The second group of Defendants is Ziya Business, Inc. and its owner, Samadali Lakhani. Ziya Business, Inc. does business under the name "ZCell & Novelties," so we may refer to Ziya Business, Inc. as "ZCell" for short. When we refer to ZCell and Mr. Lakhani as a group, we may refer to them collectively as "ZCell and Mr. Lakhani" or simply the "ZCell Defendants."

30

ZCell and Mr. Lakhani operate a wholesale business that sells, among other items, cigarette rolling papers.  Through a series of test buys, Republic confirmed that the ZCell Defendants were buying and selling counterfeit TOP and JOB products.  The DeKalb County Police Department obtained a warrant and seized additional counterfeit TOP and JOB products from the ZCell Defendants' warehouse.  Accordingly, in this case Republic is suing the ZCell Defendants for trademark counterfeiting and related claims.

The question of whether the ZCell Defendants infringed Republic's trademarks and are liable to pay damages was decided by the Court before this trial and is not an issue for this jury.  The Court has already found that both ZCell, the company, and its owner, Mr. Lakhani, are liable for having infringed Republic's trademarks.  This jury's job is limited to deciding: (1) The dollar amount of damages to award to Republic for the ZCell Defendants' acts of trademark infringement and counterfeiting; and (2) whether the ZCell Defendants committed their acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law.

Republic contends that each group of Defendants knew or recklessly disregarded the possibility that they were buying and selling counterfeit cigarette rolling papers. Republic contends that significant damages are necessary to

31

compensate Republic for the harm to its reputation, goodwill, and brands, to penalize each group of Defendants for their illegal acts, and to deter each group of Defendants and others from selling counterfeit products to unsuspecting consumers in the future.

Each group of Defendants contend that they did not knowingly sell counterfeit TOP and JOB products, and that their infringement was unintentional. Each group of Defendants contend that minimal damages are warranted.

While you have also heard the names "TN VAPE" or "Alex Seriana" today, TN Vape and Mr. Seriana are not a party in Republic's case against the Star Defendants and the ZCell Defendants. But I will explain that more in a minute.

Burden of proof:

Republic has the burden of proving their case by what the law calls a "preponderance of the evidence." That means Republic must prove that, in light of all the evidence, what they claim is more likely true than not.

That means, with respect only to the remaining issues in this case that you will be asked to decide for Republic's claims against the Star Defendants, if you could put the evidence favoring Republic and the evidence favoring the Star Defendants on opposite sides of balancing scales, Republic needs to make the scales tip to their

32

side. If Republic fails to meet this burden, you must find in favor of the Star Defendants.

That means, with respect only to the remaining issues in this case that you will be asked to decide for Republic's claims against the ZCell Defendants, if you could put the evidence favoring Republic and the evidence favoring the ZCell Defendants on opposite sides of balancing scales, Republic needs to make the scales tip to their side. If Republic fails to meet this burden, you must find in favor of the ZCell Defendants.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

33

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, TikTok, LinkedIn, MySpace, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and

34

forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

35

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Republic will present its witnesses and ask them questions. After Republic questions the witness, the Star Defendants and the ZCell Defendants may ask the witness questions – this is called "cross-examining" the witness. Then the Star Defendants will present their witnesses, and Republic may cross-examine them. The ZCell Defendants will then present their witnesses, and Republic may cross-examine them.  Once the Star Defendants and the ZCell Defendants have finished presenting their witnesses, Republic will have the opportunity to present rebuttal evidence.  You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, I'll give you instructions on the law, and then the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you.

You'll then go to the jury room to deliberate.

Source:  11th Cir. Pat. Jury Instr. § 1.1 (2022); O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 101:02 (6th ed.).

**Proposed Instruction No. 2 (Pretrial):**

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. (formerly known as Republic Tobacco, L.P.). Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships. Republic Technologies (NA), LLC is a legal entity known as a limited liability company. We may refer to the Plaintiffs collectively as "Republic."

As mentioned previously, there are two separate groups of Defendants in this case. The first group of Defendants is the company, Star Importers & Wholesalers, Inc., and its owner, Amin S. "Monty" Hudda. We may refer to Star Importers & Wholesalers, Inc. as "Star" for short. Star is a legal entity known as a corporation. When we refer to Star and Mr. Hudda as a group, we may refer to them collectively as "Star and Mr. Hudda" or simply the "Star Defendants."

The second group of Defendants is the company, Ziya Business, Inc., and its owner, Samadali Lakhani. Ziya Business, Inc. does business under the name "ZCell & Novelties," so we may refer to Ziya Business, Inc. as "ZCell" for short. ZCell is a legal entity known as a corporation.  When we refer to ZCell and Mr. Lakhani as a group, we may refer to them collectively as "ZCell and Mr. Lakhani" or simply the "ZCell Defendants."

As I will explain in a few minutes, the ZCell Defendants have brought separate claims against a third party named Alex Seriana, and two of his companies, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale.  TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale are legal entities known as a limited liability company.  You may hear us refer to Mr. Seriana, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale collectively as the "Third Party TN Vape Group."

The fact that a corporation is involved as a party must not affect your decision in any way.  A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

39

Source:  11th Cir. Pat. Jury Instr. § 3.2.2 (2022).

**Proposed Instruction No. 3 (Pretrial and/or Closing):**

**Issues for the Jury**

Some findings in this case have already been made; others have been left for you to decide based on the evidence presented.  I have already decided that certain Defendants are liable to Republic for trademark infringement and counterfeiting in this case, and many of the facts have already been decided.  Those findings were as follows:

First, I found that Star, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

Second, I found that ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

Third, I found that ZCell's owner, Samadali "Samad" Lakhani, was chiefly responsible for ZCell's buying and selling counterfeit cigarette rolling papers, and,

41

therefore, actively caused the infringement as a moving, conscious force. I have thus found that Mr. Lakhani is personally liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

I have made no finding, and am expressing no opinion, on the amount of damages Star, ZCell, or Mr. Lakhani should have to pay to Republic. That question is for you, the jury. It is also up to you to decide whether Mr. Hudda, the owner and president of Star, is personally liable for Star's counterfeiting and trademark infringement.

For purposes of this trial, my prior findings that Star and the ZCell Defendants are liable to Republic are settled and conclusive, and you are not to second-guess those findings.

For the Star Defendants, your role is to determine:

(1)     The dollar amount of damages to award to Republic for Star's acts of trademark infringement and counterfeiting;

(2)     Whether Star committed its acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law; and

42

(3)     Whether Mr. Hudda is personally liable for Star's infringement and counterfeiting of Republic's trademarks.

For the ZCell Defendants, your role is to determine:

(1)     The dollar amount of damages to award to Republic for the ZCell Defendants' acts of trademark infringement and counterfeiting; and

(2)     Whether the ZCell Defendants committed their acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law.

---

Source:  Adapted from O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 101:22 (6th ed.).

43

**Proposed Instruction No. 4 (Pretrial and/or Closing):**

**Third Party Claim**

In addition to Republic's claims, you will also be asked to decide what is referred to as a "third party claim." A third party claim is simply another set of claims that brought by a defendant against an additional party. In this case, the ZCell Defendants have filed their own claim against Alex Seriana and two of his companies, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale. The ZCell Defendants are therefore the third party plaintiffs and Mr. Seriana and his companies are the third party defendants. These parties stand in the same relationship to each other as a plaintiff would to a defendant.

Neither Republic nor the Star Defendants are part of ZCell's third party claim against the Third Party TN Vape Group. To help keep ZCell's third party claims separate from the primary case brought by Republic against the Star Defendants and the ZCell Defendants, we may refer to Mr. Seriana, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale collectively as the "Third Party TN Vape Group."

As I mentioned, I have already found that the ZCell Defendants are liable to Republic for selling counterfeit products bearing Republic's TOP and JOB trademarks. Under the law, sellers of counterfeit products bear strict liability, and a

44

defendant's contentions about their innocent intentions are irrelevant to their liability.  That means the ZCell Defendants' liability to Republic does not depend on the outcome of the ZCell Defendants' third party claims against the Third Party TN Vape Group in any way.

You must determine what amount of damages that the ZCell Defendants must pay to Republic as a wholly separate and independent matter, regardless of any decision you reach on ZCell Defendants' claims against the Third Party TN Vape Group.

You should determine the amount of damages that the ZCell Defendants must pay to Republic for their own acts, before you decide whether the ZCell Defendants have proved their third party claims against Third Party TN Vape Group.

In determining the amount of damages the ZCell Defendants must pay Republic for their acts of trademark infringement and counterfeiting, you should not consider, in any way, whether the ZCell Defendants can recover any portion of the damages you award to Republic, from Third Party TN Vape Group.

---

Source:  *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No. 1:190-cv-04939, Order (Dkt. No. [241]), at 34–35 (N.D. Ga. Sept. 7, 2021).

**Proposed Instruction No. 5 (Pretrial):**

**Trademark Infringement and Counterfeiting**

To help you understand the evidence presented in this case, I will explain some of the legal terms you will hear during this trial.

This case involves trademarks, which are sometimes referred to simply as "marks." A federal statute known as the Lanham Act protects rights to use trademarks. A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own. The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation, or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its unauthorized use by others in an action for trademark infringement.

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered trademark. The advertising, distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law. This is true even if a person merely sells or offers for sale goods bearing a counterfeit

47

mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use. A trademark owner's efforts at policing its trademarks is proof of the strength of its marks.

Republic owns eleven federal registrations that are relevant to this case: five federal registrations for the trademark TOP® for cigarette rolling papers, and six federal registrations for the trademark JOB® for cigarette rolling papers. Because Republic owns federal registrations for its trademarks, Defendants are deemed to have knowledge of these registrations and of the rights claimed in the registrations. This is known as "constructive notice," and Defendants cannot claim that they adopted the words, symbols or designations they used on their goods without knowledge of Republic's trademarks.

Sources:   11th Cir. Pat. Jury Instr. § 10.1 (2022); Fed. Civ. Jury Instr. 7th Cir. § 13.1.1 (2020); Manual of Model Civ. Jury Instr. 9th Cir. § 15.1 (2021); 15 U.S.C. § 1127; 15 U.S.C. § 1116(d)(1)(B); 15 U.S.C. § 1072; 15 U.S.C. § 1117; *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301

(11th Cir. 2001); *adapted from jury instructions entered in Top Tobacco, L.P. et al. v. Diamond J Wholesale, LLC et al.*, Case No. 1:19-cv-2148 (N.D. Ga. 2022); *Omega SA et al. v. 375 Canal, LLC et al.*, 1:12-cv-6979, Dkt. No. 299, at 46-47 (S.D.N.Y. 2019); *Buccellati Holding Italia SpA et al. v. Laura Buccellati LLC et al.*, 13-21297-CIV, Dkt. 257, at 10, 13 (S.D. Fla. 2014).

**Proposed Instruction No. 6 (Pretrial, During, and/or Closing):**

**Stipulations—Republic and the Star Defendants[3]**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

For Republic's claims against <u>the Star Defendants</u>, Republic and the Star Defendants have stipulated to the following facts:

1.      Plaintiff Top Tobacco, L.P. ("Top") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.



2.      Top owns and maintains the trademarks TOP®,                    ®,

 ®, and          ®  for use in connection with rolling papers and related goods (collectively, the "TOP® marks").

---

[3] Defendants object to the inclusion of these stipulations in the Jury Instructions, and request that they be provided to the jury separately from the instructions, and as separate documents for each group of Defendants.

3.      Plaintiff Republic Technologies (NA), LLC ("Republic Technologies") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

4.      Republic Technologies owns and maintains the trademarks JOB®,



®,                    ®,                    ®,



®,  and                    ® for use in connection with rolling papers and related goods (collectively, the "JOB® marks").

5.      Plaintiff Republic Brands, L.P. (formerly known as Republic Tobacco, L.P.) ("Republic Brands") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

6.      Top and Republic Technologies contract exclusively with Republic Brands to promote, distribute, and sell TOP® and JOB® products to wholesalers and retailers across the United States.

51

7.    Defendant Star Importers & Wholesalers, Inc. ("Star") is a Georgia corporation with a primary place of business located at 2166 Mountain Industrial Boulevard, Tucker, Georgia 30084 (the "Star Warehouse").

8.    Defendant Amin S. "Monty" Hudda ("Hudda") is the Owner and President of Star.

9.    Top owns and maintains several federal trademark registrations for the TOP® marks, including, among others, U.S. Registration Nos. 2739465, 2831105, 3677986, and 3677987 for "cigarette rolling papers" and U.S. Registration No. 3407400 for "cigarette rolling paper booklets" (collectively, the "TOP® Registrations").

10.    Republic Technologies owns federal trademark registrations for the JOB® marks including, among others, U.S. Registration Nos. 73124, 1341384, 1357088, 3834324, 4019091, and 4019093 for "cigarette papers" (collectively, the "JOB® Registrations").

11.    Star is a business-to-business general merchandise wholesaler that sells to businesses like wholesalers, retailers, gas stations, and supermarkets.

12.    Star has sold rolling-paper products, including TOP® and JOB® products, for approximately 27 years.

52

13.    Star continues to offer for sale and sell rolling paper products bearing the TOP® and JOB® marks currently.

14.    Star was a direct customer of Republic from 2002 until 2019.

15.    Star was an exclusive direct-buying Republic customer from 2008 until 2016.

16.    In 2016, Defendants terminated Star's exclusive relationship with Plaintiffs.

---

Source:  11th Cir. Pat. Jury Instr. § 2.1 (2022).

**Proposed Instruction No. 7 (Pretrial, During, and/or Closing):**

**Stipulations—Republic and the ZCell Defendants[4]**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

For Republic's claims against <u>the ZCell Defendants</u>, Republic and the ZCell Defendants have stipulated to the following facts:

1.    Plaintiffs are the owners and exclusive U.S. distributor of rolling papers offered for sale, sold, and distributed under the trademarks TOP® and JOB®.

2.    Plaintiff Top Tobacco, L.P. ("Top") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

---

[4] Defendants object to the inclusion of these stipulations in the Jury Instructions, and request that they be provided to the jury separately from the instructions, and as separate documents for each group of Defendants.

54

3.    Top owns and maintains the trademarks TOP®,  ®,

 ®, and  ®  for use in connection with rolling papers

and related goods (collectively, the "TOP® marks").

4.    Plaintiff Republic Technologies (NA), LLC ("Republic Technologies") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

5.    Republic Technologies owns and maintains the trademarks JOB®,

 ®, ®, ®,

 ®, and ® for use in connection with rolling

papers and related goods (collectively, the "JOB® marks"), in addition to other valuable marks.

6.     Plaintiff Republic Brands, L.P. (formerly known as Republic Tobacco, L.P.) ("Republic") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

7.     Republic Brands is the exclusive, master distributor of TOP® and JOB® rolling papers in the United States.

8.     For many years, Top and Republic Technologies, and their predecessors and affiliates, including Republic Brands and its predecessors, have promoted, distributed, offered for sale, and sold rolling papers and related products under the federally registered and common law trademarks covering Plaintiffs' various TOP® and JOB® trademarks, designs, and logos.

9.     Top and Republic Technologies contract exclusively with Republic Brands to promote, distribute, and sell TOP® and JOB® products to wholesalers and retailers across the United States.

10.     Defendant Ziya Business, Inc. d/b/a ZCell & Novelties ("ZCell") is a Georgia corporation with a primary place of business located at 2053 Mountain

Industrial Boulevard, Tucker, Georgia 30084 (the "ZCell Warehouse) and 1745 Church Street, Suite B, Decatur, Georgia 30033 (the "Decatur Warehouse").

11.    Mr. Lakhani is the CEO, sole owner, and only officer of ZCell.

12.    For many years, Plaintiffs have been engaged in the distribution and sale of rolling papers.

13.    The TOP® and JOB® brands are two of the oldest rolling paper brands in the United States.

14.    Top and its predecessors have continuously used the TOP® mark to sell tobacco since at least 1900 and rolling papers in the United States since at least 1942.

15.    Republic Technologies and its predecessors have continuously used the JOB® mark to sell rolling papers since at least 1856.

16.    By volume of leaves, TOP® is the leading brand of roll-your-own tobacco in the United States.

17.    By booklets, JOB® rolling papers are the longest-selling rolling papers in the United States.

18.    From 2017-2019, Plaintiffs spent close to $6 million advertising and promoting the TOP® and JOB® marks and products sold in connection therewith, including attendance at trade shows and print advertising in trade publications.

57

19.     In the past five years, Plaintiffs have generated tens of millions of dollars in sales of TOP® and JOB® rolling papers, smoking tobacco, and related products.

20.     In 2019, Plaintiffs sold approximately $12.4 million in TOP® rolling papers in the United States.

21.     In 2019, Plaintiffs sold approximately $31.4 million in JOB® rolling papers in the United States.

22.     The TOP® and JOB® brands are among the best-known brands of rolling papers in the United States.

23.     Top owns and maintains several federal trademark registrations for the TOP® marks, including, among others, U.S. Registration Nos. 2739465, 2831105, 3677986, and 3677987 for "cigarette rolling papers" and U.S. Registration No. 3407400 for "cigarette rolling paper booklets" (collectively, the "TOP® Registrations").

24.     Republic Technologies owns numerous federal trademark registrations for the JOB® marks including, among others, U.S. Registration Nos. 73124, 1341384, 1357088, 3834324, 4019091, and 4019093 for "cigarette papers" (collectively, the "JOB® Registrations").

25.     Each of the TOP® and JOB® Registrations remain valid.

58

26. The TOP® and JOB® marks have, at all times, been owned exclusively by Plaintiffs or their predecessors.

27. Authentic TOP® and JOB® rolling papers are exclusively manufactured by Plaintiffs' affiliated entity, Republic Technologies (France) SAS in Perpignan, France.

28. No legitimate TOP® or JOB® cigarette rolling papers are manufactured outside of France.

29. Plaintiffs' laboratory in France knows the exact composition of genuine TOP® and JOB® papers.

30. Authentic TOP® and JOB® papers are subject to Plaintiffs' strict quality control standards to ensure that their products comply with applicable laws and regulations in the U.S.

31. Republic is the sole distributor authorized to purchase TOP® and JOB® brand items from the factories where they are produced.

32. Republic is also the exclusive licensee of the TOP® and JOB® marks in the United States.

33. Plaintiffs sell genuine TOP® and JOB® rolling papers to wholesalers and retailers nationwide, including in the Atlanta area.

59

34.    Under the TOP® brand, Plaintiffs sell rolling papers in different sizes (regular and half size) and volumes, including the TOP® 40/24 paper product.

35.    Some of Plaintiffs' offerings include: boxes of TOP® papers containing 24 booklets, promotional jars of TOP® papers containing 120 booklets, and promotional jars of TOP® papers containing 144 booklets, with each booklet comprising 100 "leaves" (individual rolling papers).

36.    Plaintiffs do not sell genuine TOP® papers in 100-count jars.

37.    The TOP® product packaging prominently displays the TOP Marks in multiple locations, including on all sides of the carton, on the top and bottom of individual booklets, and on the inner flap of each booklet.

38.    Plaintiffs, under the JOB® brand, sell various rolling papers, including JOB® Gold, JOB® Orange, and Job® French White, among others, in different sizes and volumes.

39.    Plaintiffs' JOB® Gold papers come in various sizes, including JOB® Gold 1.25 papers and JOB® Gold 1.5 papers.

40.    Plaintiffs sell two versions of their JOB® Gold 1.25 and JOB® Gold 1.5 papers: booklets that are pre-priced at $1.69 each and booklets that are not pre-priced.

41.     Genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are a promotional product that Plaintiffs only offer in 100-count jars or metal tins.

42.     Plaintiffs sell promotional jars or metal tins of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers in limited quantities to Plaintiffs' exclusive customers twice a year.

43.     Plaintiffs limit the amount of promotional jars of genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers that their exclusive customers can purchase directly.

44.     Genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are not sold in boxes in any quantity.

45.     Plaintiffs sell two versions of JOB® 1¼ Orange ("JOB® Orange") papers: booklets that are pre-priced at 99¢ each and booklets that are not pre-priced.

46.     Plaintiffs sell pre-priced JOB® 1¼ Orange 99¢ papers ("JOB® Orange 99¢") in jars containing 100 booklets.

47.     Plaintiffs also sell refill boxes of pre-priced JOB® 1¼ Orange 99¢ papers containing 100 booklets.

48.     Pre-priced jars of JOB® Orange 99¢ papers are a promotional product that may be purchased directly from Plaintiffs by their direct-buying customers.

61

49.    A "case" of TOP® or JOB® papers packaged in jars contains 16 jars.

50.    The JOB® product packaging prominently displays the JOB® marks in multiple locations, including on all sides of the carton, on the top and bottom of individual booklets, on the inner flap of each booklet, and embossed on the leaves themselves.

51.    ZCell is a business-to-business wholesaler that sells general merchandise and novelty items to businesses like convenience stores and gas stations.

52.    Defendants operate ZCell out of two locations: their primary store, the ZCell Warehouse, a 28,000 square feet warehouse located in Tucker, Georgia, and the Decatur Warehouse, a 5,000 square foot showroom at in Decatur, Georgia.

53.    The ZCell Warehouse has approximately 8,000 square feet of storage space that customers are not permitted to enter.

54.    Defendants estimate ZCell's gross sales in 2019 to be approximately $16 million.

55.    ZCell sells rolling papers bearing the TOP® and JOB® marks to its customers.

56.    JOB® papers are ZCell's bestselling rolling paper brand.

62

57.    Republic has never sold TOP® and JOB® products to either ZCell or Mr. Lakhani.

58.    ZCell first started carrying TOP® and JOB® products in approximately 2013 or 2014.

59.    Promotional jars of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are popular, high-demand products for Defendants' customers, because these jars are limited in availability and are hard to find in the market.

60.    Defendants initially purchased TOP® and JOB® papers from a company identified as Sessions Specialty Company ("Sessions").

61.    Sessions is an exclusive Republic wholesale customer.

62.    In 2017, Defendants purchased JOB® 1.5 jars and 1.25 jars from Sessions for $87.50.

63.    In 2019, Sessions sold ZCell promotional jars of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers for $91.50 per jar.

64.    According to Defendants' records, Defendants sold at least 1,076 jars of TOP- and JOB-branded papers between November 1, 2017 and May 13, 2019, for total sales of at least $83,421.64.

65.    ZCell has offered for sale and sold products bearing TOP® and JOB® marks that were tested by Plaintiffs' laboratory and confirmed to be counterfeit.

63

66.    Certain TOP- and JOB-branded products seized from ZCell Defendants were tested by Plaintiffs' laboratory and confirmed to be counterfeit.

_____

Source:  11th Cir. Pat. Jury Instr. § 2.1 (2022).

**Proposed Instruction No. 8 (Closing):**

**Trademark Infringement and Counterfeiting**

As I explained at the outset of this trial, Republic seeks damages against the Star Defendants for trademark infringement, trademark counterfeiting, and unfair competition. Republic seeks damages against the ZCell Defendants for trademark infringement, trademark counterfeiting, and unfair competition.

To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

This case involves trademarks, which are sometimes referred to simply as "marks." A federal statute known as the Lanham Act protects rights to use trademarks. A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own. The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

65

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its use by others in an action for trademark infringement.

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially

66

indistinguishable from, a registered trademark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law.  This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use no matter how inconsequential.  A trademark owner's efforts at policing its trademarks is proof of the strength of its marks.

The parties have stipulated that Republic owns eleven federal registrations for the TOP® trademarks and JOB® trademarks: five federal registrations for the trademark TOP® for cigarette rolling papers, and six federal registrations for the trademark JOB® for cigarette rolling papers. Republic has the incontestable right to use these registered trademarks in commerce for the products they sell under the trademarks.

Because Republic owns federal registrations for its trademarks, Defendants are deemed to have knowledge of these registrations and of the rights claimed in the registrations. This is known as "constructive notice," and Defendants cannot claim

67

that they adopted the words, symbols or designations they used on their goods without knowledge of Republic's trademarks.  In this case, Republic enjoys nationwide constructive notice of rights dating back to the filing dates of their trademark applications, which are reflected in the trademark registration certificates. You are instructed that all of Republic's trademark applications for the registered trademarks you have seen today were filed before Defendants' alleged infringement of Republic's trademarks.

In an earlier phase of this case, the Court found, and you are instructed that you must accept for purposes of your determinations of Republic's claims against the Star Defendants in this case, each of the following findings:

(1)    Republic has proven its federal and state law claims that Star infringed Republic's TOP® trademarks and JOB® trademarks and committed acts of unfair competition, false designation of origin, and deceptive trade practices.

(2)    Republic has proven its federal claim that Star counterfeited the TOP® trademarks and JOB® trademarks by selling counterfeit versions of TOP-branded and JOB-branded cigarette rolling paper products that were not manufactured by Republic.

68

(3)   Star's sale of counterfeit cigarette rolling papers constitutes infringement of Republic's TOP® trademarks and JOB® trademarks and likely confused consumers.

(4)   Republic owns valid trademarks that are entitled to protection.

(5)   Star used the TOP® and JOB® trademarks in commerce.

(6)   Star offered and sold counterfeit papers using identical TOP® and JOB® trademarks.

Because the Court has already found that Star is liable for trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, and deceptive trade practices, Republic is entitled to recover a monetary award for this infringement of its trademark rights in the TOP® trademarks and JOB® trademarks.  It is the jury's job to decide whether Mr. Hudda is personally liable for Star's acts.  Therefore, in this trial on Republic's claims against the Star Defendants, you, as the jury, will be responsible for making the following determinations regarding:

(1)   The dollar amount of damages to award to Republic for Star's acts of trademark infringement and counterfeiting;

(2)   Whether Star committed its acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law; and

(3)   Whether Mr. Hudda is personally liable for Star's infringement and counterfeiting of Republic's trademarks.

69

In an earlier phase of this case, the Court found, and you are instructed that you must accept for purposes of your determinations of Republic's claims against the ZCell Defendants in this case, each of the following findings:

(1)     Republic has proven its federal and state law claims that the ZCell Defendants infringed Republic's TOP® trademarks and JOB® trademarks and committed acts of unfair competition, false designation of origin, and deceptive trade practices.

(2)     Republic has proven its federal claim that the ZCell Defendants counterfeited the TOP® trademarks and JOB® trademarks by selling counterfeit versions of TOP-branded and JOB-branded cigarette rolling paper products that were not manufactured by Republic.

(3)     The ZCell Defendants' sale of counterfeit cigarette rolling papers constitutes infringement of Republic's TOP® trademarks and JOB® trademarks and likely confused consumers.

(4)     Republic owns valid trademarks that are entitled to protection.

(5)     The ZCell Defendants used the TOP® and JOB® trademarks in commerce.

(6)     The ZCell Defendants offered and sold counterfeit papers using identical TOP® and JOB® trademarks.

70

Because the Court has already found that ZCell and its owner, Mr. Lakhani, are liable for trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, and deceptive trade practices, Republic is entitled to recover a monetary award for this infringement of its trademark rights in the TOP® trademarks and JOB® trademarks.  Therefore, in this trial on Republic's claims against the ZCell Defendants, you, as the jury, will be responsible for making the following determinations regarding:

(1)     The dollar amount of damages to award to Republic for the ZCell Defendants' acts of trademark infringement and counterfeiting; and

(2)     Whether the ZCell Defendants committed their acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law.

---

Sources:  11th Cir. Pat. Jury Instr. § 10.1 (2022); Fed. Civ. Jury Instr. 7th Cir. § 13.1.1 (2020); Manual of Model Civ. Jury Instr. 9th Cir. §§ 15.1, 15.5 (2022); 15 U.S.C. § 1127; 15 U.S.C. § 1116(d)(1)(B); 15 U.S.C. § 1072; 15 U.S.C. § 1117; *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *Top Tobacco, L.P. et al. v. Diamond J Wholesale, LLC d/b/a Gabsons Novelties et al.*, 1:19-cv-2148, Dkt. Nos. 115, 121 (N.D. Ga. 2021); *adapted from jury instructions entered in Omega SA et al. v. 375 Canal, LLC et al.*, 1:12-cv-6979, Dkt. No. 307, at 92-93 (S.D.N.Y. 2019); *Buccellati Holding Italia SpA et al. v. Laura Buccellati LLC et al.*, 13-21297-CIV, Dkt. 257 at 10, 13 (S.D. Fla. 2014).

**Proposed Instruction No. 9 (Closing):**

**Trademark Counterfeiting – Statutory Damages**

I will now instruct you on Republic's claims for money damages, the determinations you will make regarding those claims, and the law that you must apply in making those determinations.

Republic seeks what is known as an award of "statutory damages." Statutory damages are damages established by Congress in a law called the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting, both by the Defendants in this case and other infringers, actual or potential, who may engage in similar conduct. Because statutory damages serve both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages.

Under the federal trademark infringement laws, Republic is entitled to recover an award of statutory damages for each of their trademarks that were counterfeited on any of the goods that were sold, offered for sale, or distributed by Star and the ZCell Defendants.  The parties have stipulated that Republic owns eleven (11) federally registered TOP® and JOB® trademarks for cigarette rolling paper products.

72

For Republic's claims against the Star Defendants, it has already been decided that Star has committed counterfeiting by unlawfully using Republic's trademarks in the sale and distribution of counterfeit goods without Republic's authorization. Because the Court has already found that Star violated Republic's TOP® and JOB® trademarks by counterfeiting, you must consider the amount of money damages that should be awarded to Republic from Star. By statute, you may award statutory damages between $1,000 and $200,000 for each registered trademark that Star used, for each type of goods sold, offered for sale, or distributed. If, however, Republic proves that Star's use of the registered trademarks was "willful," then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 for each trademark that Star used, for each type of goods sold, offered for sale, or distributed.

For Republic's claims against the ZCell Defendants, it has already been decided that the ZCell Defendants have committed counterfeiting by unlawfully using Republic's trademarks in the sale and distribution of counterfeit goods without Republic's authorization. Because the Court has already found that the ZCell Defendants violated Republic's TOP® and JOB® trademarks by counterfeiting, you must consider the amount of money damages that should be awarded to Republic from the ZCell Defendants. By statute, you may award statutory damages between

73

$1,000 and $200,000 for each registered trademark that the ZCell Defendants used, for each type of goods sold, offered for sale, or distributed. If, however, Republic proves that the ZCell Defendants' use of the registered trademarks was "willful," then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 for each trademark that the ZCell Defendants used, for each type of goods sold, offered for sale, or distributed.

"Willful" infringement means that Defendants acted with actual knowledge or recklessly disregarded the possibility that their conduct would infringe Republic's trademarks. Willfulness does not need to be proven directly, but may be inferred from the facts and circumstances of the case.

The burden is on Republic to prove willfulness by a preponderance of the evidence. A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Republic's claim is more likely true than not true. A finding of willfulness, however, is not required in order to award statutory damages.

Each group of Defendants is responsible for their own conduct, and Republic is entitled to recover separate statutory damages awards against each group of Defendants. The amount of damages that you choose to award to Republic for the Star Defendants' infringement should not impact the amount of damages that you

74

choose to award to Republic for the ZCell Defendants' infringement, or vice versa. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts.

Indicate the amount of your statutory damages award against (1) Star and (2) the ZCell Defendants, in the spaces provided on the verdict form.

---

Sources: 11th Cir. Pat. Jury Instr. §§ 3.7.1, 9.32, 10.6 (2022); 15 U.S.C. § 1117(c); *Anthem Indus. LLC v. Dawson*, 2017 WL 6996371, at \*4 (N.D. Ga. Oct. 31, 2017); *adapted from jury instructions entered in Top Tobacco, L.P. et al. v. Diamond J Wholesale, LLC d/b/a Gabsons Novelties et al.*, 1:19-cv-2148 (N.D. Ga. 2022); *Omega SA et al. v. 375 Canal, LLC et al.*, 1:12-cv-6979, Dkt. No. 307 at 100-104 (S.D.N.Y. 2019); *Coach, Inc. et al. v. Goodfellow*, 2:10-cv-2410, Dkt. No. 154 at 172 (W.D. Tenn. 2012).

**<u>Proposed Instruction No. 10 (Closing)</u>:**

**Personal Liability for Star's Trademark Infringement and Counterfeiting – Hudda**

The law provides that individuals can be liable for trademark infringement and counterfeiting. As I have explained, in an earlier phase of this case, it was already decided that Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting. You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.

Mr. Hudda is individually liable if you find that he actively participated as a moving force in the decision to engage in Star's infringing or counterfeiting acts, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

Mr. Hudda may be held liable without regard to his knowledge of or willful blindness towards infringement as long as he actively caused the infringing acts as a moving, conscious force.

The law does not require that Mr. Hudda personally participate or engage in infringing or counterfeiting acts to be held individually liable for infringement and counterfeiting. Specific knowledge of infringement or counterfeiting is also not required for you to find that Mr. Hudda is liable for Star's trademark infringement and counterfeiting.

Sources: *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 287 F. Supp. 3d 1338, 1348 (N.D. Ga. 2017) (citation omitted); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No. 1:19-cv-4939, Order (Dkt. No. [241]), at 51–57 (N.D. Ga. Sept. 7, 2021).

**Proposed Instruction No. 11 (Closing):**

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

As I have explained, the ZCell Defendants have brought claims against the Third Party TN Vape Group. The ZCell Defendants' claims against the Third Party TN Vape Group are legally separate from Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants. The Star Defendants' liability to Republic does not depend on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way. The ZCell Defendants' liability to Republic does not depend on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way. You must

78

decide Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants as a wholly separate and independent matter, regardless of any decision you reach on ZCell Defendants' claims against the Third Party TN Vape Group. You should determine the amount of damages that the Star Defendants must pay to Republic for their own acts, and the amount the ZCell Defendants must pay to Republic for their own acts, before you decide whether the ZCell Defendants have proved their third party claims against Third Party TN Vape Group.

In deciding what amount of damages the ZCell Defendants must pay Republic for the ZCell Defendants' sale of counterfeit products, you should not consider, in any way, whether the ZCell Defendants can recover any portion of the damages you award to Republic, from Third Party TN Vape Group.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information

79

should remain in the jury room and not be shared with anyone, including me, in your

note or question.

---

Source:  11th Cir. Pat. Jury Instr. § 3.9 (2022); O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 106:03 (6th ed.); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No.1:190cv04939, Order (Dkt. No. [241]), at 34–35 (N.D. Ga. Sept. 7, 2021).

## DEFENDANTS' CONTESTED INSTRUCTIONS

The following instructions are proposed by the Defendants in place of the

Contested Instructions proposed by Republic.[5]

---

[5] Defendants state that they did not see Republic's written objections to Defendants' instructions until just prior to filing at 11:59am EST.  Defendants reserve the right to respond further in writing.  Republic respectfully states that the Court's Standing Order instructs the parties that, "[w]here an instruction is not agreed upon, the parties should indicate who is proposing the instruction and the legal basis for the instruction and for the other party's opposition to the instruction," such that the Defendants' reservation of rights is not appropriate.

**<u>Instruction No. 1</u>:**

**Issues for the Jury**

Some findings in this case have already been made; others have been left for you to decide based on the evidence presented.

First, I found that Star, the company, is liable to Republic for federal counterfeiting and trademark infringement.

Second, I found that ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement.

Third, I found that ZCell's owner, Samadali "Samad" Lakhani, is personally liable to Republic for federal counterfeiting and trademark infringement.

I have made no findings, and am expressing no opinions, on the amount of damages Star, ZCell, or Mr. Lakhani should have to pay to Republic, or whether their use of the counterfeit trademarks was willful. Those questions are for you, the jury. It is also up to you to decide whether Mr. Hudda, the president of Star, is personally liable for Star's use of the counterfeit trademarks.

For Star and Mr. Hudda, your role is to determine:

(1)  the amount of damages Star must pay Republic;

(2)  whether Star's use of the counterfeit trademarks was willful; and

(3)  whether Mr. Hudda is personally liable for Star's use of the counterfeit trademarks.

82

For ZCell and Mr. Lakhani, your role is to determine:

(1)     the amount of damages ZCell and Mr. Lakhani must pay Republic; and

(2)     whether ZCell and Mr. Lakhani's use of the use of the counterfeit

trademarks was willful.

*Source:  Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case
No.1:190cv04939, Dkt. Nos. [237], 241.

**Republic's Objections:**

Republic objects to the Star Defendants' proposed instruction because it does not accurately inform the jury of the Court's prior findings in its Orders granting partial summary judgment on liability (Dkt. Nos. [237], [241]) and fails to give the jury sufficient parameters for the questions it must decide.

First, Republic objects because the language deleted from Republic's proposed instruction accurately and neutrally informs the jury that the Court has made rulings, that several facts have been stipulated to or are otherwise undisputed, and logically frames the forthcoming list of the Court's specific findings. (proposing to delete "I have already decided that certain Defendants are liable to Republic for trademark infringement and counterfeiting in this case, and many of the facts have already been decided.  Those findings were as follows: …").

Second, the Star Defendants selectively delete several claims on which the Court granted Republic partial summary judgment. (proposing to delete ". . . unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition").   Republic asserted causes of action for federal trademark counterfeiting and federal trademark infringement, as well as federal unfair competition and false designation of origin, Georgia statutory unfair competition,

83

violations of the Georgia Uniform Deceptive Trade Practices Act, common law trademark infringement, and common law unfair competition.  *See* Am. Compl. ¶¶ 86-175 (Dkt. No. [88]); Dkt. No. [237] at 25; Dkt. No. [241] at 25.  In granting Republic's motions for partial summary judgment on liability, the Court noted that "the same elements govern" each of Republic's foregoing claims.  Dkt. No. [237] at 29-30; Dkt. No. [241] at 28-29.  The Star Defendants' proposed deletion is not factually or legally accurate, and thus misstates the Court's findings.

Third, the Star Defendants seek to delete language taken directly from the Court's Order granting partial summary judgment against Mr. Lakhani.  (proposing to delete ". . . was chiefly responsible for ZCell's buying and selling counterfeit cigarette rolling papers, and, therefore, actively caused the infringement as a moving, conscious force. I have thus found that Mr. Lakhani . . .").  Indeed, the deleted language is nearly verbatim.  See Dkt. No. [237] at 44 ("On this record, the Court finds Defendant Lakhani was chiefly responsible for buying and selling counterfeit rolling papers and, therefore, 'actively caused the infringement as a moving, conscious force.'").  Republic's inclusion of this language thus accurately states the Court's findings, which the Defendants have indicated they do not intend to re-litigate at trial.

Fourth, the Star Defendants' recitation of the limited issues the jury must decide is objectionable because it is confusing to the jury: it instructs the jury that it must decide the amount of damages to award Plaintiff, then that the jury must decide whether the defendants acted willfully—with no explanation whatsoever of how that finding impacts the damages award.  This is improper and prejudicial, and gives relatively cursory treatment to the very issues the jury is being asked to decide.

In contrast, Republic's proposed recitation of the issues clearly and logically explains the jury's determinations and their relationship to each other; *i.e.*, that the jury will decide the amount of damages to award Republic for the defendants' acts of trademark infringement and counterfeiting, and also will decide whether the defendants' actions were committed willfully such that the amount of damages should be increased under the law.  Republic's proposed language on the jury issues incorporates edits initially suggested by the Star Defendants.

84

**Instruction No. 2:**

**Damages**

You must consider whether, and to what extent, money damages should be awarded for Star's violation of Republic's trademarks by counterfeiting.

Republic seeks what is known as an award of "statutory damage." Statutory damages are damages established by Congress in the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting. However, an award of statutory damages should not constitute a windfall for the Plaintiffs. You may award statutory damages between $1,000 and $200,000 for each trademark that Republic proves Star used, for each type of goods sold, offered for sale, or distributed.

If Republic proves that Star's use of the counterfeit trademarks was willful, then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 per type of goods sold, offered for sale, or distributed.

*Source:  Pattern Civ. Jury Instr. 11th Cir. 10.6 (2022); Peer International Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 569 (S.D.N.Y. 1995).

**Republic's Objections:**

85

Republic objects to the Star Defendants' proposed instruction because it fails to give the jury sufficient parameters for awarding statutory damages. Although the Star Defendants' proposed instruction includes portions of the 11th Circuit pattern instruction, it is incomplete considering the wide discretion afforded to the jury. The Star Defendants' proposed instruction is further objectionable because it does not appropriately instruct the jury as to the separate nature of Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants, and that the jury's decision to render an award against one group should play no role in the jury's decision as to the other group.

Additionally, the Star Defendants' proposed instruction purports to include a sentence that does not appear in the Eleventh Circuit Pattern or supported by any citation to Eleventh Circuit law. Indeed, the objectionable language ("However, an award of statutory damages should not constitute a windfall for the Plaintiffs") is supported only by a stale, out-of-circuit copyright case.

In counterfeiting cases, a plaintiff may elect statutory damages in lieu of actual damages at any time before final judgment, for a sum between $1,000 and $200,000 per counterfeit mark. 15 U.S.C. § 1117(c)(1). Where a defendant has committed willful counterfeiting, as here, a plaintiff may recover up to $2 million per mark per type of good, plus treble damages. 15 U.S.C. § 1117(b), (c)(2).

Congress created statutory damages "as an alternative to traditional awards based on actual losses under subsections 1117(a) and (b)." *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 WL 22331254, at *28 (N.D. Ga. May 9, 2003) (citation omitted). Trademark owners are entitled to statutory damages even where "no actual damages are proven, or actual damages and profits are difficult and impossible to calculate." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990). Congress added Section 1117(c) to ensure adequate compensation and to deter future violations by counterfeiters. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), amended (June 28, 2002) ("The purpose of § 1117 … is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters.").

In view of these policies, the Lanham Act authorizes "a statutory range of damages so that courts may tailor awards to the scope of the conduct and the culpability of the defendant." *Microsoft Corp. v. Moss*, No. CIVA 106-CV-1670-JOF, 2007 WL 2782503, at *7 (N.D. Ga. Sept. 20, 2007). The factfinder thus has

86

wide discretion in determining an award of statutory damages, *Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1355 (N.D. Ga. 2011).

Given the wide discretion afforded to the jury to award statutory damages, Republic's proposed instruction properly informs the jury of the purpose of statutory damages and why Republic is still entitled to damages even when it elects not to prove actual damages.  In so doing, Republic properly tracks the case law in this Circuit.  Conversely, by adding a sentence (drawn from an out-of-circuit case) that Republic should not receive a "windfall," the Star Defendants improperly suggest that Republic should not be awarded statutory damages if it elects not to prove actual damages—which is contrary to its Congressional purpose.  *See also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (in copyright case, noting that statutory damages are appropriate even where "no actual damages are proven, or actual damages and profits are difficult and impossible to calculate.").

87

**Instruction No. 3:**

**Willfulness**

Trademark infringement is "willful" if the defendant deliberately duplicated the plaintiff's trademark(s) in a way that was calculated to benefit from the plaintiff's reputation.  Willfulness can be inferred if a defendant continued infringing behavior after being given notice.

Sources*:  Tom McLeod Software Corp. v. Teknowlogi Applied Intel., LLC*, No. 1:20-CV-00732-JPB, 2021 WL 5033480, at *3 (N.D. Ga. June 4, 2021); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Motor Components, L.L.C. v. Imex Serv., Inc.*, No. 04-22371-CIV, 2005 WL 8155973, at *4 (S.D. Fla. Apr. 19, 2005); *Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998).

**Republic's Objections:**

Republic objects to the Star Defendants' proposed instruction because it fails to state the correct and applicable law, and is insufficient and improper.

In awarding statutory damages for trademark counterfeiting under 15 U.S.C. § 1117(c), courts within and outside this Circuit consistently define willfulness as when a defendant "acted with actual knowledge or reckless disregard for whether its conduct infringed …" *Kason Indus., Inc. v. L & T Restaurant Equip. Inc.*, 2019 WL 9633211, at *7 (N.D. Ga. Dec. 17, 2019) (ellipses in original); *see also*, *e.g.*, *Anthem Indus., LLC v. Dawson*, 2017 WL 6996371, at *4 (N.D. Ga. 2017). ("[c]ourts have defined 'willful' infringement as when the infringer acted with actual knowledge or reckless disregard."); *Keefe Group, LLC v. Rajab*, 2021 WL 4173842, at *5 (M.D. Fla. Aug. 19, 2021) ("A trademark infringement is 'willful' when ''the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark].'"); *Luxottica Group S.p.A. v. President Optical*

88

*Inc.*, 2020 WL 6115100, at *4 (S.D. Fla. May 20, 2020) ("Courts in our district have defined willful infringement 'as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark].'"); *Abercrombie & Fitch Trading Co. v. Importrade USA, Inc.*, 2009 WL 10668408, at *2 (S.D. Fla. 2009) ("Courts in the Eleventh Circuit have "defined willful infringement 'as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark].'"); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) (holding that, for purposes of awarding statutory damages under the analogous provision of the Copyright Act, willful copyright infringement "encompasses reckless disregard of the possibility that one's actions are infringing").

Republic's proposed instruction on willfulness (included in its contested Proposed Instruction No. 9)[6] reflects this well-settled standard of "actual knowledge" or "reckless disregard."

The Star Defendants' proposed instruction is insufficient, legally incorrect, and misleading because it omits any mention of this Circuit's standard definition of willfulness. The proposed instruction is further insufficient, legally incorrect, and misleading because it omits that willfulness may be satisfied by reckless disregard. And the proposed instruction is also insufficient, legally incorrect, and misleading in that it suggests that willfulness may only be met by evidence that the Defendants "deliberately duplicated the plaintiff's trademark(s) in a way that was calculated to benefit from the plaintiff's reputation."

Tellingly, the first two cases cited by the Star Defendants do not even support their suggested language:

- *Tom McLeod Software Corp. v. Teknowlogi Applied Intelligence, LLC*— the Star Defendants' first cited case and only N.D. Ga. authority—does not articulate the standard for willfulness at all. *See* 2021 WL 5033480 at *3 (N.D. Ga. June 4, 2021). It merely found that the fact that the defendant ignored cease and desist letters was evidence that it acted willfully. *Id.*

---

[6] Republic is not opposed to providing an instruction on willfulness separately from an instruction on statutory damages.

- The Star Defendants' second citation to *PetMed Express, Inc. v. MedPets.Com, Inc.* case fares no better; in fact, the case directly supports <u>Republic's</u> proposed instruction, not the Star Defendants' instruction. In *PetMed Express*, the court expressly states that "[t]his Court has defined willful infringement 'as when the infringer acted with **actual knowledge or reckless disregard** for whether its conduct infringed upon the plaintiff's [trademark].'" *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1220 (S.D. Fla. 2004) (citing *Arista Records, Inc. v. Beker Enter., Inc.*, 298 F.Supp.2d 1310, 1312 (S.D. Fla. 2003)) (emphasis added).

Instead, the Star Defendants' proposed instruction seeks to erroneously limit the definition of willfulness to a sentence drawn from a single unpublished S.D. Fla. case, which in turn relies on a non-controlling Fifth Circuit case[7] that involved actual damages and mandatory treble damages under 15 U.S.C. § 1117(a) and (b)—<u>not</u> statutory damages under 15 U.S.C. § 1117(c).

It is clear from cases that correctly state the definition of willfulness that the Star Defendants' proposed "definition" of willfulness is actually an example of what *may* demonstrate willfulness. *See Abercrombie & Fitch Trading Co. v. Importrade USA, Inc.*, 2009 WL 10668408, at *2 (citing the "actual knowledge or reckless disregard" definition, and noting that willful conduct "entails 'an aura of indifference to plaintiff's rights' **or** a 'deliberate and unnecessary duplicating of a plaintiff's mark ... '") (emphasis added).

The Star Defendants' proposed instruction also erroneously limits the circumstances from which willfulness can be inferred to one instance—continuing to infringe after being notified. But the Eleventh Circuit has made clear that knowledge need not be proven directly, but may be inferred from the facts and circumstances of the case. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (noting several facts that could "support an inference of knowledge or willful blindness," which was not limited to and did not include continued infringement after notice).

Accordingly, the Star Defendants' proposed instruction on willfulness is objectionable because it is erroneously limited, insufficient, legally incorrect, and

---

[7] In any case, the cited Fifth Circuit case, *Rolex Watch U.S.A., Inc. v. Meece*, does not contain the Star Defendants' proposed instruction language.

misleading.  Republic incorporates by reference its objection to the Star Defendants'
contested Proposed Instruction No. 4.

**Instruction No. 4:**

**Individual Liability of Mr. Hudda**

Mr. Hudda is individually liable if you find that he actively caused Star's use of the counterfeit trademarks as a moving, conscious force. This means that he actively participated as a moving force in the decision to use the counterfeit trademarks, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

Sources:    *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 287 F. Supp. 3d 1338, 1348 (N.D. Ga. 2017); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No. 1:19-cv-4939, Order (Dkt. No. [241]), at 51–57 (N.D. Ga. Sept. 7, 2021).

**Republic's Objections:**

Republic objects to the Star Defendants' proposed instruction because it fails to give the jury sufficient parameters for deciding Mr. Hudda's personal liability. Specifically, the Star Defendants' proposed instruction is insufficient because it fails to instruct the jury on the levels of knowledge and participation required for purposes of evaluating personal liability. The Star Defendants' omissions are objectionable and prejudicial to Republic, as the jury is likely to be confused as to what "active[]" and "conscious" means without further instruction. Indeed, the Star Defendants themselves have argued that Republic must show that "Hudda had knowledge of the infringement," which this Court has rejected. (Dkt. 241 at 52.)

92

In contrast, Republic's proposed instruction properly states the law and provides necessary context so that the jury understands its charge.

Republic's proposed instruction first instructs the jury that "the law provides that individuals can be liable for trademark infringement and counterfeiting." *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d F.2d 1472, 1477 (11th Cir. 1991); Order (Dkt. No. [241]) at 51.

Republic's proposed instruction then explains why the jury is tasked with deciding Mr. Hudda's personal liability for a distinct legal entity's acts. (". . . it was already decided that Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting.  You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.").

Republic's proposed instruction goes on to accurately state the law regarding the levels of knowledge and participation that would render an individual officer liable.  This language is taken directly from this Court's Order, and thus reflect the Court's findings which the Defendants have indicated they do not intend to re-litigate at trial.  *See* Dkt. 241 at 52 ("The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur.") (citing *Chanel*, 931 F.2d at 1478 n.8); *id.* at 56 ("Defendant Hudda thus may be held liable without regard to his knowledge of or willful blindness towards infringement as long as he actively caused the infringing acts as a moving, conscious force."); *id.* at 52 ("Eleventh Circuit law . . . does not require specific knowledge of trademark infringement as a prerequisite to individual liability.").

**Proposed Closing Instruction No. 5:**

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

As I have explained, ZCell and Mr. Lakhani have brought claims against the Third Party TN Vape Group. ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group are legally separate from Republic's claims against Star and Mr. Hudda and Republic's claims against ZCell and Mr. Lakhani. Star or Mr. Hudda's liability to Republic does not depend on the outcome of ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group in any way. ZCell and Mr. Lakhani's liability to Republic does not depend on the outcome of ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group in any way. You must

94

decide Republic's claims against Star and Mr. Hudda and Republic's claims against ZCell and Mr. Lakhani as a wholly separate and independent matter, regardless of any decision you reach on ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group.

In deciding what amount of damages ZCell and Mr. Lakhani must pay Republic for ZCell and Mr. Lakhani's sale of counterfeit products, you should not consider, in any way, whether ZCell and Mr. Lakhani can recover any portion of the damages you award to Republic, from Third Party TN Vape Group.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Source:  11th Cir. Pat. Jury Instr. § 3.9 (2022); O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 106:03 (6th ed.); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No.1:190cv04939, Order (Dkt. No. [241]), at 34–35 (N.D. Ga. Sept. 7, 2021).

**<u>Republic's Objections:</u>**

Republic objects to the Defendants' proposed instruction because it does not appropriately instruct the jury as to the separate nature of Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants, and the ZCell Defendants' claims against the Third Party TN Vape Group.

There is no federal common law right to indemnity or contribution under which the ZCell Defendants can assert claims for their direct infringement under the Lanham Act. *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). There is also no express right of contribution or indemnity under the Lanham Act. *See id*. at 16; 15 U.S.C. § 1117. Nor does the Lanham Act impliedly permit a right to contribution. *See e.g. Wagner v. Circle W. Mastiffs*, No. 2:08–CV–00431, 2010 WL 1009904, at *9 (S.D. Ohio Mar. 12, 2010) (compiling cases); *Getty Petroleum Corp.*, 862 F.2d at 16; *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 69 F. Supp. 2d 678, 684, 687 (M.D. Pa. 1999).  Thus, neither the Star Defendants' nor ZCell Defendants' liability to Republic depends on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way.

96

# ZCELL'S INSTRUCTIONS RELATING TO THIRD-PARTY CLAIMS AGAINST TN VAPE THIRD-PARTY DEFENDANTS

The following instructions are proposed by the ZCell Defendants for use in resolving their third-party claims against the TN Vape third-party defendants.[8]

---

[8] The ZCell Defendants provided these instructions at 10:36 am EST, shortly before the filing deadline, such that the parties did not have an opportunity to review, confer, object, or provide alternative instructions. Republic respectfully seeks leave to submit objections or alternative language, if appropriate.

**<u>Third-Party Instruction No. 1:</u>**

**Contracts for Sales of Goods**

A contract is an agreement between two or more parties for the doing or not doing of some specified thing.

When a seller of goods makes a promise to the buyer which relates to the goods and becomes the basis of the bargain, the seller creates an express warranty that the goods shall conform to the affirmation or promise. The seller need not use words like "warranty" or "guarantee" to create an express warranty.

A contract for the sale of goods implies a warranty of merchantability of the goods. An implied warranty protects the buyer against latent defects that are not discoverable by the exercise of caution on his part.

*Source: Georgia Pattern Jury Instruction 16.010; O.C.G.A. § 13-1-1; O.C.G.A. § 11-2-313(1)(a), (2); O.C.G.A. § 11-2-314(1); Willis Min., Inc. v. Noggle, 235 Ga. App. 747, 748-49 (1998).*

98

**<u>Third-Party Instruction No. 2:</u>**

**Damages for Breach of Contract**

Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach and such as the parties contemplated when the contract was made as the probable result of the breach. The amount of damages at the date of breach of contract may be increased by the addition of legal interest from that time until the time of recovery.

*Source: Georgia Pattern Jury Instruction 18.010; O.C.G.A. §§ 13-6-1, 13-6-2, 13-6-7; Georgia Pattern Jury Instruction 18.040; O.C.G.A. § 13-6-13; 7-4-15.*

99

**<u>Third-Party Instruction No. 3:</u>**

**Implied Contractual Indemnity**

An action for breach of warranty against the seller for damages suffered at the hands of a third party is also an action for implied indemnity. If you find that ZCell or Samad Lakhani are responsible to Republic for damages, and you find that the TN Vape Defendants breached any express warranty to ZCell or Samad Lakhani, then you may find that the TN Vape Defendants are required to indemnify ZCell or Samad Lakhani for the damages they are required to pay Republic. In this event, you may also award ZCell and Samad Lakhani the attorneys' fees they incurred in defending against Republic's claims.

*Source: Insituform Tech., Inc. v. AMerik Supplies, Inc., 850 F.Supp.2d 1336, 1356-57, 1364 (2012); O.C.G.A. § 11-2-715.*

100

**<u>Third-Party Instruction No. 4:</u>**

**Fraud Generally**

A person commits fraud when that person makes a misrepresentation that is intended to deceive and that does deceive. Fraud may not be presumed, but slight circumstances may be enough to prove its existence. To prove fraud, the following elements are required:

1. a false representation,

2. intent to deceive,

3. an intention to induce the plaintiff to act or refrain from acting in reliance on the false representation,

4. justifiable reliance by the plaintiff on the false representation, and

5. damage to the plaintiff.

*Source: Georgia Pattern Jury Instruction 26.010; Thompson v. Wilkins, 143 Ga. App. 739 (1977); O.C.G.A. §§ 23-2-51; 23-2-57*

101

**<u>Third-Party Instruction No. 5:</u>**

**Fraud in the Sale of Goods**

When a buyer of personal property makes a material representation that is false and the seller relies upon the misrepresentation and delivers possession of goods, such a misrepresentation amounts to a fraud in law and voids the sale. Equity may then rescind the contract and restore the parties to their original positions, even though the party making such misrepresentation was not aware that the statement was false.

When there is a claim of material misrepresentation of fraud about a sale of goods, the defrauded party is entitled to an appropriate remedy. The right of the defrauded party to void the contract of sale or return the goods does not prevent the defrauded party from making a claim for damages or pursuing other remedies under the law.

*Source: Georgia Pattern Jury Instructions 26.100, 26.400.*

**<u>Third-Party Instruction No. 6:</u>**

**Georgia's Fair Business Practices Act**

A person or company violates Georgia's Fair Business Practices Act when it passes off goods or services as those of another, or causes actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods and services. An intentional violation of Georgia's Fair Business Practices Act by a company shall be deemed to also be a violation of the individual officers, directors, or employees of the company who knew of the acts constituting the violation and who directly authorized, supervised, ordered, or participated in the violation.

*Source: O.C.G.A. § 10-1-393(b); O.C.G.A. § 10-1-405(d).*

**Third-Party Instruction No. 7:**

**Damages for Violations of Georgia's Fair Business Practices Act**

A person who suffers injury or damages because of a violation of Georgia's Fair Business Practices Act is entitled to recover his or her damages related to the violation. Such person is also entitled to their reasonable attorneys' fees and expenses of litigation incurred in connection with the action.

*Source: O.C.G.A. § 10-1-399(a), (d).*

**<u>Third-Party Instruction No. 8:</u>**

**Attorneys' Fees Generally**

If the defendant has acted in bad faith or has been stubbornly litigious or has caused the plaintiff unnecessary trouble and expense, you may allow them. You should determine from the evidence the attorney's fees (or other expense), if any, as will be allowed.

*Source: Georgia Pattern Jury Instruction 18.020; O.C.G.A. § 13-6-11.*

# COURT'S EXHIBIT 2

**<u>Proposed Closing Instruction No. 1:</u>**

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I instructed you at the beginning of this case, the Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships. Republic Technologies (NA), LLC is a legal entity known as a limited liability company. You have heard us refer to the Plaintiffs collectively as "Republic" and I will continue to do so in these closing instructions.

As I explained previously, there are two separate groups of Defendants in this case. The first group of Defendants is Star Importers & Wholesalers, Inc., and its owner, Amin S. "Monty" Hudda. You have heard us refer to Star Importers & Wholesalers, Inc. as "Star" for short. Star is a legal entity known as a corporation. You have heard us refer to Star and Mr. Hudda as a group as "Star and Mr. Hudda."

1

The second group of Defendants is Ziya Business, Inc. and its owner, Samadali Lakhani. Ziya Business, Inc. does business under the name "ZCell & Novelties," so you have heard us refer to Ziya Business, Inc. as "ZCell" for short. ZCell is a legal entity known as a corporation. You have heard us refer to ZCell and Mr. Lakhani as a group as "ZCell and Mr. Lakhani."

As I explained at the beginning of this case, ZCell and Mr. Lakhani brought third party claims against Alex Seriana and two of his companies, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale. TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale are legal entities known as a limited liability company. You have heard us refer to Mr. Seriana, TN Vape, LLC and TN Vape & Smoke Shop, LLC d/b/a Greenbrier Wholesale collectively as the "Third Party TN Vape Group."

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Proposed Closing Instruction No. 2:**

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

3

You should remember all of my prior instructions about the prohibition on consulting outside sources or individuals.  For example, you shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Source:  11th Cir. Pat. Jury Instr. §§ 1.1, 3.3 (2022).

**Proposed Closing Instruction No. 3:**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Source:  11th Cir. Pat. Jury Instr. § 3.4 (2022).

**Proposed Closing Instruction No. 4:**

**Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Source:  11th Cir. Pat. Jury Instr. § 3.5.2 (2022).

6

**Proposed Closing Instruction No. 5:**

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness(es)], taken on [date], has been presented to you [by video/by reading the transcript].

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Source:  11th Cir. Pat. Jury Instr. § 2.2 (2022).

7

**Proposed Closing Instruction No. 6:**

**Use of Interrogatories**

You've heard answers that [name of party(ies)] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party(ies)] gave the answers in writing while under oath.

You must consider the answers [name of party(ies)] gave to the other side's interrogatories as though [name of party(ies)] gave the answers on the witness stand.

---

Source:  11th Cir. Pat. Jury Instr. § 2.6 (2022).

8

**Proposed Closing Instruction No. 7:**

**Finding that Official Report Made**

Where it is the duty of a lower or subordinate official to report to the official's superior, or where it is the duty of a superior official to report or give information to a lower or subordinate official, you may find this official duty was regularly performed, in the absence of evidence in the case leading you to a different conclusion.

---

Source:  O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 104:22 (6th ed.).

9

**<u>Proposed Closing Instruction No. 8:</u>**

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

Source:  11th Cir. Pat. Jury Instr. § 3.6.1 (2022).

**Proposed Closing Instruction No. 9:**

**Two or More Parties—Different Legal Rights**

You should decide the case as to (1) Republic's claims against Star and Mr. Hudda, (2) Republic's claims against ZCell and Mr. Lakhani, and (3) ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group, separately.

Unless otherwise stated, the instructions apply to all parties.

Source:  9th Cir. Civ. Jury Instr. 1.8 (2022)

11

**Proposed Closing Instruction No. 10:**

**Duty to Deliberate When Only the Plaintiff Claims Damages**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Source:  11th Cir. Pat. Jury Instr. § 3.8.1 (2022).

12

# I.    JURY VERDICT FORM

## **CONTESTED INSTRUCTIONS**

Republic's proposed contested instructions are in black font.

The Defendants' proposed contested instructions are in red font.

The ZCell Defendants' proposed contested instructions as to their Third are in blue font.

## PLAINTIFFS' PROPOSED CONTESTED INSTRUCTIONS

The following instructions are proposed by Republic.  Where appropriate, Republic has indicated whether an instruction is proposed to be read before, during, and/or at the close of trial.

Fla. 2014).

**<mark>Proposed Instruction No. 6 (Pretrial, During, and/or Closing):</mark>**

**Stipulations—Republic and the Star Defendants[1]**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

For Republic's claims against <u>the Star Defendants</u>, Republic and the Star Defendants have stipulated to the following facts:

1.      Plaintiff Top Tobacco, L.P. ("Top") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

2.      Top owns and maintains the trademarks TOP®,  ®,  ®, and ® for use in connection with rolling papers and related goods (collectively, the "TOP® marks").

---

[1] Defendants object to the inclusion of these stipulations in the Jury Instructions, and request that they be provided to the jury separately from the instructions, and as separate documents for each group of Defendants.

17

3.      Plaintiff Republic Technologies (NA), LLC ("Republic Technologies") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

4.      Republic Technologies owns and maintains the trademarks JOB®,



®,



®, and ® for use in connection with rolling papers and related goods (collectively, the "JOB® marks").

5.      Plaintiff Republic Brands, L.P. (formerly known as Republic Tobacco, L.P.) ("Republic Brands") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

6.      Top and Republic Technologies contract exclusively with Republic Brands to promote, distribute, and sell TOP® and JOB® products to wholesalers and retailers across the United States.

18

7.    Defendant Star Importers & Wholesalers, Inc. ("Star") is a Georgia corporation with a primary place of business located at 2166 Mountain Industrial Boulevard, Tucker, Georgia 30084 (the "Star Warehouse").

8.    Defendant Amin S. "Monty" Hudda ("Hudda") is the Owner and President of Star.

9.    Top owns and maintains several federal trademark registrations for the TOP® marks, including, among others, U.S. Registration Nos. 2739465, 2831105, 3677986, and 3677987 for "cigarette rolling papers" and U.S. Registration No. 3407400 for "cigarette rolling paper booklets" (collectively, the "TOP® Registrations").

10.    Republic Technologies owns federal trademark registrations for the JOB® marks including, among others, U.S. Registration Nos. 73124, 1341384, 1357088, 3834324, 4019091, and 4019093 for "cigarette papers" (collectively, the "JOB® Registrations").

11.    Star is a business-to-business general merchandise wholesaler that sells to businesses like wholesalers, retailers, gas stations, and supermarkets.

12.    Star has sold rolling-paper products, including TOP® and JOB® products, for approximately 27 years.

19

13.     Star continues to offer for sale and sell rolling paper products bearing the TOP® and JOB® marks currently.

14.     Star was a direct customer of Republic from 2002 until 2019.

15.     Star was an exclusive direct-buying Republic customer from 2008 until 2016.

16.     In 2016, Defendants terminated Star's exclusive relationship with Plaintiffs.

---

Source:  11th Cir. Pat. Jury Instr. § 2.1 (2022).

**Proposed Instruction No. 7 (Pretrial, During, and/or Closing):**

**Stipulations—Republic and the ZCell Defendants[2]**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

For Republic's claims against the ZCell Defendants, Republic and the ZCell Defendants have stipulated to the following facts:

1.      Plaintiffs are the owners and exclusive U.S. distributor of rolling papers offered for sale, sold, and distributed under the trademarks TOP® and JOB®.

2.      Plaintiff Top Tobacco, L.P. ("Top") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

---

[2] Defendants object to the inclusion of these stipulations in the Jury Instructions, and request that they be provided to the jury separately from the instructions, and as separate documents for each group of Defendants.

21

3.    Top owns and maintains the trademarks TOP®,  ®,

 ®, and  ® for use in connection with rolling papers

and related goods (collectively, the "TOP® marks").

4.    Plaintiff Republic Technologies (NA), LLC ("Republic Technologies")

is a limited liability company organized under the laws of the State of Delaware,

with its principal place of business located at 2301 Ravine Way, Glenview, Illinois

60025.

5.    Republic Technologies owns and maintains the trademarks JOB®,

 ®, ®, ®,

 ®, and ® for use in connection with rolling

22

papers and related goods (collectively, the "JOB® marks"), in addition to other valuable marks.

6.     Plaintiff Republic Brands, L.P. (formerly known as Republic Tobacco, L.P.) ("Republic") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at 2301 Ravine Way, Glenview, Illinois 60025.

7.     Republic Brands is the exclusive, master distributor of TOP® and JOB® rolling papers in the United States.

8.     For many years, Top and Republic Technologies, and their predecessors and affiliates, including Republic Brands and its predecessors, have promoted, distributed, offered for sale, and sold rolling papers and related products under the federally registered and common law trademarks covering Plaintiffs' various TOP® and JOB® trademarks, designs, and logos.

9.     Top and Republic Technologies contract exclusively with Republic Brands to promote, distribute, and sell TOP® and JOB® products to wholesalers and retailers across the United States.

10.     Defendant Ziya Business, Inc. d/b/a ZCell & Novelties ("ZCell") is a Georgia corporation with a primary place of business located at 2053 Mountain

23

Industrial Boulevard, Tucker, Georgia 30084 (the "ZCell Warehouse) and 1745 Church Street, Suite B, Decatur, Georgia 30033 (the "Decatur Warehouse").

11.　Mr. Lakhani is the CEO, sole owner, and only officer of ZCell.

12.　For many years, Plaintiffs have been engaged in the distribution and sale of rolling papers.

13.　The TOP® and JOB® brands are two of the oldest rolling paper brands in the United States.

14.　Top and its predecessors have continuously used the TOP® mark to sell tobacco since at least 1900 and rolling papers in the United States since at least 1942.

15.　Republic Technologies and its predecessors have continuously used the JOB® mark to sell rolling papers since at least 1856.

16.　By volume of leaves, TOP® is the leading brand of roll-your-own tobacco in the United States.

17.　By booklets, JOB® rolling papers are the longest-selling rolling papers in the United States.

18.　From 2017-2019, Plaintiffs spent close to $6 million advertising and promoting the TOP® and JOB® marks and products sold in connection therewith, including attendance at trade shows and print advertising in trade publications.

19.    In the past five years, Plaintiffs have generated tens of millions of dollars in sales of TOP® and JOB® rolling papers, smoking tobacco, and related products.

20.    In 2019, Plaintiffs sold approximately $12.4 million in TOP® rolling papers in the United States.

21.    In 2019, Plaintiffs sold approximately $31.4 million in JOB® rolling papers in the United States.

22.    The TOP® and JOB® brands are among the best-known brands of rolling papers in the United States.

23.    Top owns and maintains several federal trademark registrations for the TOP® marks, including, among others, U.S. Registration Nos. 2739465, 2831105, 3677986, and 3677987 for "cigarette rolling papers" and U.S. Registration No. 3407400 for "cigarette rolling paper booklets" (collectively, the "TOP® Registrations").

24.    Republic Technologies owns numerous federal trademark registrations for the JOB® marks including, among others, U.S. Registration Nos. 73124, 1341384, 1357088, 3834324, 4019091, and 4019093 for "cigarette papers" (collectively, the "JOB® Registrations").

25.    Each of the TOP® and JOB® Registrations remain valid.

25

26.    The TOP® and JOB® marks have, at all times, been owned exclusively by Plaintiffs or their predecessors.

27.    Authentic TOP® and JOB® rolling papers are exclusively manufactured by Plaintiffs' affiliated entity, Republic Technologies (France) SAS in Perpignan, France.

28.    No legitimate TOP® or JOB® cigarette rolling papers are manufactured outside of France.

29.    Plaintiffs' laboratory in France knows the exact composition of genuine TOP® and JOB® papers.

30.    Authentic TOP® and JOB® papers are subject to Plaintiffs' strict quality control standards to ensure that their products comply with applicable laws and regulations in the U.S.

31.    Republic is the sole distributor authorized to purchase TOP® and JOB® brand items from the factories where they are produced.

32.    Republic is also the exclusive licensee of the TOP® and JOB® marks in the United States.

33.    Plaintiffs sell genuine TOP® and JOB® rolling papers to wholesalers and retailers nationwide, including in the Atlanta area.

26

34.    Under the TOP® brand, Plaintiffs sell rolling papers in different sizes (regular and half size) and volumes, including the TOP® 40/24 paper product.

35.    Some of Plaintiffs' offerings include: boxes of TOP® papers containing 24 booklets, promotional jars of TOP® papers containing 120 booklets, and promotional jars of TOP® papers containing 144 booklets, with each booklet comprising 100 "leaves" (individual rolling papers).

36.    Plaintiffs do not sell genuine TOP® papers in 100-count jars.

37.    The TOP® product packaging prominently displays the TOP Marks in multiple locations, including on all sides of the carton, on the top and bottom of individual booklets, and on the inner flap of each booklet.

38.    Plaintiffs, under the JOB® brand, sell various rolling papers, including JOB® Gold, JOB® Orange, and Job® French White, among others, in different sizes and volumes.

39.    Plaintiffs' JOB® Gold papers come in various sizes, including JOB® Gold 1.25 papers and JOB® Gold 1.5 papers.

40.    Plaintiffs sell two versions of their JOB® Gold 1.25 and JOB® Gold 1.5 papers: booklets that are pre-priced at $1.69 each and booklets that are not pre-priced.

27

41.    Genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are a promotional product that Plaintiffs only offer in 100-count jars or metal tins.

42.    Plaintiffs sell promotional jars or metal tins of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers in limited quantities to Plaintiffs' exclusive customers twice a year.

43.    Plaintiffs limit the amount of promotional jars of genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers that their exclusive customers can purchase directly.

44.    Genuine pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are not sold in boxes in any quantity.

45.    Plaintiffs sell two versions of JOB® 1¼ Orange ("JOB® Orange") papers: booklets that are pre-priced at 99¢ each and booklets that are not pre-priced.

46.    Plaintiffs sell pre-priced JOB® 1¼ Orange 99¢ papers ("JOB® Orange 99¢") in jars containing 100 booklets.

47.    Plaintiffs also sell refill boxes of pre-priced JOB® 1¼ Orange 99¢ papers containing 100 booklets.

48.    Pre-priced jars of JOB® Orange 99¢ papers are a promotional product that may be purchased directly from Plaintiffs by their direct-buying customers.

28

49.    A "case" of TOP® or JOB® papers packaged in jars contains 16 jars.

50.    The JOB® product packaging prominently displays the JOB® marks in multiple locations, including on all sides of the carton, on the top and bottom of individual booklets, on the inner flap of each booklet, and embossed on the leaves themselves.

51.    ZCell is a business-to-business wholesaler that sells general merchandise and novelty items to businesses like convenience stores and gas stations.

52.    Defendants operate ZCell out of two locations: their primary store, the ZCell Warehouse, a 28,000 square feet warehouse located in Tucker, Georgia, and the Decatur Warehouse, a 5,000 square foot showroom at in Decatur, Georgia.

53.    The ZCell Warehouse has approximately 8,000 square feet of storage space that customers are not permitted to enter.

54.    Defendants estimate ZCell's gross sales in 2019 to be approximately $16 million.

55.    ZCell sells rolling papers bearing the TOP® and JOB® marks to its customers.

56.    JOB® papers are ZCell's bestselling rolling paper brand.

29

57. Republic has never sold TOP® and JOB® products to either ZCell or Mr. Lakhani.

58. ZCell first started carrying TOP® and JOB® products in approximately 2013 or 2014.

59. Promotional jars of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers are popular, high-demand products for Defendants' customers, because these jars are limited in availability and are hard to find in the market.

60. Defendants initially purchased TOP® and JOB® papers from a company identified as Sessions Specialty Company ("Sessions").

61. Sessions is an exclusive Republic wholesale customer.

62. In 2017, Defendants purchased JOB® 1.5 jars and 1.25 jars from Sessions for $87.50.

63. In 2019, Sessions sold ZCell promotional jars of pre-priced JOB® Gold 1.25 $1.69 and JOB® Gold 1.5 $1.69 papers for $91.50 per jar.

64. According to Defendants' records, Defendants sold at least 1,076 jars of TOP- and JOB-branded papers between November 1, 2017 and May 13, 2019, for total sales of at least $83,421.64.

65. ZCell has offered for sale and sold products bearing TOP® and JOB® marks that were tested by Plaintiffs' laboratory and confirmed to be counterfeit.

66.     Certain TOP- and JOB-branded products seized from ZCell Defendants were tested by Plaintiffs' laboratory and confirmed to be counterfeit.

_____

Source:  11th Cir. Pat. Jury Instr. § 2.1 (2022).

**Proposed Instruction No. 8 (Closing):**

<mark>Trademark Infringement and Counterfeiting</mark>

As I explained at the outset of this trial, Republic seeks damages against the Star Defendants for trademark infringement, trademark counterfeiting, and unfair competition. Republic seeks damages against the ZCell Defendants for trademark infringement, trademark counterfeiting, and unfair competition.

To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

<mark>Should I be providing this discussion of what a trademark is and the following several paragraphs</mark>

This case involves trademarks, which are sometimes referred to simply as "marks."  A federal statute known as the Lanham Act protects rights to use trademarks.  A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own.  The purpose of trademark law is to prevent confusion among consumers

32

about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its use by others in an action for trademark infringement. This paragraph seems ok

33

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered trademark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law. This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods. <mark>This seems ok</mark>

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use no matter how inconsequential. A trademark owner's efforts at policing its trademarks is proof of the strength of its marks. <mark>This is ok as well</mark>

The parties have stipulated that Republic owns eleven federal registrations for the TOP® trademarks and JOB® trademarks: five federal registrations for the trademark TOP® for cigarette rolling papers, and six federal registrations for the trademark JOB® for cigarette rolling papers. Republic has the incontestable right to use these registered trademarks in commerce for the products they sell under the trademarks. <mark>This seems ok</mark>

34

Because Republic owns federal registrations for its trademarks, Defendants are deemed to have knowledge of these registrations and of the rights claimed in the registrations. This is known as "constructive notice," and Defendants cannot claim that they adopted the words, symbols or designations they used on their goods without knowledge of Republic's trademarks.   In this case, Republic enjoys nationwide constructive notice of rights dating back to the filing dates of their trademark applications, which are reflected in the trademark registration certificates. You are instructed that all of Republic's trademark applications for the registered trademarks you have seen today were filed before Defendants' alleged infringement of Republic's trademarks.  I am not sure this is needed

In an earlier phase of this case, the Court found, and you are instructed that you must accept for purposes of your determinations of Republic's claims against the Star Defendants in this case, each of the following findings: I should insert here from my other instruction

(1)   Republic has proven its federal and state law claims that Star infringed Republic's TOP® trademarks and JOB® trademarks and committed acts of unfair competition, false designation of origin, and deceptive trade practices.

35

(2)   Republic has proven its federal claim that Star counterfeited the TOP® trademarks and JOB® trademarks by selling counterfeit versions of TOP-branded and JOB-branded cigarette rolling paper products that were not manufactured by Republic.

(3)   Star's sale of counterfeit cigarette rolling papers constitutes infringement of Republic's TOP® trademarks and JOB® trademarks and likely confused consumers.

(4)   Republic owns valid trademarks that are entitled to protection.

(5)   Star used the TOP® and JOB® trademarks in commerce.

(6)   Star offered and sold counterfeit papers using identical TOP® and JOB® trademarks.

Because the Court has already found that Star is liable for trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, and deceptive trade practices, Republic is entitled to recover a monetary award for this infringement of its trademark rights in the TOP® trademarks and JOB® trademarks.  It is the jury's job to decide whether Mr. Hudda is personally liable for Star's acts.  Therefore, in this trial on Republic's claims against the Star Defendants, you, as the jury, will be responsible for making the following determinations regarding:

36

(1)    The dollar amount of damages to award to Republic for Star's acts of trademark infringement and counterfeiting;

(2)    Whether Star committed its acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law; and

(3)    Whether Mr. Hudda is personally liable for Star's infringement and counterfeiting of Republic's trademarks.

In an earlier phase of this case, the Court found, and you are instructed that you must accept for purposes of your determinations of Republic's claims against the ZCell Defendants in this case, each of the following findings:

(1)    Republic has proven its federal and state law claims that the ZCell Defendants infringed Republic's TOP® trademarks and JOB® trademarks and committed acts of unfair competition, false designation of origin, and deceptive trade practices.

(2)    Republic has proven its federal claim that the ZCell Defendants counterfeited the TOP® trademarks and JOB® trademarks by selling counterfeit versions of TOP-branded and JOB-branded cigarette rolling paper products that were not manufactured by Republic.

(3)    The ZCell Defendants' sale of counterfeit cigarette rolling papers constitutes infringement of Republic's TOP® trademarks and JOB® trademarks and likely confused consumers.

(4)    Republic owns valid trademarks that are entitled to protection.

37

(5)    The ZCell Defendants used the TOP® and JOB® trademarks in commerce.

(6)    The ZCell Defendants offered and sold counterfeit papers using identical TOP® and JOB® trademarks.

Because the Court has already found that ZCell and its owner, Mr. Lakhani, are liable for trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, and deceptive trade practices, Republic is entitled to recover a monetary award for this infringement of its trademark rights in the TOP® trademarks and JOB® trademarks.  Therefore, in this trial on Republic's claims against the ZCell Defendants, you, as the jury, will be responsible for making the following determinations regarding:

(1)    The dollar amount of damages to award to Republic for the ZCell Defendants' acts of trademark infringement and counterfeiting; and

(2)    Whether the ZCell Defendants committed their acts of counterfeiting willfully, such that the dollar amount of damages should be increased under the law.

Sources:  11th Cir. Pat. Jury Instr. § 10.1 (2022); Fed. Civ. Jury Instr. 7th Cir. § 13.1.1 (2020); Manual of Model Civ. Jury Instr. 9th Cir. §§ 15.1, 15.5 (2022); 15 U.S.C. § 1127; 15 U.S.C. § 1116(d)(1)(B); 15 U.S.C. § 1072;

15 U.S.C. § 1117; *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *Top Tobacco, L.P. et al. v. Diamond J Wholesale, LLC d/b/a Gabsons Novelties et al.*, 1:19-cv-2148, Dkt. Nos. 115, 121 (N.D. Ga. 2021); *adapted from jury instructions entered in Omega SA et al. v. 375 Canal, LLC et al.*, 1:12-cv-6979, Dkt. No. 307, at 92-93 (S.D.N.Y. 2019); *Buccellati Holding Italia SpA et al. v. Laura Buccellati LLC et al.*, 13-21297-CIV, Dkt. 257 at 10, 13 (S.D. Fla. 2014).

**Proposed Instruction No. 9 (Closing):**

**Trademark Counterfeiting – Statutory Damages I am doing this for Star and then we will confirm for Z Cell**

I will now instruct you on Republic's claims for money damages, the determinations you will make regarding those claims, and the law that you must apply in making those determinations.

For Republic's claims against the Star Defendants, it has already been decided that Star has committed counterfeiting by unlawfully using Republic's trademarks in the sale and distribution of counterfeit goods without Republic's authorization. Because the Court has already found that Star violated Republic's TOP® and JOB® trademarks by counterfeiting, you must consider the amount of money damages that should be awarded to Republic from Star.

Republic seeks what is known as an award of "statutory damages." Statutory damages are damages established by Congress in a law called the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting, both by the Defendants in this case and other infringers, actual or potential, who may engage in similar conduct.

Under the federal trademark infringement laws, Republic is entitled to recover an award of statutory damages for each of their trademarks that were counterfeited

40

on any of the goods that were sold, offered for sale, or distributed by Star and the ZCell Defendants. The parties have stipulated that Republic owns eleven (11) federally registered TOP® and JOB® trademarks for cigarette rolling paper products.

"Willful" infringement means that Defendants acted with actual knowledge or recklessly disregarded the possibility that their conduct would infringe Republic's trademarks. Willfulness does not need to be proven directly, but may be inferred from the facts and circumstances of the case.

The burden is on Republic to prove willfulness by a preponderance of the evidence. A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Republic's claim is more likely true than not true. A finding of willfulness, however, is not required in order to award statutory damages.

Because statutory damages serve both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages. Where does this come from

Insert Z Cell instruction after this

Each group of Defendants is responsible for their own conduct, and Republic is entitled to recover separate statutory damages awards against each group of

41

Defendants.  The amount of damages that you choose to award to Republic for the Star Defendants' infringement should not impact the amount of damages that you choose to award to Republic for the ZCell Defendants' infringement, or vice versa. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts.

---

Sources:  11th Cir. Pat. Jury Instr. §§ 3.7.1, 9.32, 10.6 (2022); 15 U.S.C. § 1117(c); *Anthem Indus. LLC v. Dawson*, 2017 WL 6996371, at *4 (N.D. Ga. Oct. 31, 2017); *adapted from jury instructions entered in Top Tobacco, L.P. et al. v. Diamond J Wholesale, LLC d/b/a Gabsons Novelties et al.*, 1:19-cv-2148 (N.D. Ga. 2022); *Omega SA et al. v. 375 Canal, LLC et al.*, 1:12-cv-6979, Dkt. No. 307 at 100-104 (S.D.N.Y. 2019); *Coach, Inc. et al. v. Goodfellow*, 2:10-cv-2410, Dkt. No. 154 at 172 (W.D. Tenn. 2012).

**Proposed Instruction No. 10 (Closing):**

**Personal Liability for Star's Trademark Infringement and Counterfeiting – Hudda**

The law provides that individuals can be liable for trademark infringement and counterfeiting. As I have explained, in an earlier phase of this case, it was already decided that Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting. You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.

Mr. Hudda is individually liable if you find that he actively participated as a moving force in the decision to engage in Star's infringing or counterfeiting acts, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

It is not necessary to show that Mr. Hudda specifically knew about the infringement or counterfeiting. In other words, Plaintiff does not have to show Mr. Hudda knew that his or the company's actions would result in the infringement. He is liable for the conduct so as long as he actively caused the infringing acts as a moving, conscious force, regardless of whether he knew his acts would result in the infringement. Do we need to say what willful blindness is

The law does not require that Mr. Hudda personally participate or engage in infringing or counterfeiting acts to be held individually liable for infringement and

43

counterfeiting. Specific knowledge of infringement or counterfeiting is also not required for you to find that Mr. Hudda is liable for Star's trademark infringement and counterfeiting.  Do we need this

---

Sources:  *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 287 F. Supp. 3d 1338, 1348 (N.D. Ga. 2017) (citation omitted); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No. 1:19-cv-4939, Order (Dkt. No. [241]), at 51–57 (N.D. Ga. Sept. 7, 2021).

44

**Proposed Instruction No. 11 (Closing):**

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

As I have explained, the ZCell Defendants have brought claims against the Third Party TN Vape Group. The ZCell Defendants' claims against the Third Party TN Vape Group are legally separate from Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants. The Star Defendants' liability to Republic does not depend on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way. The ZCell Defendants' liability to Republic does not depend on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way. You must

45

decide Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants as a wholly separate and independent matter, regardless of any decision you reach on ZCell Defendants' claims against the Third Party TN Vape Group. You should determine the amount of damages that the Star Defendants must pay to Republic for their own acts, and the amount the ZCell Defendants must pay to Republic for their own acts, before you decide whether the ZCell Defendants have proved their third party claims against Third Party TN Vape Group.

In deciding what amount of damages the ZCell Defendants must pay Republic for the ZCell Defendants' sale of counterfeit products, you should not consider, in any way, whether the ZCell Defendants can recover any portion of the damages you award to Republic, from Third Party TN Vape Group.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information

46

should remain in the jury room and not be shared with anyone, including me, in your

note or question.

---

Source:  11th Cir. Pat. Jury Instr. § 3.9 (2022); O'Malley's Federal Jury Practice and
Instructions, 3 Fed. Jury Prac. & Instr. § 106:03 (6th ed.); *Top Tobacco,
L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case
No.1:190cv04939, Order (Dkt. No. [241]), at 34–35 (N.D. Ga. Sept. 7,
2021).

47

## DEFENDANTS' CONTESTED INSTRUCTIONS

The following instructions are proposed by the Defendants in place of the

Contested Instructions proposed by Republic.[3]

---

[3] Defendants state that they did not see Republic's written objections to Defendants' instructions until just prior to filing at 11:59am EST.  Defendants reserve the right to respond further in writing.  Republic respectfully states that the Court's Standing Order instructs the parties that, "[w]here an instruction is not agreed upon, the parties should indicate who is proposing the instruction and the legal basis for the instruction and for the other party's opposition to the instruction," such that the Defendants' reservation of rights is not appropriate.

**<u>Instruction No. 1</u>:**

**Issues for the Jury**

Some findings in this case have already been made; others have been left for you to decide based on the evidence presented.

First, I found that Star, the company, is liable to Republic for federal counterfeiting and trademark infringement.

Second, I found that ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement.

Third, I found that ZCell's owner, Samadali "Samad" Lakhani, is personally liable to Republic for federal counterfeiting and trademark infringement.

I have made no findings, and am expressing no opinions, on the amount of damages Star, ZCell, or Mr. Lakhani should have to pay to Republic, or whether their use of the counterfeit trademarks was willful. Those questions are for you, the jury. It is also up to you to decide whether Mr. Hudda, the president of Star, is personally liable for Star's use of the counterfeit trademarks.

For Star and Mr. Hudda, your role is to determine:

(1)    the amount of damages Star must pay Republic;

(2)    whether Star's use of the counterfeit trademarks was willful; and

(3)    whether Mr. Hudda is personally liable for Star's use of the counterfeit trademarks.

49

For ZCell and Mr. Lakhani, your role is to determine:

(1)    the amount of damages ZCell and Mr. Lakhani must pay Republic; and

(2)    whether ZCell and Mr. Lakhani's use of the use of the counterfeit trademarks was willful.

*Source:  Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No.1:190cv04939, Dkt. Nos. 237, 241.

**Republic's Objections:**

Republic objects to the Star Defendants' proposed instruction because it does not accurately inform the jury of the Court's prior findings in its Orders granting partial summary judgment on liability (Dkt. Nos. [237], [241]) and fails to give the jury sufficient parameters for the questions it must decide.

First, Republic objects because the language deleted from Republic's proposed instruction accurately and neutrally informs the jury that the Court has made rulings, that several facts have been stipulated to or are otherwise undisputed, and logically frames the forthcoming list of the Court's specific findings. (proposing to delete "I have already decided that certain Defendants are liable to Republic for trademark infringement and counterfeiting in this case, and many of the facts have already been decided.  Those findings were as follows: …").

Second, the Star Defendants selectively delete several claims on which the Court granted Republic partial summary judgment. (proposing to delete ". . . unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition").  Republic asserted causes of action for federal trademark counterfeiting and federal trademark infringement, as well as federal unfair competition and false designation of origin, Georgia statutory unfair competition,

50

violations of the Georgia Uniform Deceptive Trade Practices Act, common law trademark infringement, and common law unfair competition. *See* Am. Compl. ¶¶ 86-175 (Dkt. No. [88]); Dkt. No. [237] at 25; Dkt. No. [241] at 25. In granting Republic's motions for partial summary judgment on liability, the Court noted that "the same elements govern" each of Republic's foregoing claims. Dkt. No. [237] at 29-30; Dkt. No. [241] at 28-29. The Star Defendants' proposed deletion is not factually or legally accurate, and thus misstates the Court's findings.

Third, the Star Defendants seek to delete language taken directly from the Court's Order granting partial summary judgment against Mr. Lakhani. (proposing to delete ". . . was chiefly responsible for ZCell's buying and selling counterfeit cigarette rolling papers, and, therefore, actively caused the infringement as a moving, conscious force. I have thus found that Mr. Lakhani . . ."). Indeed, the deleted language is nearly verbatim. See Dkt. No. [237] at 44 ("On this record, the Court finds Defendant Lakhani was chiefly responsible for buying and selling counterfeit rolling papers and, therefore, 'actively caused the infringement as a moving, conscious force.'"). Republic's inclusion of this language thus accurately states the Court's findings, which the Defendants have indicated they do not intend to re-litigate at trial.

Fourth, the Star Defendants' recitation of the limited issues the jury must decide is objectionable because it is confusing to the jury: it instructs the jury that it must decide the amount of damages to award Plaintiff, then that the jury must decide whether the defendants acted willfully—with no explanation whatsoever of how that finding impacts the damages award. This is improper and prejudicial, and gives relatively cursory treatment to the very issues the jury is being asked to decide.

In contrast, Republic's proposed recitation of the issues clearly and logically explains the jury's determinations and their relationship to each other; *i.e.*, that the jury will decide the amount of damages to award Republic for the defendants' acts of trademark infringement and counterfeiting, and also will decide whether the defendants' actions were committed willfully such that the amount of damages should be increased under the law. Republic's proposed language on the jury issues incorporates edits initially suggested by the Star Defendants.

51

**Instruction No. 2:**

**Damages**

You must consider whether, and to what extent, money damages should be awarded for Star's violation of Republic's trademarks by counterfeiting.

Republic seeks what is known as an award of "statutory damage." Statutory damages are damages established by Congress in the Lanham Act.  The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting.  However, an award of statutory damages should not constitute a windfall for the Plaintiffs.  You may award statutory damages between $1,000 and $200,000 for each trademark that Republic proves Star used, for each type of goods sold, offered for sale, or distributed.

If Republic proves that Star's use of the counterfeit trademarks was willful, then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 per type of goods sold, offered for sale, or distributed.

*Source:  Pattern Civ. Jury Instr. 11th Cir. 10.6 (2022); Peer International Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 569 (S.D.N.Y. 1995).

**Republic's Objections:**

52

Republic objects to the Star Defendants' proposed instruction because it fails to give the jury sufficient parameters for awarding statutory damages. Although the Star Defendants' proposed instruction includes portions of the 11th Circuit pattern instruction, it is incomplete considering the wide discretion afforded to the jury. The Star Defendants' proposed instruction is further objectionable because it does not appropriately instruct the jury as to the separate nature of Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants, and that the jury's decision to render an award against one group should play no role in the jury's decision as to the other group.

Additionally, the Star Defendants' proposed instruction purports to include a sentence that does not appear in the Eleventh Circuit Pattern or supported by any citation to Eleventh Circuit law. Indeed, the objectionable language ("However, an award of statutory damages should not constitute a windfall for the Plaintiffs") is supported only by a stale, out-of-circuit copyright case.

In counterfeiting cases, a plaintiff may elect statutory damages in lieu of actual damages at any time before final judgment, for a sum between $1,000 and $200,000 per counterfeit mark. 15 U.S.C. § 1117(c)(1). Where a defendant has committed willful counterfeiting, as here, a plaintiff may recover up to $2 million per mark per type of good, plus treble damages. 15 U.S.C. § 1117(b), (c)(2).

Congress created statutory damages "as an alternative to traditional awards based on actual losses under subsections 1117(a) and (b)." *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc*., 2003 WL 22331254, at *28 (N.D. Ga. May 9, 2003) (citation omitted). Trademark owners are entitled to statutory damages even where "no actual damages are proven, or actual damages and profits are difficult and impossible to calculate." *Cable/Home Commc'n Corp. v. Network Prods., Inc*., 902 F.2d 829, 850 (11th Cir. 1990). Congress added Section 1117(c) to ensure adequate compensation and to deter future violations by counterfeiters. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), amended (June 28, 2002) ("The purpose of § 1117 … is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters.").

In view of these policies, the Lanham Act authorizes "a statutory range of damages so that courts may tailor awards to the scope of the conduct and the culpability of the defendant." *Microsoft Corp. v. Moss*, No. CIVA 106-CV-1670-JOF, 2007 WL 2782503, at *7 (N.D. Ga. Sept. 20, 2007). The factfinder thus has

53

wide discretion in determining an award of statutory damages, *Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1355 (N.D. Ga. 2011).

Given the wide discretion afforded to the jury to award statutory damages, Republic's proposed instruction properly informs the jury of the purpose of statutory damages and why Republic is still entitled to damages even when it elects not to prove actual damages. In so doing, Republic properly tracks the case law in this Circuit. Conversely, by adding a sentence (drawn from an out-of-circuit case) that Republic should not receive a "windfall," the Star Defendants improperly suggest that Republic should not be awarded statutory damages if it elects not to prove actual damages—which is contrary to its Congressional purpose. *See also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) (in copyright case, noting that statutory damages are appropriate even where "no actual damages are proven, or actual damages and profits are difficult and impossible to calculate.").

54

**<u>Instruction No. 3</u>:**

**Willfulness**

Trademark infringement is "willful" if the defendant deliberately duplicated the plaintiff's trademark(s) in a way that was calculated to benefit from the plaintiff's reputation. Willfulness can be inferred if a defendant continued infringing behavior after being given notice.

Sources*: Tom McLeod Software Corp. v. Teknowlogi Applied Intel., LLC*, No. 1:20-CV-00732-JPB, 2021 WL 5033480, at *3 (N.D. Ga. June 4, 2021); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Motor Components, L.L.C. v. Imex Serv., Inc.*, No. 04-22371-CIV, 2005 WL 8155973, at *4 (S.D. Fla. Apr. 19, 2005); *Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998).

**<u>Republic's Objections</u>:**

Republic objects to the Star Defendants' proposed instruction because it fails to state the correct and applicable law, and is insufficient and improper.

In awarding statutory damages for trademark counterfeiting under 15 U.S.C. § 1117(c), courts within and outside this Circuit consistently define willfulness as when a defendant "acted with actual knowledge or reckless disregard for whether its conduct infringed …" *Kason Indus., Inc. v. L & T Restaurant Equip. Inc.*, 2019 WL 9633211, at *7 (N.D. Ga. Dec. 17, 2019) (ellipses in original); *see also*, *e.g.*, *Anthem Indus., LLC v. Dawson*, 2017 WL 6996371, at *4 (N.D. Ga. 2017). ("[c]ourts have defined 'willful' infringement as when the infringer acted with actual knowledge or reckless disregard."); *Keefe Group, LLC v. Rajab*, 2021 WL 4173842, at *5 (M.D. Fla. Aug. 19, 2021) ("A trademark infringement is 'willful' when ''the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark].'"); *Luxottica Group S.p.A. v. President Optical*

55

*Inc.*, 2020 WL 6115100, at *4 (S.D. Fla. May 20, 2020) ("Courts in our district have defined willful infringement 'as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark]."); *Abercrombie & Fitch Trading Co. v. Importrade USA, Inc.*, 2009 WL 10668408, at *2 (S.D. Fla. 2009) ("Courts in the Eleventh Circuit have "defined willful infringement 'as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's [trademark].'"); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) (holding that, for purposes of awarding statutory damages under the analogous provision of the Copyright Act, willful copyright infringement "encompasses reckless disregard of the possibility that one's actions are infringing").

Republic's proposed instruction on willfulness (included in its contested Proposed Instruction No. 9)[4] reflects this well-settled standard of "actual knowledge" or "reckless disregard."

The Star Defendants' proposed instruction is insufficient, legally incorrect, and misleading because it omits any mention of this Circuit's standard definition of willfulness. The proposed instruction is further insufficient, legally incorrect, and misleading because it omits that willfulness may be satisfied by reckless disregard. And the proposed instruction is also insufficient, legally incorrect, and misleading in that it suggests that willfulness may <u>only</u> be met by evidence that the Defendants "deliberately duplicated the plaintiff's trademark(s) in a way that was calculated to benefit from the plaintiff's reputation."

Tellingly, the first two cases cited by the Star Defendants do not even support their suggested language:

- *Tom McLeod Software Corp. v. Teknowlogi Applied Intelligence, LLC*— the Star Defendants' first cited case and only N.D. Ga. authority—does not articulate the standard for willfulness at all. *See* 2021 WL 5033480 at *3 (N.D. Ga. June 4, 2021). It merely found that the fact that the defendant ignored cease and desist letters was evidence that it acted willfully. *Id.*

---

[4] Republic is not opposed to providing an instruction on willfulness separately from an instruction on statutory damages.

- The Star Defendants' second citation to *PetMed Express, Inc. v. MedPets.Com, Inc.* case fares no better; in fact, the case directly supports Republic's proposed instruction, not the Star Defendants' instruction.  In *PetMed Express*, the court expressly states that "[t]his Court has defined willful infringement 'as when the infringer acted with **actual knowledge or reckless disregard** for whether its conduct infringed upon the plaintiff's [trademark].'" *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1220 (S.D. Fla. 2004) (citing *Arista Records, Inc. v. Beker Enter., Inc.*, 298 F.Supp.2d 1310, 1312 (S.D. Fla. 2003)) (emphasis added).

Instead, the Star Defendants' proposed instruction seeks to erroneously limit the definition of willfulness to a sentence drawn from a single unpublished S.D. Fla. case, which in turn relies on a non-controlling Fifth Circuit case[5] that involved actual damages and mandatory treble damages under 15 U.S.C. § 1117(a) and (b)—not statutory damages under 15 U.S.C. § 1117(c).

It is clear from cases that correctly state the definition of willfulness that the Star Defendants' proposed "definition" of willfulness is actually an example of what *may* demonstrate willfulness.  *See Abercrombie & Fitch Trading Co. v. Importrade USA, Inc.*, 2009 WL 10668408, at *2 (citing the "actual knowledge or reckless disregard" definition, and noting that willful conduct "entails 'an aura of indifference to plaintiff's rights' **or** a 'deliberate and unnecessary duplicating of a plaintiff's mark ... ") (emphasis added).

The Star Defendants' proposed instruction also erroneously limits the circumstances from which willfulness can be inferred to one instance—continuing to infringe after being notified.  But the Eleventh Circuit has made clear that knowledge need not be proven directly, but may be inferred from the facts and circumstances of the case. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (noting several facts that could "support an inference of knowledge or willful blindness," which was not limited to and did not include continued infringement after notice).

Accordingly, the Star Defendants' proposed instruction on willfulness is objectionable because it is erroneously limited, insufficient, legally incorrect, and

---

[5] In any case, the cited Fifth Circuit case, *Rolex Watch U.S.A., Inc. v. Meece*, does not contain the Star Defendants' proposed instruction language.

misleading.  Republic incorporates by reference its objection to the Star Defendants'
contested Proposed Instruction No. 4.

**Instruction No. 4:**

**Individual Liability of Mr. Hudda**

Mr. Hudda is individually liable if you find that he actively caused Star's use of the counterfeit trademarks as a moving, conscious force. This means that he actively participated as a moving force in the decision to use the counterfeit trademarks, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

Sources:  *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 287 F. Supp. 3d 1338, 1348 (N.D. Ga. 2017); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No. 1:19-cv-4939, Order (Dkt. No. [241]), at 51–57 (N.D. Ga. Sept. 7, 2021).

**Republic's Objections:**

Republic objects to the Star Defendants' proposed instruction because it fails to give the jury sufficient parameters for deciding Mr. Hudda's personal liability. Specifically, the Star Defendants' proposed instruction is insufficient because it fails to instruct the jury on the levels of knowledge and participation required for purposes of evaluating personal liability. The Star Defendants' omissions are objectionable and prejudicial to Republic, as the jury is likely to be confused as to what "active[]" and "conscious" means without further instruction. Indeed, the Star Defendants themselves have argued that Republic must show that "Hudda had knowledge of the infringement," which this Court has rejected. (Dkt. 241 at 52.)

In contrast, Republic's proposed instruction properly states the law and provides necessary context so that the jury understands its charge.

Republic's proposed instruction first instructs the jury that "the law provides that individuals can be liable for trademark infringement and counterfeiting." *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d F.2d 1472, 1477 (11th Cir. 1991); Order (Dkt. No. [241]) at 51.

Republic's proposed instruction then explains why the jury is tasked with deciding Mr. Hudda's personal liability for a distinct legal entity's acts. (". . . it was already decided that Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting.  You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.").

Republic's proposed instruction goes on to accurately state the law regarding the levels of knowledge and participation that would render an individual officer liable.  This language is taken directly from this Court's Order, and thus reflect the Court's findings which the Defendants have indicated they do not intend to re-litigate at trial.  *See* Dkt. 241 at 52 ("The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur.") (citing *Chanel*, 931 F.2d at 1478 n.8); *id.* at 56 ("Defendant Hudda thus may be held liable without regard to his knowledge of or willful blindness towards infringement as long as he actively caused the infringing acts as a moving, conscious force."); *id.* at 52 ("Eleventh Circuit law . . . does not require specific knowledge of trademark infringement as a prerequisite to individual liability.").

**Proposed Closing Instruction No. 5:**

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

As I have explained, ZCell and Mr. Lakhani have brought claims against the Third Party TN Vape Group. ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group are legally separate from Republic's claims against Star and Mr. Hudda and Republic's claims against ZCell and Mr. Lakhani. Star or Mr. Hudda's liability to Republic does not depend on the outcome of ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group in any way. ZCell and Mr. Lakhani's liability to Republic does not depend on the outcome of ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group in any way. You must

61

decide Republic's claims against Star and Mr. Hudda and Republic's claims against ZCell and Mr. Lakhani as a wholly separate and independent matter, regardless of any decision you reach on ZCell and Mr. Lakhani's claims against the Third Party TN Vape Group.

In deciding what amount of damages ZCell and Mr. Lakhani must pay Republic for ZCell and Mr. Lakhani's sale of counterfeit products, you should not consider, in any way, whether ZCell and Mr. Lakhani can recover any portion of the damages you award to Republic, from Third Party TN Vape Group.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Source:  11th Cir. Pat. Jury Instr. § 3.9 (2022); O'Malley's Federal Jury Practice and Instructions, 3 Fed. Jury Prac. & Instr. § 106:03 (6th ed.); *Top Tobacco, L.P. et al. v. Star Importers & Wholesalers, Inc. et al.*, Case No.1:190cv04939, Order (Dkt. No. [241]), at 34–35 (N.D. Ga. Sept. 7, 2021).

## **Republic's Objections:**

Republic objects to the Defendants' proposed instruction because it does not appropriately instruct the jury as to the separate nature of Republic's claims against the Star Defendants and Republic's claims against the ZCell Defendants, and the ZCell Defendants' claims against the Third Party TN Vape Group.

There is no federal common law right to indemnity or contribution under which the ZCell Defendants can assert claims for their direct infringement under the Lanham Act. *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2d Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). There is also no express right of contribution or indemnity under the Lanham Act. *See id*. at 16; 15 U.S.C. § 1117. Nor does the Lanham Act impliedly permit a right to contribution. *See e.g. Wagner v. Circle W. Mastiffs*, No. 2:08–CV–00431, 2010 WL 1009904, at *9 (S.D. Ohio Mar. 12, 2010) (compiling cases); *Getty Petroleum Corp.*, 862 F.2d at 16; *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 69 F. Supp. 2d 678, 684, 687 (M.D. Pa. 1999).  Thus, neither the Star Defendants' nor ZCell Defendants' liability to Republic depends on the outcome of the ZCell Defendants' claims against the Third Party TN Vape Group in any way.

63

# COURT'S EXHIBIT 3

**Introduction**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I instructed you at the beginning of this case, the Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships. Republic Technologies (NA), LLC is a legal entity known as a limited liability company. You have heard us refer to the Plaintiffs collectively as "Republic" and I will continue to do so in these closing instructions.

Two of the Defendants are also corporations, Defendant Star Importers & Wholesalers, Inc. (or Star) and Defendant Ziya Business, Inc. (also referred to as ZCell). The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all

2

other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

The claims against each Defendant are being tried in this single matter. But, you must decide the claims against each Defendant separately. Each defendant is entitled to your individual consideration and assessment of the evidence.

3

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers said during opening statements, that they said in making objections, or that they will say in closing arguments is not evidence and should not be considered by you. You must also recall my previous instruction from the start of the case that the lawyers' questions are not evidence and should not be considered by you. And, recall that if I struck evidence and told you to disregard it or admitted evidence for a limited purpose, you must abide those instructions.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

4

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

You should remember all of my prior instructions about the prohibition on consulting outside sources or individuals.  For example, you shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony

5

and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

7

**Impeachment of Witnesses Because of Inconsistent Statements or Felony Conviction**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

8

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness(es)], taken on [date], has been presented to you [by video/by reading the transcript].

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

9

**Use of Interrogatories**

You've heard answers that [name of party(ies)] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party(ies)] gave the answers in writing while under oath.

You must consider the answers [name of party(ies)] gave to the other side's interrogatories as though [name of party(ies)] gave the answers on the witness stand.

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

**Burden of Proof**

In this case it is the responsibility of Plaintiff Republic to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately. In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

12

**Trademark Infringement and Counterfeiting**

As I explained at the outset of this trial, Republic seeks damages against the Star Defendants for trademark infringement, trademark counterfeiting, and unfair competition.  Republic also seeks damages against the ZCell Defendants for trademark infringement, trademark counterfeiting, and unfair competition.

To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

This case involves trademarks, which are sometimes referred to simply as "marks."  A federal statute known as the Lanham Act protects rights to use trademarks.  A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own.  The purpose of trademark law is to

13

prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its use by others in an action for trademark infringement.

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with,

14

or substantially indistinguishable from, a registered trademark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law. This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use no matter how inconsequential. A trademark owner's efforts at policing its trademarks is proof of the strength of its marks.

The parties have stipulated that at issue in this case are nine federal registrations of Republic for the TOP® and JOB® trademarks. Republic has the incontestable right to use these registered trademarks in commerce for the products they sell under the trademarks.

As I explained earlier, I have already ruled on a number of issues as a matter of law:

15

1. I found that Defendant Star, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

2. I found that Defendant ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

3. I found that ZCell's owner, Defendant Samad Lakhani, is personally liable to Republic for the conduct of that company.

For purposes of this trial, these findings are settled and conclusive, and you are not to second-guess them. Because of my prior finding, you

16

will be asked to decide the following two issues, with regards to Defendant ZCell:

1. the dollar amount of damages to award Republic for ZCell's acts of trademark infringement and counterfeiting

2. whether ZCell acted willfully in this regard, such that the dollar amount of damages should be increased under the law.

In regards to Defendant Star, you will be asked to make the following two determinations:

1. the dollar amount of damages to award Republic for Star's acts of trademark infringement and counterfeiting, and

2. whether Star acted willfully in this regard, such that the dollar amount of damages may be increased under the law.

You will also be asked to determine whether Defendant Monty Hudda is personally liable for Star's infringement of Republic's trademarks.

Understand, I have made no finding, and express no opinion, on the amount of damages Defendant Star or Defendant ZCell should have to pay to Republic. That question is for you, the jury. It is also up to you to

17

decide whether Mr. Hudda is personally liable for Star's conduct.  Again,

I have made no findings and express no opinion on this issue.

And again, you must make these finding separately as to each

Defendant.

18

**Trademark Counterfeiting – Statutory Damages**

Because the Court has already found Defendant Star and Defendant ZCell violated Republic's TOP® and JOB® trademarks by counterfeiting, you must determine the money damages to be awarded to Republic from each of these Defendants.  I will now instruct you on Republic's claims for money damages, the determinations you will make regarding those claims, and the law that you must apply in making those determinations.

Republic seeks what is known as an award of "statutory damages" against both Defendant Star and Defendant ZCell.  Statutory damages are damages established by Congress in a law called the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting, both by the Defendants in this case and other infringers, actual or potential, who may engage in similar conduct.   Because statutory damages serve both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages.

19

However, an award of statutory damages should not constitute a windfall for the Plaintiff and thus should bear some relationship to the actual damages suffered by Plaintiff. To determine an appropriate amount of damages, you may consider factors such as (1) the expenses saved and the profits reaped; (2) the revenues lost by the Plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the Defendant; (5) whether the Defendant's conduct was innocent or willful; (6) whether a Defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the Defendant.]

By statute, you may award statutory damages between $1,000 and $200,000 for each registered trademark that Defendant Star or Defendant ZCell used, for each type of goods sold, offered for sale, or distributed. If, however, Republic proves that either Defendants' use of the registered trademarks was "willful," then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 for each trademark that that Defendant used, for each type of goods sold, offered for sale, or distributed.

20

"Willful" infringement means that the Defendant acted with actual knowledge or recklessly disregarded the possibility that their conduct would infringe Republic's trademarks. [DEFENDANTS' ADDITIONAL REQUESTED INSTRUCTION: A Defendant acts with reckless disregard if it's obvious that an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.]  I have made no finding and express no opinion on this issue. Willfulness does not need to be proven directly, but may be inferred from the facts and circumstances of the case.

The burden is on Republic to prove willfulness by a preponderance of the evidence.  A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Republic's claim is more likely true than not true.  A finding of willfulness, however, is not required in order to award statutory damages.

I have given you these instructions as to both Defendant Star and Defendant ZCell.  But, as I have said several times, you must treat the claims against each Defendant separately.  Each group of Defendants is responsible for their own conduct, and Republic is entitled to recover

21

separate statutory damages awards against each group of Defendants. The amount of damages that you choose to award to Republic for the Star Defendants' infringement should not impact the amount of damages that you choose to award to Republic for the ZCell Defendants' infringement, or vice versa. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts.

22

**Personal Liability for Star's Trademark Infringement and Counterfeiting – Hudda**

The law provides that individuals can be liable for trademark infringement and counterfeiting. As I have explained, in an earlier phase of this case, it was already decided that Defendant Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting. You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.

Mr. Hudda is individually liable if you find that he actively participated as a moving, conscious force in the decision to engage in Star's infringing or counterfeiting acts, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

It is not necessary to show that Mr. Hudda specifically knew about the infringement or counterfeiting.  In other words, Plaintiff does not have to show Mr. Hudda knew that his or the company's actions would result in the infringement.  He is liable for the conduct so as long as he actively caused the infringing acts as a moving, conscious force, regardless of whether he knew his acts would result in the infringement.

23

The law also does not require that Mr. Hudda personally participate or engage in infringing or counterfeiting acts to be held individually liable for infringement and counterfeiting. Specific knowledge of infringement or counterfeiting is also not required for you to find that Mr. Hudda is liable for Star's trademark infringement and counterfeiting.

25

**<mark>Instructions below here to be provided after closing arguments.</mark>**

**Duty to Deliberate When Only the Plaintiff Claims Damages**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.  At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

 If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have

26

voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

# COURT'S EXHIBIT 4

**Introduction**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.  When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I instructed you at the beginning of this case, the Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships.  Republic Technologies (NA), LLC is a legal entity known as a limited liability company.  You have heard us refer to the Plaintiffs collectively as "Republic" and I will continue to do so in these closing instructions.

Two of the Defendants are also corporations, Defendant Star Importers & Wholesalers, Inc. (or Star) and Defendant Ziya Business, Inc. (also referred to as ZCell). The fact that a corporation is involved as a party must not affect your decision in any way.  A corporation and all

other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

The claims against each Defendant are being tried in this single matter.  But, you must decide the claims against each Defendant separately.  Each defendant is entitled to your individual consideration and assessment of the evidence.

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers said during opening statements, that they said in making objections, or that they will say in closing arguments is not evidence and should not be considered by you. You must also recall my previous instruction from the start of the case that the lawyers' questions are not evidence and should not be considered by you. And, recall that if I struck evidence and told you to disregard it or admitted evidence for a limited purpose, you must abide those instructions.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

4

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

You should remember all of my prior instructions about the prohibition on consulting outside sources or individuals.  For example, you shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony

5

and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

6

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

7

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

8

## Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness(es)], taken on [date], has been presented to you [by video/by reading the transcript].

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

9

**Use of Interrogatories**

You've heard answers that Samadali Lakhani gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, Mr. Lakhani gave the answers in writing while under oath.

You must consider the answers Mr. Lakhani gave to the other side's interrogatories as though he gave the answers on the witness stand.

10

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

11

**Burden of Proof**

In this case it is the responsibility of Plaintiff Republic to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately. In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

12

**Trademark Infringement and Counterfeiting**

As I explained at the outset of this trial, Republic seeks damages against the Star Defendants for trademark infringement, trademark counterfeiting, and unfair competition. Republic also seeks damages against the ZCell Defendants for trademark infringement, trademark counterfeiting, and unfair competition.

To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

This case involves trademarks, which are sometimes referred to simply as "marks." A federal statute known as the Lanham Act protects rights to use trademarks. A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own. The purpose of trademark law is to

13

prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its use by others in an action for trademark infringement.

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with,

14

or substantially indistinguishable from, a registered trademark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law. This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use no matter how inconsequential. A trademark owner's efforts at policing its trademarks is proof of the strength of its marks.

The parties have stipulated that at issue in this case are nine federal registrations of Republic for the TOP® and JOB® trademarks. Republic has the incontestable right to use these registered trademarks in commerce for the products they sell under the trademarks.

As I explained earlier, I have already ruled on a number of issues as a matter of law:

15

1. I found that Defendant Star, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

2. I found that Defendant ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

3. I found that ZCell's owner, Defendant Samad Lakhani, is personally liable to Republic for the conduct of that company.

For purposes of this trial, these findings are settled and conclusive, and you are not to second-guess them. Because of my prior finding, you

16

will be asked to decide the following two issues, with regards to Defendant ZCell:

1. the dollar amount of damages to award Republic for ZCell's acts of trademark infringement and counterfeiting

2. whether ZCell acted willfully in this regard, such that the dollar amount of damages should be increased under the law.

In regards to Defendant Star, you will be asked to make the following two determinations:

1. the dollar amount of damages to award Republic for Star's acts of trademark infringement and counterfeiting, and

2. whether Star acted willfully in this regard, such that the dollar amount of damages may be increased under the law.

You will also be asked to determine whether Defendant Monty Hudda is personally liable for Star's infringement of Republic's trademarks.

Understand, I have made no finding, and express no opinion, on the amount of damages Defendant Star or Defendant ZCell should have to pay to Republic. That question is for you, the jury. It is also up to you to

17

decide whether Mr. Hudda is personally liable for Star's conduct.  Again, I have made no findings and express no opinion on this issue.

And again, you must make these finding separately as to each Defendant.

**Legality of Plaintiff's Investigation Irrelevant**

During this trial, you have heard about Republic's investigation of Defendants and the actions of law enforcement. However, because of my prior findings, the legality of Republic's investigation and actions taken by law enforcement are not at issue in this case.

**Trademark Counterfeiting – Statutory Damages**

Because the Court has already found Defendant Star and Defendant ZCell violated Republic's TOP® and JOB® trademarks by counterfeiting, you must determine the money damages to be awarded to Republic from each of these Defendants. I will now instruct you on Republic's claims for money damages, the determinations you will make regarding those claims, and the law that you must apply in making those determinations.

Republic seeks what is known as an award of "statutory damages" against both Defendant Star and Defendant ZCell. Statutory damages are damages established by Congress in a law called the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting, both by the Defendants in this case and other infringers, actual or potential, who may engage in similar conduct. Because statutory damages serve both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages.

20

To determine an appropriate amount of damages, you may consider a number of factors, including, but not limited to: (1) the expenses saved and the profits reaped; (2) the revenues lost by the Plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the Defendant; (5) whether the Defendant's conduct was innocent or willful; (6) whether a Defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; (7) the potential for discouraging the Defendant; and (8) whether the counterfeit goods pose a risk to public safety.

Because statutory damages are intended to provide both compensatory and punitive relief, there is no necessary mathematical relationship between the size of such a statutory damages award and the extent or profitability of the Defendants' wrongful activities. An award of statutory damages, however, should not constitute a windfall for the Plaintiff and thus should bear some relationship to the actual damages suffered by Plaintiff and consideration of the other factors I have mentioned.

21

By statute, you may award statutory damages between $1,000 and $200,000 for each registered trademark that Defendant Star or Defendant ZCell used, for each type of goods sold, offered for sale, or distributed.  If, however, Republic proves that either Defendants' use of the registered trademarks was "willful," then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 for each trademark that that Defendant used, for each type of goods sold, offered for sale, or distributed.

"Willful" infringement means that the Defendant acted with actual knowledge or recklessly disregarded the possibility that their conduct would infringe Republic's trademarks. A Defendant acts with reckless disregard if an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

I have made no finding and express no opinion on this issue. Willfulness does not need to be proven directly, but may be inferred from the facts and circumstances of the case.

The burden is on Republic to prove willfulness by a preponderance of the evidence.  A "preponderance of the evidence" simply means an

22

amount of evidence that is enough to persuade you that Republic's claim is more likely true than not true. A finding of willfulness, however, is not required in order to award statutory damages.

I have given you these instructions as to both Defendant Star and Defendant ZCell. But, as I have said several times, you must treat the claims against each Defendant separately. Each group of Defendants is responsible for their own conduct, and Republic is entitled to recover separate statutory damages awards against each group of Defendants. The amount of damages that you choose to award to Republic for the Star Defendants' infringement should not impact the amount of damages that you choose to award to Republic for the ZCell Defendants' infringement, or vice versa. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts.

23

**Personal Liability for Star's Trademark Infringement and Counterfeiting – Hudda**

The law provides that individuals can be liable for trademark infringement and counterfeiting. As I have explained, in an earlier phase of this case, it was already decided that Defendant Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting. You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.

Mr. Hudda is individually liable if you find that he actively participated as a moving, conscious force in the decision to engage in Star's infringing or counterfeiting acts, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

It is not necessary to show that Mr. Hudda specifically knew about the infringement or counterfeiting. In other words, Republic does not have to show Mr. Hudda knew that his or the company's actions would result in the infringement. He is liable for the conduct so as long as he actively caused the infringing acts as a moving, conscious force, regardless of whether he knew his acts would result in the infringement.

24

25

The law also does not require that Mr. Hudda personally participate or engage in infringing or counterfeiting acts to be held individually liable for infringement and counterfeiting. Specific knowledge of infringement or counterfeiting is also not required for you to find that Mr. Hudda is liable for Star's trademark infringement and counterfeiting.

**<mark>Instructions below here to be provided after closing arguments.</mark>**

**Duty to Deliberate When Only the Plaintiff Claims Damages**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

26

**Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

**[Explain verdict]**

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have

27

voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

# COURT'S EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


Top Tobacco, L.P., Republic
Technologies (NA), LLC, and
Republic Tobacco, L.P.,

                        Plaintiffs,

                                  Case No. 1:19-cv-4939-MLB

v.

Star Importers & Wholesalers,
Inc., et al.,

                        Defendants.

_____/


## JURY INSTRUCTIONS


1

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.  When I have finished you will hear closing argument and then go to the jury room and begin your discussions, sometimes called deliberations.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

As I instructed you at the beginning of this case, the Plaintiffs here are Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Brands, L.P. Top Tobacco, L.P. and Republic Brands, L.P. are legal entities known as limited partnerships. Republic Technologies (NA), LLC is a legal entity known as a limited liability company. You have heard us refer to the Plaintiffs collectively as "Republic" and I will continue to do so in these closing instructions.

Two of the Defendants are also corporations, Defendant Star Importers & Wholesalers, Inc. (or Star) and Defendant Ziya Business, Inc. (also referred to as ZCell). The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals

3

in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

The claims against each Defendant are being tried in this single matter. But, you must decide the claims against each Defendant separately. Each defendant is entitled to your individual consideration and assessment of the evidence.

4

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers said during opening statements, that they said in making objections, or that they will say in closing arguments is not evidence and should not be considered by you. You must also recall my previous instruction from the start of the case that the lawyers' questions are not evidence and should not be considered by you.  And, recall that if I struck evidence and told you to disregard it or admitted evidence for a limited purpose, you must abide those instructions.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

5

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

You should remember all of my prior instructions about the prohibition on consulting outside sources or individuals.  For example, you shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony

6

and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

7

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

9

You've heard answers that Samadali Lakhani gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, Mr. Lakhani gave the answers in writing while under oath.

You must consider the answers Mr. Lakhani gave to the other side's interrogatories as though he gave the answers on the witness stand.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the parties have stipulated to the authenticity and admissibility of certain expert reports in the absence of live testimony.

11

In this case it is the responsibility of Plaintiff Republic to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately. In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

12

As I explained at the outset of this trial, Republic seeks damages against the Star Defendants for trademark infringement, trademark counterfeiting, and unfair competition. Republic also seeks damages against the ZCell Defendants for trademark infringement, trademark counterfeiting, and unfair competition.

To help you understand the evidence presented in this case, I will explain some of the legal terms you have heard during this trial.

This case involves trademarks, which are sometimes referred to simply as "marks." A federal statute known as the Lanham Act protects rights to use trademarks. A trademark is a word, name, symbol, device or some combination of these used by a person or company to identify their product, to identify and distinguish their product from those manufactured or offered by others, and to indicate the source of their product.

The main function of a trademark is to identify and distinguish the product of a particular merchant and to protect its goodwill against the sale of another's product as its own. The purpose of trademark law is to prevent confusion among consumers about the source of products and to

13

permit trademark owners to show ownership of their products and control their products' reputation.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is thus a public interest in the use of trademarks.

The law entitles the owner of a trademark to exclude others from using that trademark without its permission. The unauthorized use of a trademark is called "infringement" of the trademark if the use of the mark in commerce creates a likelihood of confusion, mistake, or deception as to the source, affiliation or sponsorship of the goods. The owner of a trademark may enforce the right to exclude its use by others in an action for trademark infringement.

Counterfeiting, or the use of counterfeit marks, is a type of trademark infringement. A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered trademark. The

14

distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law. This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

Trademark owners have a duty to police the use of their own trademarks and to take reasonable steps to maintain their rights in the subject trademarks. A trademark owner is not required to take action against every infringing use no matter how inconsequential. A trademark owner's efforts at policing its trademarks is proof of the strength of its marks.

The parties have stipulated that at issue in this case are nine federal registrations of Republic for the TOP® and JOB® trademarks. Republic has the incontestable right to use these registered trademarks in commerce for the products they sell under the trademarks.

As I explained earlier, I have already ruled on a number of issues as a matter of law:

15

1. I found that Defendant Star, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

2. I found that Defendant ZCell, the company, is liable to Republic for federal counterfeiting and trademark infringement; unfair competition and false designation of origin (based upon trademark violation); violations of Georgia's Unfair Competition Statute; violations of Georgia's Uniform Deceptive Trade Practices Act; and common law trademark infringement and unfair competition.

3. I found that ZCell's owner, Defendant Samad Lakhani, is personally liable to Republic for the conduct of that company.

For purposes of this trial, these findings are settled and conclusive, and you are not to second-guess them. Because of my prior finding, you

16

will be asked to decide the following two issues, with regards to Defendant ZCell:

1. the dollar amount of damages to award Republic for ZCell's acts of trademark infringement and counterfeiting

2. whether ZCell acted willfully in this regard, such that the dollar amount of damages should be increased under the law.

In regards to Defendant Star, you will be asked to make the following two determinations:

1. the dollar amount of damages to award Republic for Star's acts of trademark infringement and counterfeiting, and

2. whether Star acted willfully in this regard, such that the dollar amount of damages may be increased under the law.

You will also be asked to determine whether Defendant Monty Hudda is personally liable for Star's infringement of Republic's trademarks.

Understand, I have made no finding, and express no opinion, on the amount of damages Defendant Star or Defendant ZCell should have to pay to Republic. That question is for you, the jury. It is also up to you to

17

decide whether Mr. Hudda is personally liable for Star's conduct.  Again, I have made no findings and express no opinion on this issue.

And again, you must make these finding separately as to each Defendant.

During this trial, you have heard about Republic's investigation of Defendants and the actions of law enforcement. However, because of my prior findings, the legality of Republic's investigation and actions taken by law enforcement are not at issue in this case.

Because the Court has already found Defendant Star and Defendant ZCell violated Republic's TOP® and JOB® trademarks by counterfeiting, you must determine the money damages to be awarded to Republic from each of these Defendants. I will now instruct you on Republic's claims for money damages, the determinations you will make regarding those claims, and the law that you must apply in making those determinations.

Republic seeks what is known as an award of "statutory damages" against both Defendant Star and Defendant ZCell. Statutory damages are damages established by Congress in a law called the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting, both by the Defendants in this case and other infringers, actual or potential, who may engage in similar conduct. Because statutory damages serve both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages.

20

To determine an appropriate amount of damages, you may consider a number of factors, including, but not limited to: (1) the expenses saved and the profits reaped; (2) the revenues lost by the Plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the Defendant; (5) whether the Defendant's conduct was innocent or willful; (6) whether a Defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; (7) the potential for discouraging the Defendant; and (8) whether the counterfeit goods pose a risk to public safety.

Because statutory damages are intended to provide both compensatory and punitive relief, there is no necessary mathematical relationship between the size of such a statutory damages award and the extent or profitability of the Defendants' wrongful activities. An award of statutory damages, however, should not constitute a windfall for the Plaintiff and thus should bear some relationship to the actual damages suffered by Plaintiff and consideration of the other factors I have mentioned.

21

By statute, you may award statutory damages between $1,000 and $200,000 for each registered trademark that Defendant Star or Defendant ZCell used, for each type of goods sold, offered for sale, or distributed.  If, however, Republic proves that either Defendants' use of the registered trademarks was "willful," then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 for each trademark that that Defendant used, for each type of goods sold, offered for sale, or distributed.

"Willful" infringement means that the Defendant acted with actual knowledge or recklessly disregarded the possibility that their conduct would infringe Republic's trademarks. A Defendant acts with reckless disregard if an ordinary person under the circumstances would have realized the danger and taken care to avoid the harm likely to follow.

I have made no finding and express no opinion on this issue. Willfulness does not need to be proven directly, but may be inferred from the facts and circumstances of the case.

22

The burden is on Republic to prove willfulness by a preponderance of the evidence. A finding of willfulness, however, is not required in order to award statutory damages.

I have given you these instructions as to both Defendant Star and Defendant ZCell. But, as I have said several times, you must treat the claims against each Defendant separately. Each group of Defendants is responsible for their own conduct, and Republic is entitled to recover separate statutory damages awards against each group of Defendants. The amount of damages that you choose to award to Republic for the Star Defendants' infringement should not impact the amount of damages that you choose to award to Republic for the ZCell Defendants' infringement, or vice versa. Republic's claims against each group of Defendants are separate and should be decided on their own unique facts.

23

The law provides that individuals can be liable for trademark infringement and counterfeiting. As I have explained, in an earlier phase of this case, it was already decided that Defendant Star sold counterfeit products bearing Republic's TOP and JOB trademarks, and is therefore liable to Republic for trademark infringement and counterfeiting. You must now decide whether Mr. Hudda, the owner of Star, is personally liable for Star's acts of infringement.

Mr. Hudda is individually liable if you find that he actively participated as a moving, conscious force in the decision to engage in Star's infringing or counterfeiting acts, or otherwise caused Star's infringement or counterfeiting as a whole to occur.

It is not necessary to show that Mr. Hudda specifically knew about the infringement or counterfeiting. In other words, Republic does not have to show Mr. Hudda knew that his or the company's actions would result in the infringement. He is liable for the conduct so as long as he actively caused the infringing acts as a moving, conscious force, regardless of whether he knew his acts would result in the infringement.

24

The law also does not require that Mr. Hudda personally participate or engage in infringing or counterfeiting acts to be held individually liable for infringement and counterfeiting. Specific knowledge of infringement or counterfeiting is also not required for you to find that Mr. Hudda is liable for Star's trademark infringement and counterfeiting.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

I told you before the trial that you may take notes to help you remember what the witnesses said. You may use your notes to help you recall information, but you should rely on your own memory of the testimony instead of your notes in reaching your decision. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

26

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.  At any time during your deliberations, you may submit to the Court your verdict as to any Defendant group concerning whom you have unanimously agreed.

 If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should

27

remain in the jury room and not be shared with anyone, including me, in your note or question.