**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| TOP TOBACCO, L.P., REPUBLIC TECHNOLOGIES (NA), LLC, and REPUBLIC TOBACCO, L.P.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>STAR IMPORTERS & WHOLESALERS, INC., AMIN S. HUDDA, ZIYA BUSINESS, INC., d/b/a ZCELL & NOVELTIES, and SAMADALI LAKHANI,<br><br>　　　　Defendants. | Case No. 1:19-cv-4939-MLB |

---

**DEFENDANTS ZIYA BUSINESS, INC.'S AND SAMADALI LAKHANI'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR ALTERATION OR AMENDMENT OF JUDGMENT, FOR GRANT OF REMITTITUR, AND/OR FOR NEW TRIAL ON DAMAGES**

Defendants Ziya Business Inc. d/b/a ZCell & Novelties and Samadali Lakhani (collectively, the "ZCell Defendants") file this renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for alteration or amendment of the $1,242,000 statutory damages judgment in this matter, for a grant of remittitur, and/or for a new trial on damages pursuant to Fed. R. Civ. P. 59(e), respectfully showing this Court the following:

1

# I. <u>INTRODUCTION</u>

Plaintiffs spent almost four full trial days attempting to convince the jury that the ZCell Defendants willfully and knowingly engaged in the purchase and sale of counterfeit rolling papers. The jury rejected Plaintiffs' entreaties and found that the ZCell Defendants did not act willfully. How, then, can we explain the jury's award of substantial statutory damages ($138,000 per mark, for total damages of $1,242,000) in the absence of willfulness? Someone who did not attend the trial might assume that the ZCell Defendants' infringement, while innocent, resulted in millions of dollars in revenues and hundreds of thousands in net profits that Plaintiffs should recoup. Or they might assume that Plaintiffs made a compelling showing of millions of dollars in actual monetary losses arising from the innocent infringement.

Neither of these assumptions are in the same universe as the facts presented to the jury at trial. What the jury learned was that, over a two-year period from 2017 to 2019, the ZCell Defendants purchased approximately $233,000 of counterfeit Top- and Job-branded rolling paper products. [T-1417:22-25; ZCell Ex. 31.][1] ZCell Defendants sold approximately $83,421.64 worth of Top- and Job-branded papers

---

[1] This number reflects the total amount of product ZCell Defendants purchased from Third-Party Defendant TN Vape during the relevant time period. There is no evidence that ZCell Defendants purchased non-authentic papers from other sources during the relevant time period.

during this two-year period. [T-1397: 3-6.][2] And ZCell Defendants earned approximately $8,500.00 in profits from those sales. [ZCell Ex. 31.] The jury's statutory damages award is staggering in the face of these numbers; the awarded damages are approximately *five times* the total purchase price ZCell Defendants paid for the infringing products, *sixteen times* ZCell Defendants' total revenue on sales of that product, and a whopping *one hundred and forty-six times* ZCell Defendants' total net profits from its sales of that product.

This is nothing short of a complete windfall for Plaintiffs, particularly considering Plaintiffs' failure to introduce any evidence of actual damage. And, as detailed further below, the damages award in this case dwarfs (by a significant amount) damage awards issued by courts in this and other districts in cases involving: (a) default judgments and admitted liability; (b) findings of clear willfulness; (c) revenues and profits much greater than those here; and (d) other evidence of bad-faith conduct emphasizing the defendants' willfulness and wrongdoing. This point bears repeating: *if other (and far more egregious) cases of willful infringement in this district and others are guides, ZCell Defendants would have been far better off defaulting, admitting liability, and not putting up any defense*

---

[2] Both the actual invoices and the ZCell Defendants' demonstrative summary of those invoices were introduced at trial. The invoices themselves were voluminous, being at least 700 total pages.

*on the issue of willfulness*. The law does not and should not operate to deliver this sort of outcome.

The jury's damage award in this case is disproportionate and unjust. There is no evidence and no legal principle justifying the substantial statutory damages awarded to Plaintiff. The Court should use its discretion to award reasonable damages under the facts and circumstances in this case.

## II. <u>ARGUMENT AND CITATION TO EVIDENCE AND AUTHORITY</u>

### A.  **Standard of Review**

Pursuant to Rule 50(b), this Court may reduce the jury verdict if it arises from legal error. As the Eleventh Circuit explained in <u>Johansen v. Combustion Eng'g, Inc.</u>, 170 F.3d 1320, 1330 (11th Cir. 1999):

> Neither common law nor the Seventh Amendment… prohibits reexamination of the verdict for legal error . . . . [I]f legal error is detected, the federal courts have the obligation and the power to correct the error by vacating or reversing the jury's verdict.  Similarly, where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount.

*see also*, <u>Peer v. Lewis</u> No. 06-60146-CIV, 2008 WL 2047978, at *5 (S.D. Fla. May 13, 2008), aff'd, No. 08-13465, 2009 WL 323104 (11th Cir. 2009) (collecting cases in which jury verdict was reduced due to legal error, without ordering new trial). The jury verdict in this case was based on legal error because it was grossly

disproportionate to any actual damages proven, and thus not supported by evidence as required by applicable Eleventh Circuit authority. ZCell Defendants move this Court to strike the jury's award of legally unsupported damages, and enter judgment for Plaintiffs' actual damages, in a range from $9,000 on the low end, and $83,421.64 on the high end.

The ZCell Defendants move in the alternative for a remittitur of the Jury's damages award under Rule 59(e). "The court orders a remittitur when it believes the jury's award is unreasonable on the facts." Johansen, 170 F.3d at 1331 (emphasis in original). A district court may grant remittitur of a portion of the jury's award where the award is excessive as a matter of law. *See, e.g.*, Simon v. Shearson Lehman Bros., 895 F.2d 1304, 1319 (11th Cir. 1990) (slander that did not cause economic loss could not justify $1 million damage award). While it is generally true that a plaintiff must be given the option of a new trial in lieu of remittitur on a portion of a jury's award, *see*, *e.g.*, Peer v. Lewis, 2008 WL 2047978 at *17, the Court should decline to offer a new trial on any issue but damages because the issue of willfulness was decided without error. Wilson v. Taylor, 733 F.2d 1539, 1549 (11th Cir. 1984), overruled on other grounds, Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989) (remanding to trial court with directions to require a remittitur or grant a new trial on the question of damages).

A "district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, in at least two distinct kinds of cases: (1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally where the award is intrinsically excessive, in the sense of being greater than the amount a reasonable jury could have awarded." Kirsch, 148 F.3d at 165 (cleaned up). While "[i]t is true that courts setting statutory damages after bench trials or defaults have often awarded less than the jury did in [a given] case . . . the question is not what this [c]ourt would award were it deciding the question itself; the question is whether the jury's award is so excessive that the [c]ourt should intrude on [the jury's] prerogative to set damages." Agence Fr. Presse v. Morel, 2014 WL 3963124, at *15 (S.D.N.Y. Aug. 13, 2014). Here, the answer to that question is an unequivocal yes.

**B.     This Court Should Grant the ZCell Defendant's Rule 50 Motion and Reduce the Jury's Statutory Damages Award Because it is Intrinsically Excessive, Goes Against the Great Weight of the Evidence, and Violates ZCell Defendants' Due Process Rights**

Judgment as a matter of law in this case is appropriate because the jury's award is excessive considering the weight of the evidence and the Court's instructions. At the close of evidence, the Court instructed the jury on the appropriate manner to calculate statutory damages under the Lanham Act:

6

> To determine an appropriate amount of damages, you may consider a number of factors, including but not limited to, the expenses saved and the profits reaped, the revenues lost by the plaintiff, the value of the trademark, the deterrent effect on others besides the defendant, whether the defendants' conduct was innocent or willful, whether defendant has cooperated in providing particular records from which to assess the value of the infringing material, the potential for discouraging the defendant at issue and whether the counterfeit goods posed a risk to public safety.

[T-1467.] Additionally, the jury was instructed that the award of statutory damages "should not constitute a windfall for the Plaintiff" and that the award "should bear some relationship to the actual damages suffered by Plaintiff." [*Id.*] Before we analyze these statutory damages factors and principles using the evidence admitted in this case, however, let's look at how courts in this district and others have applied the framework in other Lanham Act infringement cases:

1.  <u>Representative Cases Involving Statutory Damages Analyses Under Far More Egregious Facts Show that the Jury's Award in this Case Against ZCell Defendants was Excessive and Grossly Disproportionate</u>

The jury's statutory damages award far exceeds federal Lanham Act cases in this district, in other Eleventh Circuit courts, and in other federal circuits. A large majority of these cases involve default judgments obtained against counterfeiters. Most of these cases involve willful infringement on the part of the defendants, higher profits, and significantly worse facts than those at issue here.

7

Let's start with <u>Anthem Indus., LLC v. Dawson</u>, 2017 WL 6996371 (N.D. Ga. Oct. 31, 2017). The plaintiff in this case owned a trademark it used to sell handles that customers could fit on their Yeti tumblers and mugs. <u>Id.</u> at *2.[3] Plaintiff used its mark in connection with selling its tumbler handles through Amazon.com. <u>Id.</u> The defendant sold unauthorized copies of plaintiff's tumbler handles on Amazon for a lower price using plaintiff's trademark, diverting sales and revenues from plaintiff. <u>Id.</u> Prior to defendant's infringement, the plaintiff generated $144,490 in sales revenues *per month*. <u>Id.</u> Plaintiff made two written demands to the defendant to stop selling the infringing goods. The defendant ignored plaintiff's demands and continued its infringement of plaintiff's mark. <u>Id.</u>[4] After defendant defaulted, the district court found that the defendant's infringement was willful and knowing, emphasizing defendant's knowledge that her use of plaintiff's mark was unauthorized and her repeated refusal to respond to plaintiff's cease and desist letters. <u>Id.</u> at *4. Yet, despite the defendant's wrongdoing, the district court only

---

[3] The district court's opinion does not specifically reference the Yeti brand, but this was what Anthem's handles were for. The undersigned was counsel of record for Anthem and has familiarity with the underlying facts.

[4] A constant theme of these default cases is the defendants' failure to cease their infringement in response to written warnings from plaintiffs. The Court recalls that Plaintiffs made a specific business decision not to send similar warnings to the ZCell Defendants.

awarded plaintiff $500,000—an amount tied directly to plaintiff's established loss of sales after defendant began her infringement. Id.

Next, consider Kason Industries v. L & T Rest. Equip., 3:19-CV-00111-TCB, 2019 WL 9633211, at *7 (N.D. Ga. Dec. 17, 2019). The defendant in this case was caught blatantly manufacturing and selling refrigerator hardware identical to what the plaintiff sold for decades. The plaintiff made numerous attempts to deter defendant's infringement—through e-mails, text messages, and telephone calls—but defendant ignored plaintiff's warnings. Id. at *2. Then the defendant ignored plaintiff's lawsuit and defaulted, causing the district court to conclude that defendant's infringement was willful and "purposefully evasive." Id. at *7. Yet the district court only awarded $50,000.00 per mark in statutory damages under these facts. Id.

These sorts of statutory damages awards in cases of undisputed willfulness are largely the norm—and not the exception—in this district. See, e.g., Moncler S.p.A. v. AADD2, 1:21-CV-247-MLB, 2021 WL 4816650, at *4 (N.D. Ga. June 10, 2021) (defendant who willfully infringed plaintiff's trademarks and even participated in crafting counterfeiting strategies with others hit with $1,000 statutory damages award trebled to $3,000); Chanel, Inc. v. Harrington, 1:08-CV-1998-CC, 2009 WL 10670657 at *3–4 (N.D. Ga. May 8, 2009) (willful seller of counterfeit

Chanel-branded handbags and sunglasses hit with statutory damages of $29,790 per mark calculated as $4,965—the value of the counterfeit products on defendant's website—trebled and then doubled again); Estate of Marilyn Monroe LLC v. 3D Home, 1:21-CV-2214-MLB, 2022 WL 1715963 at *4 (N.D. Ga. Mar. 22, 2022) (willful sellers of counterfeit marks assessed $1,000 in statutory damages per mark); Sportswear Co. - S.p.A v. Act as purchasing agency, 1:21-CV-0465-JPB, 2021 WL 5033458 at *3 (N.D. Ga. Sept. 2, 2021) (awarding statutory damages of $15,000 per mark "in light of the demonstrated intentional and willful infringement" of the defaulting defendants).

Cases outside this district also reflect awards of non-exorbitant statutory damages under far worse facts than presented in ZCell Defendants' trial. The Volkswagen Group of Am. v. Varona, 2021 WL 1997573 (S.D. Fla. May 18, 2021) case is particularly instructive because it involves an award of statutory damages after a lengthy and fact-intensive bench trial involving less-than-honorable defendants caught selling counterfeit Audi wheel sets on eBay. In its findings of fact, the district court emphasized the willfulness of defendants' conduct, its knowledge of its infringing activities and, perhaps more importantly, the defendants' complete refusal to participate in meaningful discovery, their making of "numerous false statements under oath," the use of a "sham affidavit," and their refusal to provide

financial information from which their revenues and profits from sales of counterfeit wheels could be determined, necessitating the use of statutory rather than actual damages. Id. at *7-9.

The district court exhaustively analyzed the seven factors set forth in Luxottica Grp. S.p.A. v. Casa Los Martinez Corp., 2014 WL 4948632, at *4 (S.D. Fla. Oct. 2, 2014).[5] The court found that, while plaintiffs could estimate defendants' profits, the precise number was incalculable based on defendants' lack of candor and discovery shenanigans. The court also ruled that the strength and value of the Audi marks were extremely high, that there was a substantial need for deterrence and punishment, and that the counterfeit wheels posed a serious safety risk. Id. at *10-15. Yet, despite the shocking conduct of the defendants, the district court awarded statutory damages of only $609,227.10, calculated as $40,615.14 in estimated profits which were trebled for willfulness and then increased again by 25% to account for the strength of the Audi brand. Id. So, here, the ZCell Defendants—who fully participated in discovery, who provided voluminous financial and sales records, and who were found to have not willfully engaged in counterfeiting—were effectively punished twice as hard as the Verona reprobates.

---

[5] Recall that these are the same factors provided to the jury via instructions in this case.

How about a non-Eleventh Circuit case? In <u>City of New York v. Blue Rage, Inc.</u>, 2021 WL 4480734 (E.D.N.Y. Sept. 30, 2021), defendants operated a retail establishment called "The Cop Shop" that sold unlicensed novelty products bearing "NYPD" and "FDNY" marks owned by New York City. <u>Id.</u> at *1. Defendants ignored the city's cease and desist letters and, amazingly, continued to sell these unlicensed products even after litigation commenced and the district court ruled that defendants' conduct constituted unlawful infringement. *Id*. at *9. Yet, despite this egregiousness (and despite the city's request for $1,500,000 in statutory damages), the district court only awarded total statutory damages of $265,000 over multiple marks, finding that this amount "is fair and just considering the totality of the circumstances, serving as both compensation and deterrence." <u>Id.</u>

ZCell Defendants obviously cite to these cases to highlight the unjustness of the $1,242,000 in statutory damages for non-willful, innocent infringement when compared to the far lesser awards in cases of egregious, willful counterfeiting. But there is another theme to these cases—namely, that while the Lanham Act allows statutory damages which greatly exceed a defendant infringer's profits, courts rely heavily on a defendant infringer's profits in calculating an award of damages. This is consistent with the purpose of the statutory damages provision in the Lanham Act. The legislative history of the Lanham Act highlights that the purpose of statutory

damages is not to provide a mechanism to achieve inflated damage awards for innocent or minimal infringement; it is to provide a plaintiff with the ability to establish damages when a defendant is uncooperative:

> The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters. The amounts are appropriate given the extent of damage done to business goodwill by infringement of trademarks."

S. Rep. 104-177 V Section 7.

Where, as here, a defendant is forthright and cooperative, and provides evidence of its revenues and profits generated from infringing activity, a trademark owner should not be able to recover damages far in excess of actual damages or the defendant's profits simply because the Lanham Act provides a wide range of possible damage awards. With this principle in mind, and having reviewed far more egregious cases with far smaller statutory damages awards, let's review the damages factors the Court explained to the jury.

i.   *ZCell's Expenses Saved and Profits Reaped*

This factor weighs heavily in favor of ZCell Defendants' request for judgment as a matter of law. First, the evidence shows that ZCell Defendants paid TN Vape more for Top- and Job-branded papers than Plaintiffs charged their own customers. [*Compar*e Pl. Exs. 27, 28 with Pl. Ex. 200.] This evidence went unrefuted by Plaintiffs at trial. As ZCell Defendants argued (and Plaintiffs agreed), price is one of the more important factors a purchaser of goods can look to in determining if the items are genuine or not. And there is no evidence that ZCell Defendants saved money by purchasing inauthentic rolling papers.

Plaintiffs themselves introduced evidence of the approximately $8,500 in profits ZCell Defendants generated from the sale of non-authentic rolling papers during the relevant 2007-2009 time period. [ZCell Ex. 31 (placed into evidence by Plaintiffs)]. While Plaintiffs tried to poke holes in ZCell Defendant's profit calculation by highlighting a few picayune math errors, Plaintiffs did not perform their own profit calculation even though: (a) they received business records showing the prices ZCell Defendants paid TN Vape for the non-authentic rolling papers [Pl. Ex. 200; (b) they received business records and a summary exhibit showing the revenues ZCell Defendants received from sales of those papers to its own customers [ZCell Ex. 31]; and (c) there is no evidence or argument that ZCell Defendants

refused to provide financial records and information from which Plaintiffs could perform their own profit analysis. Plaintiffs do not show that ZCell Defendants generated profits greater than $8,500, and they didn't even try. ZCell's profit evidence is unrefuted. The jury's award of $1,242,000 in statutory damages on profits of $8,500 is reason enough to reduce the jury's verdict pursuant to Fed. R. Civ. P. 50.

### ii. *Plaintiffs' Lost Revenues*

This factor is simple: Plaintiffs offered no evidence whatsoever of any actual lost revenues attributable to ZCell Defendants' innocent infringement. Again, they didn't even try. This is why they specifically pursued statutory damages instead of actual damages.[6] This factor strongly favors ZCell Defendants.

### iii. *The Value of Plaintiffs' Marks*

ZCell Defendants do not dispute that the Top and Job marks have value. But there was no evidence submitted at trial as to the value of those marks calculated in dollars, nor any evidence of the diminution in the value of those marks because of ZCell Defendants' innocent infringement. Indeed, Plaintiffs' corporate

---

[6] In their own post-judgment briefing, the Star Defendants correctly observe that "instead of using statutory damages to compensate for a lack of evidence from the defendants, the statutory damages remedy was used to compensate for the plaintiffs' lack of evidence of actual damages." Star Def. Br. at 17. This is a great line and we will borrow it here.

representative admitted that the value of the marks was "not calculable." [T-302:14-24.]

Even if the value of Plaintiffs' marks were calculable in some mathematical way, the <u>Verona</u> case again shows that the value of a mark is of limited importance in determining statutory damages. In that case, the district court accounted for the value of the Audi brand (a brand known worldwide and arguably more valuable than Plaintiffs' brands, which may be known to smokers but not necessarily to the general public) by adding a 25% multiplier to its damages calculation *after* it trebled defendants' profits because of their willful infringement. <u>Varona</u>, 2021 WL 1997573 at 10-15. Even Defendants' profits were trebled (which would be improper given the finding of non-willfulness) and multiplied by 25%, that would only equal $31,875. The jury's award in this case was almost <u>thirty-nine times</u> that amount. While a multiplier might be justified for the value of Plaintiffs' brands, it certainly does not justify the excessive amount that was awarded in this case.

### iv.   *The Deterrent Effect on Others Besides the Defendant*

Sachin Lele testified that counterfeiting is an ongoing issue for Plaintiffs. There was no evidence presented at trial that this lawsuit, or other similar lawsuits against innocent infringers will have any deterrent effect on the wholesaling market. Plaintiffs put forth no evidence that it has seen a marked drop in counterfeiting

because of its litigation efforts against the ZCell Defendants. The evidence presented at trial shows that ZCell Defendants are very close to the bottom of the supply chain for these products. The general deterrence aspect of this award is minimal given ZCell's market position.

v.    *Whether ZCell's Infringement was Innocent or Willful*

The jury concluded without error that the ZCell Defendants' infringement was not willful. ZCell Defendants have extensively researched cases in which a jury or court found that a defendants' infringement was not willful but nevertheless awarded hundreds of thousands of dollars per mark in statutory damages. Those cases do not appear to exist. Instead, as discussed above, there are a substantial number of cases where defendants engaging in willful, egregious conduct—and whose profits from such conduct were much larger than those of the ZCell Defendants—are assessed statutory damages much, much lower than those awarded here.

As discussed above, statutory damages are authorized by the Lanham Act because it is not always possible to calculate actual damages. They are not authorized for the purpose of punishing innocent infringers. Yet, whether they intended to do so or not, the jury's award of $1,242,000 in statutory damages is nothing but punitive considering the minimal (and undisputed) revenues and profits ZCell Defendants

generated from the sales of infringing rolling paper products. This is manifestly unjust and clearly demonstrates the excessiveness of their award.

> vi.  *Whether ZCell Defendants Cooperated with Plaintiffs in Providing Records To Assess the Value of the Infringing Material*

Plaintiffs do not contend the ZCell Defendants failed to provide requested information (or provided incomplete information) such that Plaintiffs were prevented from calculating revenues and profits generated from sales of infringing products. Nor should they. ZCell Defendants were forthright in discovery. They produced documents identifying the companies from whom they purchased rolling paper products [*see*, *e.g.*, Pl. Ex. 200] and documents showing to whom they sold those products and the revenues they received from the sales [*see*, *e.g.*, ZCell Ex. 31.] ZCell also provided tax returns showing its total revenues and profits generated from sales of all products each year. Notably, there were no discovery disputes requiring Court intervention in this case.

Unlike Varona, where defendants withheld financial information, made numerous false representations to the district court, and greatly complicated plaintiffs efforts to conduct discovery and calculate profits, ZCell Defendants had an open-door policy with Plaintiffs throughout the pendency of this litigation. Because there is no evidence that ZCell Defendants failed to produce relevant

18

information to Plaintiffs, this factors favors ZCell Defendants and again highlights the overly punitive nature of the statutory damages award in light of ZCell Defendants' cooperation.

vii.    *The Potential for Discouraging ZCell Defendants From Further Infringement*

This factor should have been given minimal weight in assessing statutory damages. The jury found that ZCell Defendants did not willfully engage in trademark violations. And any argument that ZCell Defendants will infringe on trademarks in the future—willfully or not—is pure speculation.

viii.    *The Risk to Public Safety*

Plaintiffs offered no concrete evidence that the infringing products ZCell Defendants sold pose an identifiable risk to public safety. Sachin Lele testified that Plaintiffs' rolling paper products are evaluated by the FDA but could not provide any evidence that the products ZCell Defendants sold contain any harmful ingredients. [T-296:12-18.] There is no evidence that the counterfeit products pose any more of a health risk than the actual products Plaintiffs' itself sells, which are papers designed for people to smoke toxic substances. This alone, or in conjunction with the factors outlined above, does not justify the jury's excessive award.

2.      The Jury's Verdict Violates ZCell Defendants' Due Process Rights

An award of damages under the Lanham Act is unconstitutional where the amount of the award is so severe and oppressive as to be wholly disproportionate to the underlying damages. See, e.g., Capitol Recs., Inc. v. Thomas-Rasset, 692 F.3d 899, 910 (8th Cir. 2012); Sony BMG Music Ent. v. Tenenbaum, 719 F.3d 67, 71 (1st Cir. 2013). As discussed above, ZCell Defendants generated approximately $83,421.64 in revenues and $8,500 in profits from sales of infringing products. The jury's $1,242,000 statutory damages award is sixteen times ZCell Defendants' revenues and one hundred and forty-six times the profits generated from those sales. This is so severe and oppressive, and so disproportionate to any amount of underlying damages, as to render the award unconstitutional.

**C.      Alternatively, The Court Should Issue an Order of Remittitur or Grant ZCell a New Trial Pursuant to Rule 59(e)**

Should the Court decline to reduce the jury's verdict pursuant to Rule 50, the ZCell Defendants respectfully request that the Court require a remittitur of the damages in an amount commensurate with the record evidence, or give Plaintiff's the option of a new trial on the amount of damages only.

### III. **CONCLUSION**

The jury got it right as to willfulness, but wrong as to statutory damages. The $1,242,000 statutory damages award in this case is grossly disproportionate to any actual damages, and far out of alignment with other cases assessing damages under Section 1117(c) under far more egregious facts. It is excessive as a matter of law, and the Court should rectify this error by striking the erroneous portion of the jury's verdict and: (a) awarding Plaintiffs damages within the range of $8,500 to $83,421.64 pursuant to Fed. R. Civ. P. 50; or (b) issuing an order of remittitur and/or a new trial on the issue of statutory damages only.

Respectfully submitted on May 15, 2023.

*/s/ James M. Johnson*
James M. Johnson
Georgia Bar No. 394615
Philip T. Poole
Georgia Bar No. 522887
125 Clairemont Avenue, Suite 170
Decatur, GA 30030
Tel. (470) 851-9149
philip@johnsontrial.com
james@johnsontrial.com

*Counsel for Defendants Ziya Business, Inc. and Samadali Lakhani*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE**

In accordance with L.R. 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). I also hereby certify that I have served the foregoing by filing through the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted on May 15, 2023.

*/s/ James M. Johnson*
James M. Johnson
Georgia Bar No.  394615