# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TOP TOBACCO, L.P., REPUBLIC
TECHNOLOGIES (NA), LLC, and
REPUBLIC TOBACCO, L.P.,

     Plaintiffs,

v.

STAR IMPORTERS &
WHOLESALERS, INC., AMIN S.
HUDDA, ZIYA BUSINESS INC.
d/b/a ZCELL & NOVELTIES, and
SAMADALI LAKHANI,

     Defendants.

Civil Action No. 1:19-cv-4939-MLB
Honorable Michael L. Brown

## PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' POST-TRIAL MOTIONS

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................... ii

I.      INTRODUCTION .......................................................................1

II.     LAW AND ARGUMENT..............................................................2

      A.      Defendants are not entitled to constitutional reduction under Rule 50(b). ...............................................................................3

            1.      Defendants waived the right to file a Rule 50(b) motion. .........4

            2.      The verdict is within the statutory range permitted by law. .......6

            3.      The verdict follows the law and purpose of statutory damages. 7

            4.      The verdict follows the jury instructions. .................................11

            5.      The verdict does not violate Defendants' due process rights. ..13

            6.      Defendants' reliance on their cited cases is misplaced.............16

      B.      Defendants are not entitled to remittitur or a new trial under Rule 59. ...................................................................................17

CERTIFICATE OF COMPLIANCE....................................................33

CERTIFICATE OF SERVICE ............................................................34

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## Cases

*Agence Fr. Presse v. Morel*,
  2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) .................................. 8, 14, 17

*Amoskeag Mfg. Co. v. D. Trainer & Sons*,
  101 U.S. 51 (1879).........................................................................14

*Anthem Indus., LLC v. Dawson*,
  2017 WL 6996371 (N.D. Ga. Oct. 31, 2017) ........................................ 16, 17

*Ard v. Sw. Forest Indus.*,
  849 F.2d 517 (11th Cir. 1988) .................................................29

*Arthur v. King*,
  500 F.3d 1335 (11th Cir. 2007) .................................................18

*Barber v. Dunn*,
  2019 WL 1979433 (N.D. Ala. May 3, 2019) .................................17

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
  329 F.3d 923 (7th Cir. 2003) .........................................................8

*Bush v. Exec. Branch United States*,
  2018 WL 2971183 (N.D. Ga. June 12, 2018) .................................17

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829 (11th Cir. 1990) .................................................. 8, 13, 14, 22

*Capitol Recs., Inc. v. Thomas-Rasset*,
  692 F.3d 899 (8th Cir. 2012) .........................................................6

*Carter v. DecisionOne Corp.*,
  122 F.3d 997 (11th Cir. 1997) .................................................29

*Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*,
  545 F. Supp. 2d 768 (N.D. Ill. 2008)........................................15

*Chanel, Inc. v. French*,
  2006 WL 3826780 (S.D. Fla. 2006) .................................... 10, 15

*Chanel, Inc. v. Harrington*,
  2009 WL 10670657 (N.D. Ga. May 8, 2009) ...............................................17

*Chanel, Inc. v. Replicachanelbag*,
  362 F. Supp. 3d 1256 (S.D. Fla. 2019)........................................................10

*City of New York v. Blue Rage, Inc.*,
  2021 WL 4480734 (E.D.N.Y. Sept. 30, 2021)..............................................8

*Daniels v. Twin Oaks Nursing Home*,
  692 F.2d 1321 (11th Cir. 1982) ....................................................................4

*Diane Von Furstenberg Studio v. Snyder*,
  2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007), *aff'd*, 294 F. App'x 10
  (4th Cir. 2008) ..................................................................................... 24, 26

*Doe v. Celebrity Cruises, Inc.*,
  394 F.3d 891 (11th Cir. 2004) ......................................................................4

*Estate of Marilyn Monroe LLC v. 3D Home*,
  2022 WL 1715963 (N.D. Ga. Mar. 22, 2022) .............................................16

*F.W. Woolworth Co. v. Contemp. Arts, Inc.*,
  344 U.S. 228 (1952)............................................................................. 11, 30

*Farouk Sys, Inc. v. Costco Wholesale Corp.*,
  4:90-cv-3499, Verdict (Dkt. 86) (S.D. Tex. Oct. 12, 2011) .........................16

*Farouk Sys., Inc. v. Costco Wholesale Corp.*,
  2012 WL 360184 (S.D. Tex. 2012)...........................................................5, 21

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)........................................................................................8

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,
  807 F.2d 1110 (2d Cir. 1986) ......................................................................13

*G&G Closed Circuit Events, LLC v. Alamo Card House, LLC*,
  2021 WL 5810558 (W.D. Tex. Dec. 7, 2021)...............................................31

*Goldstein v. Manhattan Indus., Inc.*,
  758 F.2d 1435 (11th Cir. 1985) ............................................................ 18, 31

*Greenberg v. Nat'l Geographic Soc.*,
  2005 WL 8156192 (S.D. Fla. Sept. 30, 2005)..............................................8

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wis. 2018) ...................................... 9, 10, 16, 25

*House of Koscot Dev. Corp. v. Am. Line Cosms., Inc.*,
    468 F.2d 64 (5th Cir. 1972) ............................................................5

*Ins. Co. of N. Am. v. Valente*,
    933 F.2d 921 (11th Cir. 1991) .......................................................18

*J & H Auto Trim Co. v. Bellefonte Ins. Co.*,
    677 F.2d 1365 (11th Cir. 1982) ....................................................29

*Johansen v. Combustion Eng'g, Inc.*,
    170 F.3d 1320 (11th Cir. 1999) ....................................... 3, 6, 7, 18

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    327 F. Supp. 3d 606 (S.D.N.Y. 2018) ........................... 11, 17, 22

*Johnston v. Companion Prop. & Cas. Ins. Co.*,
    2008 WL 11336194 (N.D. Ga. Jan. 30, 2008) ..............................4

*Kason Indus. v. L & T Rest. Equip.*,
    2019 WL 9633211 (N.D. Ga. Dec. 17, 2019) ..............................16

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) ............................................9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    472 F. App'x 19 (2d Cir. 2012) ...................................................10

*Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*,
    2014 WL 4948632 (S.D. Fla. Oct. 2, 2014) ......................... 16, 17

*Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*,
    2015 WL 13776171 (S.D. Fla. Jan. 30, 2015)....................... 19, 20

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
    932 F.3d 1303 (11th Cir. 2019) ....................................................25

*McGinnis v. Am. Home Mortg. Serv., Inc.*,
    817 F.3d 1241 (11th Cir. 2016) ....................................................30

*Midlevel U, Inc. v. ACI Info. Grp.*,
    989 F.3d 1205 (11th Cir. 2021) ....................................................12

*Narcisse v. Ill. Cent. Gulf R.R. Co.*,
    620 F.2d 544 (5th Cir. 1980) .......................................................29

*Peer v. Lewis*,
    2008 WL 2047978 (S.D. Fla. May13, 2008)........................................ 4, 7, 29

*Philip Morris USA Inc. v. Tammy's Smoke Shop Inc.*,
    726 F. Supp. 2d 223 (E.D.N.Y. 2010) .........................................................27

*Raffel Sys., LLC v. Man Wah Holdings Ltd. Inc.*,
    2023 WL 3375853 (E.D. Wis. May 11, 2023) .............................................20

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    2009 WL 2742750 (D. Del. 2009)................................................................31

*Robinson v. Best Price Distribs.*,
    2023 WL 2203584 (C.D. Cal. Jan. 1, 2023)................................................16

*Shannon v. Bellsouth Telecomms., Inc.*,
    292 F.3d 712 (11th Cir. 2002) .......................................................................4

*Sportswear Co. - S.p.A v. Act as a purchasing agency*,
    2021 WL 5033458 (N.D. Ga. Sept. 2, 2021)...............................................17

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
    251 U.S. 63 (1919).......................................................................... 14, 15, 16

*State Auto Prop. & Cas. Ins. Co. v. Jacobs*,
    791 F. App'x 28 (11th Cir. 2019)................................................................17

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)....................................................................................13

*Stone v. GEICO Gen. Ins. Co.*,
    2009 WL 3720954 (M.D. Fla. Nov. 5, 2009)..............................................18

*Telecom Tech. Servs. Inc. v. Rolm Co.*,
    388 F.3d 820 (11th Cir. 2004) .......................................................................4

*U.S. v. Vahlco Corp.*,
    720 F.2d 885 (5th Cir. 1983) .......................................................................30

*Versace v. Awada*,
    2010 WL 11515467 (S.D.N.Y. Aug. 2, 2010) ................................. 19, 22, 23

*Volkswagen Grp. of Am. v. Varona*,
    2021 WL 1997573 (S.D. Fla. May 18, 2021)............................ 16, 19, 26, 27

*Zomba Enters., Inc. v. Panorama Recs., Inc.*,
    491 F.3d 574 (6th Cir. 2007) .......................................................................14

## Statutes

15 U.S.C. § 1117(c) ...............................................................................6, 7

15 U.S.C. § 1117(c)(1)..........................................................................6, 10

15 U.S.C. § 1117(c)(2)............................................................................10

## Rules

Fed. R. Civ. P. 50(a)(2) ...........................................................................3

Fed. R. Civ. P. 50(b) ...............................................................................3

Fed. R. Civ. P. 59(a) ..............................................................................18

Fed. R. Civ. P. 59(e)...........................................................................3, 17

For their response to Defendants Star Importers & Wholesalers, Inc. and Amin S. Hudda's ("Star Defendants") post-trial motion (Dkt. 363), and Defendants Ziya Business Inc. and Samadali Lakhani's ("ZCell Defendants") "Renewed" post-trial motion (Dkt. 364), Plaintiffs Top Tobacco, L.P., Republic Technologies (NA), LLC and Republic Brands, L.P. ("Republic") respectfully state as follows:[1]

## I.    INTRODUCTION

After seven days of trial, an eight-person jury awarded Republic statutory damages in the amount of $2.3 million—$1,107,000 against the Star Defendants, and $1,242,000 against the ZCell Defendants. In stark contrast to their concessions that "this is an involved jury" (Tr. 1602:9–14) and, "no matter how you rule, we know that you've done your jobs and done them well" (*id.* 1537:1–3), Defendants now decry the verdict as "a complete windfall for Plaintiffs," "excessive," and "so disproportionate and unreasonable so as to violate … due process" because the jury awarded more than what Defendants believe are Republic's "actual damages."

The jury rejected Defendants' characterization of Republic's damages at trial, and its discretion should not be second-guessed. Unhappy with the outcome of some,

---

[1] The Star Defendants' supporting brief (Dkt. 363-1) shall be cited to herein as "Star Br. at _." The ZCell Defendants' motion (Dkt. 364) shall be cited to herein as "ZCell Mot. at _." References to the trial transcripts shall be cited herein as "Tr. _." The Star Defendants and ZCell Defendants shall be referred to collectively as "Defendants."

1

but not all, aspects of trial, Defendants seek a second bite at the apple, but fail to articulate any legally supportable basis to reduce the awards. Indeed, Defendants' motions ignore the fundamental concept and purpose of statutory damages. To hide these flaws, Defendants make a mishmash of arguments, conflating Rules 50(b) and 59 in shotgun fashion. But these amalgam motions seek the same thing regardless of the law: to reduce the damages Defendants must pay for their counterfeiting based on their meritless belief that the verdict is excessive.

Defendants' motions fail under any rubric. As shown at trial, the facts and weight of the evidence support the jury's verdict.  Defendants must live with their failure to convince the jury on damages, but there has been no miscarriage of justice or excessive award warranting their requested relief. To grant any part of Defendants' motions would require the Court to accept their invitation to disregard the rules, the law, the Court's own instructions to the jury, and the jury's discretion.

## II.    LAW AND ARGUMENT

Although Defendants cite variously to Rules 50(b), 59(e), and 59(a), in plain terms, Defendants seek to supplant the jury's assessment and award of statutory damages with lower amounts that <u>Defendants</u> contend are the "actual damages."

Putting aside (for the moment) the fatal conceptual defect inherent in this approach, the <u>process</u> for ordering reduction depends on whether the allegedly

2

excessive verdict rests on inadequate evidence or legal error. The court orders a remittitur under when it believes the award is unreasonable on the <u>facts</u>. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). A <u>constitutional reduction</u> is a determination that the <u>law</u> does not permit the award. *Id.*

If the verdict is not supported by the evidence, the court must first conditionally grant a new trial, subject to the plaintiff agreeing to a remittitur. If the plaintiff rejects the reduced damages award, a new trial occurs. *Id.* at 1328. If the damages award is the result of legal error, the Court need not offer a new trial and may order reduction outright. *Id.* at 1331. Legal error occurs where (1) the award is for an amount not permitted by law; or (2) the award is unconstitutionally excessive. *Id.* at 1330.

None of these grounds exist here. Because Defendants' Rule 50 and Rule 59 arguments are duplicative,[2] Republic will address them together, where appropriate.

## A.     Defendants are not entitled to constitutional reduction under Rule 50(b).

Rule 50(a) permits a party to move for judgment as a matter of law "before the case is submitted to the jury." FED. R. CIV. P. 50(a)(2). If the motion is denied, the party may file "a renewed motion" after trial under Rule 50(b). FED. R. CIV. P.

---

[2] Defendants do not argue that "there has been an intervening change in the law" or "new evidence has been discovered" requiring amendment under Rule 59(e).

50(b).  Under either subsection, "a moving party must meet a heavy burden in order to prevail on a motion for judgment as a matter of law." *Johnston v. Companion Prop. & Cas. Ins. Co.*, 2008 WL 11336194, at *2 (N.D. Ga. Jan. 30, 2008). A court must "affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the nonmovant]." *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004). "If there are conflicting inferences that can be drawn from that evidence, it is not the Court's role to pick the better one." *Peer v. Lewis*, 2008 WL 2047978, at *4 (S.D. Fla. May13, 2008) (citation omitted). The court "is bound 'to give the [nonmovant] the benefit of all inferences which the evidence fairly supports even though contrary inferences might reasonably be drawn.'" *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325 (11th Cir. 1982).

### 1.    Defendants waived the right to file a Rule 50(b) motion.

Defendants waived any challenge to the sufficiency of the evidence of damages. "A Rule 50(b) motion is a <u>renewal</u> of a Rule 50(a) motion." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (emphasis added). "If a party asserts new grounds in its renewed motion for judgment as a matter of law that it did not assert in its initial motion for judgment as a matter of law, a court 'may not rely on the new grounds to set aside the jury's verdict.'" *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 717 n.3 (11th Cir. 2002) (citation omitted).

4

Defendants did not raise a Rule 50(a) challenge to damages before the case was submitted to the jury, but limited the motion to willfulness and Hudda's liability:

> MR. ROBBINS: Okay. <u>Well, just for the record, then, we, of course, will move under Rule 50 as a matter of law as to willfulness and as to Mr. Hudda's individual liability</u>**.** And happy to address it in further detail later, but I don't want to waste anyone's time.
> THE COURT: I think that's probably the right way to go. You've reserved it.  And you have too, Mr. Johnson.

Tr. 1451:17–23 (emphasis added). This one-sentence motion does not reach the range of statutory damages. If Defendants thought there was no evidentiary basis for the jury to award statutory damages within the non-willful range, Defendants were required to raise that before the jury deliberated.[3] *See Farouk Sys., Inc. v. Costco Wholesale Corp.*, 2012 WL 360184, at *4 (S.D. Tex. 2012) (noting that Costco "had foregone" a Rule 50(b) challenge "as Costco did not move to limit the amount of statutory damages under Rule 50(a) at trial"). Defendants' Rule 50(b) motions should be denied as waived. *See House of Koscot Dev. Corp. v. Am. Line Cosms., Inc.*, 468 F.2d 64, 67–68 (5th Cir. 1972) ("Since the defendants failed to move for a directed verdict on the ground that the evidence of damages was insufficient, and since this failure could not be cured by a motion made after the jury's verdict, the sufficiency of the evidence of damages was not preserved" for review).

---

[3] The ZCell Defendants even tacitly admit Defendants' waiver, putting the word "renewed" in quotation marks in their motion title. *See* ZCell Mot. at 1.

5

**2.      The verdict is within the statutory range permitted by law.**

Even if Defendants had not waived their Rule 50(b) motions (which they did), Defendants' request to correct any legal error is substantively doomed because the law expressly permits the jury's damages award.[4] Defendants do not argue that the jury erred in the mere act of awarding statutory damages, or that Republic is not entitled to elect statutory damages. 15 U.S.C. § 1117(c). Nor do Defendants dispute that the damages awards—$123,000 per mark against the Star Defendants, and $138,000 per mark against the ZCell Defendants—are within the statutory range for non-willful infringement. *Id.* § 1117(c)(1) (providing for "not … more than $200,000 per counterfeit mark per type of goods or services"). Thus, this is not a case "where a portion of a verdict is for an identifiable amount that is not permitted by law" and can be reduced as a matter of law. *Johansen*, 170 F.3d at 1330.

Rather, Defendants quarrel with the <u>amount</u> of damages, asking the Court to re-weigh the evidence, substitute its judgment for that of the jury,[5] and reduce the verdict "as a matter of law" to Defendants' self-appointed ranges of Republic's "actual damages."  *See* Star Br. at 9–24, ZCell Mot. 6–20.

---

[4] Indeed, it is illogical to argue that any amount of the jury's statutory damages award is not permitted by law, "because statutory damages *are* the civil penalties authorized." *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 908 (8th Cir. 2012).
[5] The ZCell Motion explicitly asks the Court to "use its discretion to award reasonable damages under the facts and circumstances." ZCell Mot. at 4.

What Defendants ask the Court to do would be reversible error. "A federal court has no general authority to reduce the amount of a jury's verdict." *Johansen*, 170 F.3d at 1328. "The Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury." *Id.* "[I]t is not the function of the Court to make credibility or factual determinations under the guise of Rule 50 review." *Peer*, 2008 WL 2047978, at *4. A federal court may not, therefore, "according to its own estimate of the amount of damages which the plaintiff ought to have recovered, ... enter an absolute judgment for any other sum than that assessed by the jury." *Johansen*, 170 F.3d at 1328. "To do so would deprive the parties of their constitutional right to a jury." *Id.* Defendants have failed to identify any legal error that the Court must correct in the verdict, and the motions must be denied.

### 3.    The verdict follows the law and purpose of statutory damages.

Defendants argue that the jury's awards are not supported by the evidence merely because they exceed what Defendants contend are "any actual damages proven." Star Br. at 3; ZCell Mot. at 5. Such an argument misunderstands the law.

First, Defendants completely disregard that statutory damages are distinct from actual damages. Republic is entitled to elect statutory damages "instead of actual damages and profits." 15 U.S.C. § 1117(c). This is true "whether or not

adequate evidence exists as to the actual damages incurred by plaintiffs or the profits gained by defendants." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990). Defendants "provide no legal rationale or case law suggesting that the existence of evidence of actual damages overrules [Republic's] plain right to pursue statutory damages at its election." *City of New York v. Blue Rage, Inc.*, 2021 WL 4480734, at *8 (E.D.N.Y. Sept. 30, 2021).

Second, Defendants ignore the purpose and function of statutory damages. Statutory damages are designed to compensate for harms different from actual loss.[6] *See Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003) (explaining that analogous copyright provision "authorize[s] statutory damages unrelated to losses or gains"). The Supreme Court recognized that statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998). "Thus, [i]t is not necessary for an award of statutory damages to have a correlation to the actual damages[.]" *Greenberg v. Nat'l Geographic Soc.*, 2005 WL 8156192, at *4 (S.D. Fla. Sept. 30, 2005). "Moreover, the Lanham Act allows

---

[6] As discussed *infra*, there is ample evidence to support the verdict, including evidence of "actual damages." Regardless, Defendants' argument that "the actual damages calculation is overly speculative is a questionable basis for attacking a statutory damages award[.]" *Agence Fr. Presse v. Morel*, 2014 WL 3963124, at *13 (S.D.N.Y. Aug. 13, 2014).

statutory damages to be large even when actual damages are small, for the very reason that deterring counterfeiting is important." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1048 (E.D. Wis. 2018). The jury was instructed on this point:

> Because statutory damages serve as both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not lose revenue or suffer any actual damages.
> . . .
> Because statutory damages are intended to provide both compensatory and punitive relief, there is no necessary mathematical relationship between the size of such a statutory damages award and the extent or profitability of the defendants' wrongful conduct.

Tr. 1647:2–5, 16–20. Defendants did not object to this instruction. *Id.* 1298:24–25.

Defendants' suggestion that the policy goals of statutory damages depend on the jury's finding of willfulness flies in the face of the statutory framework. *See* Star Br. at 10 ("Because the jury found no willfulness … [certain factors, including deterrence] should not have contributed to the damages award as a matter of law").[7] Congress added Section 1117(c) to ensure adequate compensation, as well as to punish infringement and to deter future violations by counterfeiters. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (The purpose of § 1117 "is to take the incentive out of counterfeiting and strengthen

---

[7] The ZCell Defendants make similar arguments. *See e.g.* ZCell Mot. at 17, 19 (arguing that deterrent factor "should have been given minimal weight").

9

the civil remedies against counterfeiters."). Statutory damages are available, within

specified ranges, for both non-willful and willful counterfeiting. *See* 15 U.S.C. §

1117(c)(1) (non-willful range), *id.* § 1117(c)(2) (willful range). "Within these

statutory limits courts have 'considerably broad discretion' to balance the 'punitive,

deterrent function' of an award against the direction that it 'not constitute a windfall

for prevailing plaintiffs.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x

19, 22 (2d Cir. 2012) (citation omitted).  Defendants' argument ignores these stated

goals. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1265–66 (S.D.

Fla. 2019) ("The award should be sufficient to deter Defendants and others from

continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate

Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c).").[8]

Courts routinely reject arguments that seek to require statutory damages to

approximate actual damages and profits.  As held by one court,

> This argument goes too far. Actual profits or losses can be relevant in
> the wide-ranging search for a just damages award, but it must be
> remembered that the Lanham Act gives plaintiffs in counterfeiting
> cases the option to seek statutory damages instead of actual damages.

*SunFrog*, 311 F. Supp. 3d at 1047; *see also John Wiley & Sons, Inc. v. Book Dog*

---

[8] *See also Chanel, Inc. v. French*, 2006 WL 3826780, at *2 n.2 (S.D. Fla. 2006) ("While § 1117(c) looks to compensatory considerations (e.g., actual losses and trademark value), it also looks to punitive considerations (e.g., deterrence of other infringers and redress of wrongful defense conduct).").

*Books, LLC*, 327 F. Supp. 3d 606, 634 (S.D.N.Y. 2018) ("Defendants' argument that the jury's award is disproportionate to [actual damages] is unpersuasive because 'statutory damages are not meant to be merely compensatory or restitutionary [but] also to discourage wrongful conduct.'"). The Supreme Court held that deterrence is an important factor in determining damages, such that a statutory damages award need not equal the amount of a plaintiff's actual damages. *See F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 233 (1952) ("The statutory rule...is designed to discourage wrongful conduct. ... Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy."). Defendants identify no legal error (and, in fact, misapply the law), and the motions should be denied.

**4.   The verdict follows the jury instructions.**

Defendants also ignore the instructions that they agreed should be given to the jury. Consistent with the law, the jury was instructed on the policy goals of the Lanham Act, as well as their discretion to consider a variety of <u>non-exclusive</u> factors. Tr. 1466:19–1467:25.  Defendants did not object to the jury instructions at trial, and maintain that the instructions were proper in their motions.[9]

---

[9] Star Br. at 9 (instruction given "[a]fter careful consideration of the relevant case law"), ZCell Mot. at 6–7 ("the Court instructed the jury on the appropriate manner to calculate statutory damages"). Defendants have thus waived any objection.

11

The jury instructions foreclose any claims of legal error or manifest injustice. First, Defendants' claims that the awards are a "complete windfall" is undercut by the fact that the jury was instructed that its award "should not constitute a windfall" and "should bear some relationship to the actual damages suffered by the plaintiff" (balanced "in consideration of the other factors"[10] that Defendants now seek to exclude). The Eleventh Circuit "presume[s] that a jury follows its instructions." *Midlevel U, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1218 (11th Cir. 2021).

More substantively, the instructions allow the jury to consider actual damages as a *relevant* factor in the assessment of statutory damages, but do not require a "mathematical relationship" between statutory damages and Defendants' profits. Tr. 1467:6–20. The instructions also do not require a finding of willfulness before the jury can consider the policy goals of "penaliz[ing] the counterfeiter and deter[ring] future trademark counterfeiting," *id.* 1466:22–1467:1, or the specific factors related to deterrence or discouragement of future infringement, *id.* 1467:6–15.

In fact, the jury could have weighed any number of factors, whether or not listed in the instructions, since the factfinder "has wide discretion in determining the amount of statutory damages to be awarded, <u>constrained only by the specified</u>

---

[10] Defendants conspicuously omit this clause (and other portions that refute their argument) when quoting the instructions in their motions. *See* Star Br. at 6, ZCell Mot. at 7.

maxima and minima." *Cable/Home Commc'n*, 902 F.2d at 852 (parenthetical citation omitted) (emphasis added). Thus, while "whether the defendants' conduct was innocent or willful" may increase the statutory maximum, it is still only one of several factors the jury can consider, separate and apart from "the deterrent effect on others besides the defendant" and "the potential for discouraging the defendant at issue[.]" Tr. 1467:6–15; *see also Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (treating three factors separately).

Defendants cannot seriously argue that the jury committed legal error by following the Court's instructions on the law. *See* Tr. 1466:15–18 (instructing the jury on "the law you <u>must</u> apply in making those decisions.") (emphasis added). Such arguments defy all logic, law, and credibility, and should be rejected.

## 5. The verdict does not violate Defendants' due process rights.

Due process prohibits excessive punitive damages because "'[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice … of the severity of the penalty that a State may impose.'" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (quotation omitted). However, "[t]his concern about fair notice does not apply to statutory damages, because those damages are identified and constrained by the authorizing statute." *Thomas-Rasset*, 692 F.3d at 907. Indeed, "Congress has placed an upper bound on

13

the damages that a jury can award, which mitigates the risk of a truly untethered award." *Agence Fr. Presse*, 2014 WL 3963124, at *15. Because Congress specifically determined the appropriate statutory range of damages, a court's review of such a reward "is extraordinarily deferential." *Zomba Enters., Inc. v. Panorama Recs., Inc.*, 491 F.3d 574, 587 (6th Cir. 2007). Thus, a statutory damages award only violates due process where "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919).

Defendants argue that the jury's damages awards are unconstitutional because they are disproportionate to the amount of "actual damages" caused by their conduct. Star Br. at 24–25; ZCell Mot. at 20. The Supreme Court, however, disagreed that the constitutional inquiry calls for a comparison of statutory damages to actual damages caused by the violation. *See Williams*, 251 U.S. at 66. Because the damages award "is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury[.]" *Id.* Moreover, the protection of trademarks is a vindication of the public interest, *Amoskeag Mfg. Co. v. D. Trainer & Sons*, 101 U.S. 51, 62 (1879), and statutory damages are by definition a substitute for unproven or unprovable actual damages. *Cable/Home Commc'n*, 902 F.2d at 850. Statutory damages are also designed to discourage

14

wrongful conduct, as well as to afford restitution and reparation for injury. *French,* 2006 WL 3826780, at *2 n.2.  Thus, the verdict does not violate due process simply because Defendants believe it is not proportional to "actual damages." *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 777 (N.D. Ill. 2008) (rejecting argument that a 30,000:1 ratio between statutory damages and actual harm violated due process since "[t]here is no requirement that the statutory remedy be proportional to the plaintiff's own injury" and "Congress may choose an amount that reflects the injury to the public as well as to the individual").

Again, the jury awards here are within the statutory range. "[T]he interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [federal law]" support the constitutionality of the award. *Williams*, 251 U.S. at 67.  Based on the evidence at trial, the jury determined that a higher award per mark[11] was appropriate, but exercised its discretion to stay well below the statutory maximum. Under these circumstances, an award of this magnitude was foreseeable and is not "so severe and oppressive as to be ... obviously

---

[11] The Star Defendants argue that "the number of trademarks infringed [does not] justify a disproportionate statutory damages award, as courts tend to adjust the per-mark award to account for the number of marks in setting the total amount of damages." Star Br. at 23. Defendants ignore that they stipulated to infringing nine registered marks and to the jury verdict form reflecting the same, Dkt. 319, 320, and have thus waived any complaint as to the "per mark" calculation.

unreasonable." *Id.* at 67–68.

> **6.** **Defendants' reliance on their cited cases is misplaced.**

Defendants' motions do not cite a single case that directly supports their argument. Instead, relying on primarily default judgment cases, Defendants outline the facts of several unrelated cases to argue that the verdict here is "out of proportion"[12] and that Defendants "*would have been far better off defaulting*." *See* ZCell Mot. at 3–4. Those cases are not persuasive.

First, Republic can cite cases with actual jury damages awards of $100,000 per mark or more.[13] More fundamentally, statutory damages awards "are all over the map, and perhaps rightly so, since the award is meant to be tailored to the facts of the case at hand." *SunFrog*, 311 F. Supp. 3d at 1047–48.[14] "This Court's role is

---

[12] *See* Star Br. at 17–24, ZCell Mot. at 7–13.

[13] *See e.g. Farouk Sys, Inc. v. Costco Wholesale Corp.*, 4:90-cv-3499, Verdict (Dkt. 86) (S.D. Tex. Oct. 12, 2011) (jury did not find willfulness and awarded $200,000 per mark); *Robinson v. Best Price Distribs.*, 2023 WL 2203584 (C.D. Cal. Jan. 1, 2023) (jury awarded $100,000 per mark for non-willful infringement).

[14] The cited cases are also distinguishable. All but three were default judgment cases; none involved a jury award. Some awarded more per mark than the verdict here. *Anthem Indus., LLC v. Dawson*, 2017 WL 6996371 (N.D. Ga. Oct. 31, 2017) ($500,000/mark), *Volkswagen Grp. of Am. v. Varona*, 2021 WL 1997573 (S.D. Fla. May 18, 2021) ($304,690.55/mark), *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, 2014 WL 4948632 (S.D. Fla. Oct. 2, 2014) ("*Luxottica I*") ($200,000/mark). Many of the cited "lower amounts" were the exact amounts requested. *Kason Indus. v. L & T Rest. Equip.*, 2019 WL 9633211 (N.D. Ga. Dec. 17, 2019), *Estate of Marilyn Monroe LLC v. 3D Home*, 2022 WL 1715963 (N.D. Ga. Mar. 22, 2022), *Sportswear Co. - S.p.A v. Act as a purchasing agency*, 2021 WL 5033458 (N.D. Ga. Sept. 2,

16

not to 'average the high and low awards [but to] focus instead on whether the verdict lies within the reasonable range.'" *John Wiley*, 327 F. Supp. 3d at 635. Thus, "the question is not what this Court would award were it deciding the question itself; the question is whether the jury's award is so excessive that the Court should intrude on [the jury's] prerogative to set damages." *Agence Fr. Presse*, 2014 WL 3963124, at *15. Here, the jury awarded reasonable damages within the legally permitted range. That Defendants disagree with their assessment is not grounds to disturb the verdict.

## B.   Defendants are not entitled to remittitur or a new trial under Rule 59.

Rule 59(e) authorizes a motion to alter or amend a judgment after entry.. Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Bush v. Exec. Branch United States*, 2018 WL 2971183, at *1 (N.D. Ga. June 12, 2018).  The only grounds for granting a motion under Rule 59(e) are "newly discovered evidence or manifest errors of law or fact." *State Auto Prop. & Cas. Ins. Co. v. Jacobs*, 791 F. App'x 28, 33 (11th Cir. 2019). A "manifest error is not just any error but one that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Barber v. Dunn*, 2019 WL 1979433, at *1 (N.D. Ala. May 3, 2019). Importantly, Rule 59(e) cannot be used "to relitigate

---

2021), *Chanel, Inc. v. Harrington*, 2009 WL 10670657 (N.D. Ga. May 8, 2009), *Anthem*, 2017 WL 6996371, *Luxottica I*, 2014 WL 4948632.

old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

A losing party may also move for a new trial under Rule 59(a). The power to order a remittitur grew out of this authority, and "[a] court which believes the jury's verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award." *Johansen*, 170 F.3d at 1328. "The Court is not to substitute its judgment for the jury's, and where there is *sufficient* evidence in the record to support the award, the Court should not reduce the award merely because it would have found differently." *Stone v. GEICO Gen. Ins. Co.*, 2009 WL 3720954, at *2 (M.D. Fla. Nov. 5, 2009). A court may not grant a Rule 59 motion unless "the verdict is against the great—not merely the greater—weight of the evidence." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991). Thus, "a new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985).

Whether framed as a constitutional reduction, a conditional remittitur, or a request for a new trial, Defendants are not entitled to any relief because the record is replete with evidence supporting the verdict. The evidence and factors outlined below are not exhaustive, as the jury heard five days of testimony that should not be re-litigated in post-trial briefing. But even this truncated summation confirms that

the jury verdict is supported by the law and sufficient evidence.[15]

***Value of Republic's trademarks*:**  The jury heard ample evidence the value

of the infringed trademarks, including, but not limited to, the following:

- Sachin Lele testified about the importance of the TOP® and JOB® brands to Republic, their continuous use for more than 100 years each, and the goodwill built up in that time. *See e.g.* Tr. 143:2–8, 143:19–144:1.

- Mr. Lele testified that the TOP® and JOB® brands are two of the company's "crown jewels" and best-selling lines, that Republic spends "about $4 to $5 million a year" advertising those brands, and takes the time to register its trademarks to protect them. *Id. e.g.* 143–45.

- The jury also heard about Republic's anti-counterfeiting program (*id.* 146), and Republic's efforts to combat counterfeiting in cooperation with investigators, law enforcement, the CBP, and Homeland Security. *Id.* 147.

Republic's longstanding use of its marks, efforts to protect and enforce the marks,

and expenditure of millions to market and manufacture quality products, are all

evidence of the marks' significant value. *See e.g. Volkswagen*, 2021 WL 1997573,

at *11; *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, 2015 WL 13776171, at

*4 (S.D. Fla. Jan. 30, 2015) ("*Luxottica II*"); *Versace v. Awada*, 2010 WL 11515467,

at *5 (S.D.N.Y. Aug. 2, 2010).

Indeed, Defendants themselves testified that TOP® and JOB® are two of the

biggest brands in the market (*e.g.* Tr. 806), are famous (*id.* 814), are so popular that

---

[15] If the Court has any doubt regarding the sufficiency of the evidence, Republic respectfully requests the opportunity to provide further record support.

Star exclusively carried TOP® and JOB® products for many years (*id.* 808), are in "high demand" (*id.* 814, 1005), and, to meet that demand, Defendants would purchase products from any supplier they could find. (*id.* 814, 1007–08, 1021.) The popularity and recognition attached to the marks further demonstrates their value. *See Luxottica II*, 2015 WL 13776171, at *1.

The record also included testimony about and samples of counterfeit goods purchased or seized from Defendants' respective warehouses (*e.g.* Tr. 213–14, Pls. Exs. 136, 223, 225(A)–(G), 226(B)–(E)), 32 lab reports outlining the differences of those goods in comparison to Republic's authentic products (*id.* Pls. Exs. 118–19, 217), and the potential negative impact on the Republic name when such poor quality goods are purchased by unwitting consumers. *Id.* 293–94. Thus, substantial trial evidence was presented from which the jury could determine that the TOP® and JOB® marks had significant value, as well as the potentially devastating effects of Defendants' counterfeiting activities. "Clearly damage to reputation and loss of goodwill are difficult to measure with economic precision. ... But it does not follow that the jury, then, pulled the number 'from thin air.'" *Raffel Sys., LLC v. Man Wah Holdings Ltd. Inc.*, 2023 WL 3375853, at *7 (E.D. Wis. May 11, 2023) (upholding jury award based on testimony that plaintiff "spent millions of dollars developing its products," "took years to build its reputation for having a product of outstanding

20

quality," and that counterfeiting was "devastating" and harmed reputation).

***Extent of counterfeiting activity***: Despite Defendants' emphasis on their self-reported "minimal profits," there was also substantial evidence, from all sides, from which the jury could have concluded that Defendants may have sold greater quantities of counterfeit items than Defendants will admit.  For example:

- The jury heard about the multiple test buys performed at both Defendants' warehouses over several months, each of which contained products that tested counterfeit. *E.g.* Tr. 170–71, 180–83, Pls. Exs. 118, 119, 217.

- Evidence was presented about the seizure of hundreds or thousands of suspicious Republic products from Defendants' warehouses in a single day, and how multiple types of those products tested as counterfeit. *E.g.* Tr. 213–14, 260, 281, Pls. Exs. 118, 119, 217.

- Defendants contend that their counterfeit products were purchased from TN Vape and, for Star, Birmingham Wholesale. At trial, some of Defendants' invoices were introduced as exhibits, reflecting, *e.g.*:

    o The Star Defendants purchased nearly $96,000 worth of TOP and JOB product from TN Vape in one month, Tr. 933, and more than $360,000 from Birmingham Wholesale in 2018–2019. *Id.* 1243–44.

    o The ZCell Defendants purchased over $200,000 worth of product from TN Vape from November 2017 to May 14, 2019. *Id.* 1045.

The jury could have reasonably concluded that Defendants bought and sold more counterfeit products than what was seized. Indeed, the trial evidence "demonstrated that [Defendants] had taken only the most minimal efforts to ensure that the unauthorized sellers from whom [Defendants were] buying were, in truth, selling genuine [products]." *Farouk Sys.*, 2012 WL 360184, at *4. Mr. Hudda

21

admitted that the only question he asked TN Vape was whether its Republic products were real or fake (Tr. 909, 1370); Mr. Lakhani asked no questions (*id.* 1017–18), and was impeached when he claimed to have relied on TN Vape's representations of authenticity. *Id.*1013–16. The jury thus "would have been justified in concluding that [the seized amount] was a substantial number of goods and indicative of misconduct disproportionately higher than suggested by the quantity of goods present on any given day." *Versace*, 2010 WL 11515467, at *5.

    ***<u>Evidence of damages and lost profits</u>***: Defendants complain that Republic could have determined its actual damages or lost profits through Defendants' business records, as if that invalidates Republic's right to elect statutory damages. This argument is meritless. Once liability is found, Republic is not required to "prove" that it is entitled to elect statutory damages,[16] or that Defendants' records are incomplete. *See Cable/Home Commc'n*, 902 F.2d at 851.

    Furthermore, the jury was not required to accept Defendants' claims that their records <u>were</u> complete.  The testimony at trial demonstrated that:

- The ZCell Defendants' summary spreadsheet of TOP and JOB purchases and sales contained inaccurate product quantities, types, and pricing, and,

---

[16] *See John Wiley,* 327 F. Supp. 3d at 632–33 (rejecting jury instruction imposing a burden of proof, because "[t]he purpose of statutory damages is to allow a plaintiff to seek damages where it is unable to prove actual damages. Requiring a plaintiff to prove statutory damages is at odds with the 'wide judicial discretion' and 'necessary flexibility to do justice' that statutory damages are meant to provide.").

in some cases, omitted entire invoices (Tr. 1420–33, Defs. Ex. 31)—not mere "math errors" that the ZCell Defendants claim in their motion.[17]

- ZCell's purchase orders from TN Vape state that ZCell bought Republic products in "jars," but Mr. Lakhani admitted under cross-examination that the invoices actually referred to products in plain white boxes (count uncertain), not jars. (*Id.* 1032:24–1037:17, 1039:12–1040:15).

- The ZCell Defendants claim they only sold $83,000 worth of TOP and JOB products from November 2017–May 14, 2019, but also testified that those products were in "high demand" at that time such that ZCell's regular suppliers could not sell enough to meet that demand.[18] *Id.* 1008, 1417–18.

- The Star Defendants' invoices from TN Vape use the same invoice number, despite taking place a month apart. Those invoices also display different supplier names. *Id.* 936:18–937:21, Defs. Exs. 71, 72, 77.

Hence, the jury "would have been justified in drawing an inference that the records presented at trial do not present a reliable picture" of the scope of Defendants' respective businesses. *Versace*, 2010 WL 11515467, at *5.[19]

---

[17] ZCell Mot. at 14. Indeed, although Mr. Lakhani swore under oath that he oversaw someone within ZCell (not his counsel) create Defendants' Exhibit 31 (Tr. 1415:20–25, 1430:24–1431:7), he had no idea when the document was created, why it was dated March 5, 2023, or that it was only given to Republic the weekend before trial began. *Id.* 1416:1–3, 1433:3–14:34:10.

[18] ZCell's records showed that ZCell purchased ~$233,000 worth of products in that same timeframe, which would be odd if their sales were only $83,000 as they claim. Tr. 1438–39, Defs. Ex. 31. After the raid, ZCell Defendants' sales jumped to more than $650,000 worth of TOP and JOB products. *Id.* 1447:22–1448:5.

[19] The ZCell Motion claims that "Plaintiffs do not contend that the ZCell Defendants failed to provide the requested information (or provided incomplete information)," *see id.* at 18. That is incorrect. At trial, Mr. Lakhani was questioned about Republic's "requests to supplement gaps in [the ZCell Defendants'] production or gaps in your invoices" during discovery. *Id.* 1435:4–10.

23

Even if the jury accepted Defendants' invoices as complete and accurate, they showed significant sales. *See* above; *see also e.g.* Tr. 1331:19–24 (showing Star's sales of at least $1.2M from 2016–2020). The jury could have rationally decided based on the test buys conducted over the course of several months, the amount of counterfeit seized, and Defendants' sales numbers, that Defendants had sold counterfeit products that were *not* seized, and thus their profits were higher than the amounts they attribute to the seized goods alone.[20] The jury also could have concluded that the counterfeit products purchased from TN Vape or Birmingham Wholesale were "lost sales" to Republic to factor into the damages award.[21]

Finally, Defendants made the same "low profits" arguments at trial. *See* Tr. 1525:17–22, 1526:11–15 ("Well, it turns out that the 30 packets of paper that were actually tested [from Star], … the lost profits were $24, not a misprint, $24. … But just assume that every single jar and every single packet in every jar was counterfeit, … the actual lost profits were $20,160."), 1556:15–17 ("So, expenses saved and

---

[20] The Star Defendants reiterate the argument that, because Republic only tested samples of the seized products, Republic's damages could be limited to those 30 booklets. Star Br. at 10–11. Given the generally accepted practice of sample testing, the jury rejected that argument at trial and that determination should not be disturbed.
[21] Moreover, harm to Republic's reputation and goodwill *are* "actual damages," even if not subject to precise calculation. *See Diane Von Furstenberg Studio v. Snyder*, 2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007) *aff'd*, 294 F. App'x 10 (4th Cir. 2008) ("the loss to a plaintiff is not merely the dollar sales of the counterfeit goods.").

profits reaped, Mr. [Lakhani] sold $83,000 worth of rolling papers, he made $8,500 in profits.").  The jury clearly rejected those arguments in assessing damages and the Court should not second-guess it. *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1311 (11th Cir. 2019); *SunFrog*, 311 F. Supp. 3d at 1047 ("Many courts have rejected the plea that the infringer's actual profits were fairly low.").

*Whether the counterfeit goods posed a risk to public safety*:  Defendants argue that Republic "offered no concrete evidence that the infringing products [Defendants] sold pose an identifiable risk to public safety."[22] ZCell Mot. at 19. Defendants are wrong.  First, this factor considers whether there is a <u>risk</u> to public safety. Second, at trial, Republic explained the strict FDA regulations and quality standards Republic must follow. Tr. 289. Republic introduced <u>unrebutted</u> expert reports and 32 lab reports outlining the inferior nature of Defendants' counterfeit products compared to Republic's authentic products.  *Id.* Pls.' Exs. 118, 119, 217. Several lab reports found "unknown" ingredients in Defendants' products. *Id.* Republic explained that, while it is not possible to test Defendants' papers against every substance in the world, finding "unknown" ingredients necessarily meant that Defendants' products did not comply with Republic's quality standards or FDA requirements. *Id.* 296–98. The jury could have reasonably concluded that, because

---

[22] The Star Defendants make a similar argument.  *See* Star Br. at 21.

Defendants sell those products downstream to unwitting individual consumers, the potential risk that the products *may* contain harmful ingredients warranted higher damages and a greater need for deterrence. *Volkswagen*, 2021 WL 1997573, at *14.

**_Whether Defendants' conduct was innocent or willful_**: Although the jury did not find Defendants' conduct rose to the legal definition of "willful," that does not equate to a finding that Defendants' conduct was *innocent.*  Nor does it mean that this factor cannot be considered at all. *See* Star Br. at 10. Rather, this factor allowed the jury to consider Defendants' conduct on a spectrum. The fact that the jury awarded different amounts against Star Defendants *vis-à-vis* ZCell Defendants shows that it exercised their discretion and tailored the verdicts to the evidence.

**_Deterrence of Defendants and others_**:  The need for deterrence, discussed at length at Section II(A)(3) *supra*, likewise justifies the damages awards. Deterrence is an important factor, whether or not Defendants are found to be legally "willful."[23] At trial, Defendants were unrepentant, insisting that they had done nothing wrong,

---

[23] *See e.g. Diane Von Furstenberg*, 2007 WL 3143690, at *6 (considering deterrence without finding willfulness); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1076 (C.D. Cal. 2004) (finding award was "certainly likely to deter these retailers from continuing the illegal behavior" without finding willfulness); *Microsoft Corp v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1011 (S.D. Tex. 2000) (finding an "award of ordinary statutory damages toward the upper end of the applicable range [for non-willful infringement] … does not require a specific finding of willfulness", in part because "the deterrent effect of the award on a defendant and on others figures into the statutory damages calculus").

and could do nothing more to avoid selling counterfeits in the future. *E.g.* Tr. 906–07, 933, 1017–18, 1369–74. The jury could have determined that, given the nature of the consumer goods Defendants sell, Defendants needed to be deterred from their indifference and implement measures to ensure their goods were legitimate. *Id.* 799, 829 (Star sells "14,000 types of products"); *id.* 993 (ZCell sells 10,000 products).

The jury could have also considered Defendants' size and influence in the wholesale market. "In addition to deterring Defendants … the Court must also take into account the need to discourage other potential infringers." *Volkswagen*, 2021 WL 1997573, at *11. "If this Court were to award only nominal damages, [Defendants], and others similarly situated, would merely factor this cost into their future infringing activities." *Luxottica I*, 2014 WL 4948632, at *5. Defendants have already said that they "*would have been better off defaulting*." ZCell Mot. at 3–4. The jury heard about Defendants' large warehouses, Tr. 826, 1045, that Mr. Lakhani owns three wholesale companies, *id.* 1404, and that nearby wholesalers were also under investigation for counterfeiting activities. *Id.* 681–83. Several witnesses, including Mr. Hudda, testified to being aware of counterfeiting issues in the industry. *Id. e.g.* 288, 567, 895. Hence, "there appears to be a real need to deter others" from the same conduct. *Philip Morris USA Inc. v. Tammy's Smoke Shop Inc.*, 726 F. Supp. 2d 223, 225 (E.D.N.Y. 2010) (weighing need to deter despite defendant's cessation).

27

**_Credibility of the witnesses_**: Critically, the jury observed live witness testimony from the parties, and thus were in the best position to weigh Defendants' credibility and demeanor. Mr. Lakhani was impeached on the stand when he testified that he chose TN Vape as ZCell's supplier "because I -- I was told by Riyaz Merchant that [TN Vape] is an authorized distributor[.]" Tr. 1013:9–13. The Court instructed the jury to disregard that testimony after Mr. Lakhani admitted he had not actually spoken with Mr. Merchant about TN Vape until after his 2020 deposition— three years after selecting TN Vape as a supplier. *Id.* 1016:13–1017:7. Regarding the Star Defendants, the trial testimony also demonstrated "a potential discrepancy between Mr. Hudda and Mr. Patel" (*id.* 1452:1–6)—that is, "some daylight between what [Mr. Hudda] said and what Mr. Patel said" about how Star sets up new suppliers, and "some impeachment that might allow it." *Id.* 1451:6–10.[24]

The jury was entitled to assess Defendants' credibility, not least of which in deciding whether and how much deterrence was needed. *See J & H Auto Trim Co.*

---

[24] *Cf. e.g.*, Mr. Hudda's testimony at Tr. 799:12–24 ("[W]hen there's a new product introduced at Star, you're the one who approves whether to carry that product type? A. Not really. … Only the bigger item where lot of money is involved[.]") *with* Mr. Patel's testimony at *id.* 1067:17–23 ("If it's a new item, yes, I do always ask for [Mr. Hudda's approval].");; *id.* 800:24–801:5 ("Q. And you are responsible for choosing the suppliers of your products, correct? [MR. HUDDA] A. Not really. … That's not my department." *with id.* 1069:2–7 ("You never make the decision to bring on new suppliers for Star, do you? [MR. PATEL] A. Not really, no. Q. That's always Mr. Hudda? A. Yeah, he does, but I have to ask him if the new vendor is there.").

28

*v. Bellefonte Ins. Co.*, 677 F.2d 1365, 1366, 1375–76 (11th Cir. 1982) (reinstating jury verdict because making "credibility choices" is "precisely what juries are for"). The Court has no authority under Rule 50(b) to supplant credibility or factual determinations. *See Peer*, 2008 WL 2047978, at *4. And, under Rule 59,

> The judge must protect against manifest injustice in the jury's verdict, but it is not his role to assess credibility where conflicting testimony has been presented during the trial. Instead, the judge must defer to the jury on the weight to be given to each witness's testimony.

*Id.* at *17. (citations omitted). Republic submits that deference is required here, too.

**_Application_:** Neither Rule 50 nor Rule 59 "grant[s] a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988). A jury's determination of the facts "includes its assessment of the extent of the plaintiff's injury." *Peer*, 2008 WL 2047978, at *4. Thus, when determining whether the evidence supports the verdict, the Court must ask "whether the verdict was 'clearly within the universe of possible awards which are supported by the evidence.'" *Narcisse v. Ill. Cent. Gulf R.R. Co.*, 620 F.2d 544, 547 (5th Cir. 1980) (citation omitted). When the verdict is "within the bounds of possible awards supported by the evidence, its award should not be disturbed." *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1006 (11th Cir. 1997).

Rule 50(b) is even more stringent. There, a court may only grant reduction

"when the facts and inferences … viewed in the light most favorable to the opposing party, … 'point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict[.]'" *U.S. v. Vahlco Corp.*, 720 F.2d 885, 889 (5th Cir. 1983) (citation omitted).

Here, the fact that the jury's awards are within the express limits set by law demonstrates that the verdict is "within the universe of possible awards" and "within the maximum limit of a reasonable range."  This point alone should be dispositive. Moreover, the verdicts are fairly proportional and in no way shock the conscience. The awards are tailored to the trial evidence, are consistent with the Court's instructions, and are necessary to get the message out (to Defendants and others) that infringement cannot merely be a cost of doing business. "[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers ... [and] would fall short of an effective sanction for enforcement of the copyright policy." *Woolworth*, 344 U.S. at 233.

Defendants have failed to show that the record evidence "overwhelmingly favors" them such that <u>no reasonable person</u> could reach a contrary verdict as required by Rule 50(b). *See McGinnis v. Am. Home Mortg. Serv., Inc.*, 817 F.3d 1241, 1257 (11th Cir. 2016). Defendants also fail to show that the awards are "against the clear weight of the evidence" as required to remit under Rule 59. *Id.*

30

Finally, Defendants failed to show that the jury awards are "so excessive as to shock the conscience of the court," and thus are not entitled to a new trial. *See Goldstein*, 758 F.2d at 1447.  Defendants' request for "extraordinary relief" must be denied.

If the Court believes a new trial is warranted, the factual issue of willfulness must be re-tried as well.  Defendants do not get to dissect the question of willfulness from damages.  Trademark counterfeiting is a strict liability tort.  As such, "willfulness is a damages issue, not a liability issue." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 2009 WL 2742750, at *1 (D. Del. 2009).  Whether conduct is innocent or willful is an express consideration for statutory damages, and directly impacts the amount that the jury may award.  Defendants cannot claim one aspect of a fact-intensive damages analysis must be re-tried while arguing that another equally critical element of damages should not be. *See G&G Closed Circuit Events, LLC v. Alamo Card House, LLC*, 2021 WL 5810558, at *4 (W.D. Tex. Dec. 7, 2021) ("Any willfulness of Defendants' conduct is relevant only to the issue of damages.").

As noted by the Court, "sitting here today and having listened to the evidence, I think it's close, but I think it's probably enough to get to the jury." Tr. 1451:14–16.  If the evidence is "close," Defendants cannot establish that the awards go against the "great weight" of the evidence.  But, if Defendants seek remittitur or a new trial, then it must be on all fact questions related to damages, including willfulness.

31

Dated: July 7, 2023                    Respectfully submitted,


                                       **ADAMS AND REESE LLP**

                                       /s/ Amy L. Hanna Keeney
3424 Peachtree Road NE                 Amy L. Hanna Keeney
Suite 1600                             Georgia Bar No. 509069
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com


                                       **ADAMS AND REESE LLP**

                                       /s/ Maia T. Woodhouse
1600 West End Avenue, Suite 1400       Maia T. Woodhouse
Nashville, Tennessee 37203             TN BPR No. 030438
Telephone: (615) 259-1450              (admitted *pro hac vice*)
Facsimile: (615) 259-1470
Email: maia.woodhouse@arlaw.com


                                       *Attorneys for Plaintiffs Top Tobacco,*
                                       *L.P., Republic Technologies (NA), LLC,*
                                       *and Republic Tobacco, L.P.*


32

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certify that the foregoing has been prepared in Times New Roman 14 font and is in compliance with United States District Court, Northern District of Georgia Local Rule 5.1.

This 7th day of July 2023.

**ADAMS AND REESE LLP**

/s/ Amy L. Hanna Keeney

3424 Peachtree Road NE          Amy L. Hanna Keeney
Suite 1600                      Georgia Bar No. 509069
Atlanta, Georgia 30326
Telephone: (470) 427-3700
Facsimile: (404) 238-9674
amyhanna.keeney@arlaw.com

**ADAMS AND REESE LLP**

/s/ Maia T. Woodhouse

1600 West End Avenue, Suite 1400    Maia T. Woodhouse
Nashville, Tennessee 37203          TN BPR No. 030438
Telephone: (615) 259-1450           (admitted *pro hac vice*)
Facsimile: (615) 259-1470
Email: maia.woodhouse@arlaw.com

*Attorneys for Plaintiffs Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P.*

33

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically filed the foregoing

***Consolidated Response in Opposition to Defendants' Post-Trial Motions*** with the

Clerk of Court using the CM/ECF system, which will automatically send email

notification of such filing to the following attorneys of record:

**ADAMS AND REESE LLP**

/s/ Maia T. Woodhouse
Maia T. Woodhouse
Admitted *pro hac vice*
*Counsel for Plaintiffs*

1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Telephone: (615) 259-1450
Email: maia.woodhouse@arlaw.com